1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

RORESTE REFUERZO,

Case No.  22-cv-00868-JSC

8

Plaintiff,

9

v.

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 12

10

SOUTHWEST AIRLINES CO.,

11

Defendant.

12
13

    Before the Court is Defendant's motion to dismiss.  (Dkt. No. 12.)[1]  Having carefully

14

considered the parties' briefs, and having had the benefit of oral argument on May 12, 2022, the

15

Court DENIES the motion.  Plaintiff's claims as framed in the complaint are not preempted by the

16

Railway Labor Act and Plaintiff states claims under the Family and Medical Leave Act and its

17

California counterpart.

18

**COMPLAINT ALLEGATIONS**

19

    Defendant is a major airline.  It "assesses 'points' for attendance and disciplinary

20

violations" by employees.  (Dkt. No. 1 ¶ 13.)  "When an employee accumulates 12 points for

21

violating these policies, a committee can approve his or her termination."  (*Id.*)  An employee's

22

improvement can make up for past violations under Defendant's Record Improvement policy:

23

"For each calendar Quarter during which a Flight Attendant is active for the entire Quarter and has

24

no chargeable occurrences during the entire Quarter, two (2.0) points will be deducted from the

25

Flight Attendant's accumulated point total until the total reaches zero (0)."  (*Id.* ¶ 14.)  "Until

26

March 1, 2019, a flight attendant's leave under the Family and Medical Leave Act ["FMLA"] or

27
28

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

the California Family Rights Act ["CFRA"] had no impact on the process of penalty point subtraction under the 'Record Improvement' policy." (*Id.*)

However, as of March 1, 2019, Defendant implemented a new rule that a flight attendant's use of intermittent leave under the federal FMLA disqualifies the flight attendant from record improvement. Thus, "employees who exercise their right to intermittent leave and who are otherwise qualified lose the benefit of a 2-point deduction." (*Id.* ¶ 15.)

Plaintiff, a resident of San Mateo County, California, began working as a flight attendant for Defendant in 2006. In May 2019, he applied for intermittent FMLA leave for a chronic knee injury. Defendant approved intermittent leave two times a year for a duration of five days between May 15, 2019 and May 13, 2020. (*Id.* ¶ 17.) Plaintiff took intermittent leave on November 22, November 24, and December 19, 2019. For the quarter of October to December 2019, Plaintiff had no violations and did not accumulate points. Thus, he should have had two points deducted from his balance. But under Defendant's new policy, he did not receive a two-point deduction, and he ended 2019 with a balance of 9.5 points. (*Id.* ¶¶ 18–19.)

On January 30, 2020, Plaintiff had a cold and lost his voice. Under Defendant's policies, a flight attendant must call in sick at least two hours before scheduled check-in. Plaintiff called in sick exactly two hours before check-in, but Defendant registered that he called in 1 hour and 59 minutes before check-in and assessed 2.5 penalty points. (*Id.* ¶¶ 20–21.) On February 11, 2020, Defendant terminated Plaintiff in a letter that stated: "[as] a result of your recent Late Sick Call, your attendance points are at termination level. Accordingly, your employment is terminated effective February 13, 2020." (*Id.* ¶ 23.)

Plaintiff brings claims for interference, discrimination, and retaliation in violation of the FMLA on behalf of a nationwide class of U.S.-based flight attendants who worked for Defendant after March 1, 2019. (*Id.* ¶¶ 47–56; *see id.* ¶¶ 25, 27.) He also brings claims for discrimination and retaliation in violation of the CFRA, wrongful termination in violation of public policy, and unfair competition on behalf of a California subclass. (*Id.* ¶¶ 57–77; *see id.* ¶¶ 26–27.) Finally, he brings individual CFRA and wrongful termination claims. (*Id.* ¶¶ 78–86.)

//

United States District Court
Northern District of California

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## DISCUSSION

## I.    RAILWAY LABOR ACT PREEMPTION

Defendant negotiated a collective bargaining agreement ("CBA") with the union representing flight attendants, including Plaintiff.[2]  Defendant contends that the Railway Labor Act ("RLA") preempts all of Plaintiff's claims, and thus the Court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).

The RLA "creates a comprehensive framework for resolving labor disputes in the rail and airline industries."[3]  *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 916 (9th Cir. 2018) (en banc) (cleaned up); *see* 45 U.S.C. §§ 151–65, 181–88.  "Major" disputes "arise where there is no CBA or where it is sought to change the terms of an existing one," and are "resolved through an extensive bargaining, mediation, and noncompulsory arbitration process, in which both sides are subject to certain duties enforceable in federal court."  *Alaska Airlines*, 898 F.3d at 917 (cleaned up).  "Minor" disputes "grow[] out of grievances or the interpretation or application" of an existing CBA, and "must be addressed through the CBA's established grievance mechanism, and then, if necessary, arbitrated."  *Id.* (cleaned up); *see also Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994) ("[M]ajor disputes seek to create contractual rights, minor disputes to enforce them.").  Defendant argues this case presents a minor dispute.

RLA preemption is "implied as necessary to give effect to congressional intent" and "protect the primacy of grievance and arbitration as the forum *for resolving CBA disputes* and the substantive supremacy of federal law within that forum."  *Alaska Airlines*, 898 F.3d at 918, 920 (cleaned up).  The RLA may preempt state law claims or "preclude" federal law claims that "arise[] entirely from or require[] construction of" a CBA.  *Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 843 (9th Cir. 2022) ("This principle—that claims

---

[2] The Court takes judicial notice of the CBA, (Dkt. No. 14-1), under Federal Rule of Evidence 201(b).  *See DiMercurio v. Equilon Enters. LLC*, No. 19-cv-04029-JSC, 2020 WL 227262, at *2 (N.D. Cal. Jan. 15, 2020) (collecting cases taking judicial notice of CBAs to resolve preemption issues).

[3] Throughout this order, the Court cites cases applying the Labor Management Relations Act, which has a "virtually identical" preemption standard to the RLA.  *See Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 913 n.1 (9th Cir. 2018) (en banc).

which are, in substance, labor disputes subject to the CBA must not be evaded by artful

pleading—applies with equal force to federal statutory claims, although they might be better

described as 'precluded.'"); *Alaska Airlines*, 898 F.3d at 914, 920 n.10.  Courts apply a two-part

test:

> The essential inquiry is this: [1] Does the claim seek purely to vindicate a right or duty created by the CBA itself?  If so, then the claim is preempted, and the analysis ends there.
>
> [2] But if not, we proceed to the second step and ask whether a plaintiff's state law right is substantially dependent on analysis of the CBA, which turns on whether the claim cannot be resolved by simply looking to versus interpreting the CBA.

*Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152–53 (9th Cir. 2019); *see also Columbia Exp.*, 23

F.4th at 843 ("Whether called 'preemption' or 'preclusion,' the same two-step approach applies

whether the conflicting statute is a federal or state provision.").

The RLA preempts "nothing more" than claims identified in the two-part test.  *Alaska

Airlines*, 898 F.3d at 920.  "Congress did not intend to preempt state law claims simply because

they in some respect implicate CBA provisions, make reference to a CBA-defined right, or create

a state law cause of action factually parallel to a grievable claim."  *Id.* (cleaned up).  An

employer's obligations under the CBA do not "relieve" it of other obligations imposed by law.

*Hawaiian Airlines*, 512 U.S. at 258.

### A.    Right Created by the CBA

Defendant first argues that Plaintiff's claims arise entirely from Article 32.7 of the CBA,

Attendance Policy—Record Improvement.  (Dkt. No. 14-1 at 206, 215–16.)  It states, in relevant

part:

> A Flight Attendant may Record Improve in one of the following ways each Quarter:
>
> 1. No Chargeable Occurrences During A Quarter: For each calendar Quarter during which a Flight Attendant is active for the entire Quarter and has no chargeable occurrences during the entire Quarter, two (2.0) points will be deducted from the Flight Attendant's accumulated point total until the total reaches zero (0).  Time on leave of absence other than a single [on-the-job injury] occurrence of four (4) working days or less (limited to once per calendar year), funeral leave, and jury duty will not permit Record Improvement.

United States District Court
Northern District of California

1    (*Id.* at 215.)

2          Article 32.7 creates a right, or at least a benefit, to "record improve" by having two points

3    deducted if an employee has no chargeable violations in a quarter and is not on leave other than

4    on-the-job injury leave, funeral leave, or jury duty leave.  Plaintiff's claims arise from a different

5    asserted right: the right to take family and medical leave without penalty, which is created by the

6    FMLA and CFRA.  Article 32.7 is not a source, let alone the "only" source, of that right.  *See*

7    *Alaska Airlines*, 898 F.3d at 920.  "[C]laims are not simply CBA disputes by another name, and so

8    are not preempted under this first step, if they just refer to a CBA-defined right; rely in part on a

9    CBA's terms of employment; run parallel to a CBA violation; or invite use of the CBA as a

10   defense."  *Id.* at 921 (cleaned up).  Plaintiff's claims refer to the Record Improvement policy laid

11   out in the CBA, but they are rooted in a right to take leave that does not come from the CBA.  *See*

12   *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1039–40 (9th Cir. 2016) (concluding,

13   where CBA required employer to remit deductions monthly but set no date, and state law set a due

14   date of seven days after wages were regularly due, that Plaintiff's claim that employer failed to

15   timely remit deductions was "independent of" his CBA rights).  Thus, Plaintiff's claims are not

16   preempted at the first step.

17        **B.      Substantially Dependent on Analysis of the CBA**

18          Defendant also argues that Plaintiff's claims substantially depend on analysis of the CBA.

19   Defendant construes Plaintiff's complaint as asserting that the Record Improvement policy entitles

20   him to a two-point deduction even though he took FMLA leave.  But the complaint asserts that the

21   FMLA and CFRA entitle Plaintiff to take leave without penalty, and that Defendant used the

22   Record Improvement policy to penalize him by termination.

23          These claims do not substantially depend on analysis of the CBA for the same reasons as

24   *Alaska Airlines*.  There, the airline's CBA did not allow scheduled vacation days to be moved for

25   family medical reasons, which the plaintiff alleged violated state law "guarantee[ing] workers the

26   flexibility to use accrued sick leave or other paid leave for family medical reasons."  898 F.3d at

27   914.  The Ninth Circuit held that although the plaintiff's claim "of course *relies on* the terms and

28   conditions of employment established by the CBA" and "may be aided by *reference to* certain

other CBA provisions," "there is no disagreement about the meaning or application of any relevant CBA-covered terms." *Id.* at 927. There as here, the leave rights created by the FMLA and CFRA "appl[y] to all workers, whether CBA-covered or not," and thus do not give rise to "a dispute concerning the meaning of the CBA." *Id.* Plaintiff's claims may require the Court to "look to" the Record Improvement policy in the CBA, but there is no real dispute about how the policy was applied. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007); *see also Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."); *see also Felt v. Atchison, Topeka & Santa Fe Ry. Co.*, 60 F.3d 1416, 1420 (9th Cir. 1995) (rejecting employer's argument that because its "defense to [plaintiff's] charge of religious discrimination is based on a contractual right to terminate [his] protected status when he failed to bid on the available slot, the CBA is implicated and the dispute is minor").

Tellingly, the March 2019 rule under which a flight attendant's use of intermittent FMLA leave disqualifies him from record improvement is not in the CBA. The CBA containing the Record Improvement policy took effect in 2013, (Dkt. No. 14-1 at 2), and the complaint alleges that Defendant unilaterally announced the rule in March 2019, (Dkt. No. 1 ¶¶ 13–15). Plaintiff's claims challenge the March 2019 rule, which led to his termination by way of the Record Improvement policy. Therefore, Defendant's focus on the Record Improvement policy is misplaced.

Defendant argues that the Court must interpret the CBA's terms about other kinds of leave to assess whether Defendant treats intermittent FMLA leave differently from equivalent leave. The Court is not persuaded. As explained further below, Plaintiff is not required to prove that Defendant treated FMLA leave differently from equivalent leave. *Cf. Ellington v. United Airlines, Inc.*, No. 1:20 CV 115, 2021 WL 4268243, at *7 (N.D. Ohio July 30, 2021) (noting that plaintiff's FMLA claims "depend[] on a finding that she 'gave as much notice as possible' and that her situation constituted 'an emergency,'" both terms from the CBA). Plaintiff's theory is that Defendant penalized him for taking FMLA leave, which does not require comparison to

"equivalent" leave and thus does not require substantial analysis of the CBA. *Cf. Columbia Exp.*, 23 F.4th at 844 (concluding claims were substantially dependent on interpretation of CBA, where employer alleged union workers inflated their work hours and union asserted that the hours "were expressly authorized by [employer] and charged in accordance with the CBA"); *McKinley v. Sw. Airlines Co.*, 680 F. App'x 522, 524 (9th Cir. 2017) (same, where plaintiff alleged employer failed to pay "regular rate of pay," "non-discretionary incentive pay," and "shift differential pay," all of which were defined only in the CBA).

Defendant also argues that the legal issue underlying Plaintiff's claims is currently in arbitration as a minor grievance. (*See* Dkt. No. 13-1.)[4] The union filed a group grievance alleging that Defendant "violated Article 3 § 2, Article 15 § 6, Article 19 §§ 3.I-K., and/or Article 32 §§ 7.A.1, 7.A.3. and 7.D. of the [Collective Bargaining] Agreement, through its changes to the treatment of [Intermittent Family Medical Leave] effective March 1, 2019." (Dkt. No. 13-1 at 3.) Whether the March 2019 rule violates the CBA is distinct from whether it violates the FMLA and CFRA. The rule may have been procedurally and substantively proper under the CBA, but it may have nevertheless improperly purported to "extinguish" an independent legal right. *Alaska Airlines*, 898 F.3d at 914; *see also Terminal R.R. Ass'n of St. Louis v. Brotherhood of R.R. Trainmen*, 318 U.S. 1, 7 (1943) ("[I]t cannot be that the minimum requirements laid down by state authority are all set aside.").

Accordingly, Plaintiff's claims are not preempted at the second step. The Court has subject matter jurisdiction over this action.

## II.     FAILURE TO STATE A CLAIM

In the alternative to its lack of subject matter jurisdiction argument, Defendant moves to dismiss Plaintiff's complaint for failure to state a claim.

### A.     FMLA Claims

Defendant argues that the FMLA claims fail because Plaintiff does not and cannot allege

---

[4] The Court takes judicial notice of the arbitrator's May 14, 2021 order, (Dkt. No. 13-1), as an adjudicative fact under Federal Rule of Evidence 201(b). *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

United States District Court
Northern District of California

1   that employees on equivalent types of leave are treated differently from employees on FMLA

2   leave.  (Dkt. No. 12-1 at 16–19.)

3       "[T]he FMLA creates two interrelated, substantive employee rights: first, the employee has

4   a right to use a certain amount of leave for protected reasons, and second, the employee has a right

5   to return to his or her job or an equivalent job after using protected leave."  *Sanders v. City of*

6   *Newport*, 657 F.3d 772, 777 (9th Cir. 2011).  "The FMLA does not entitle the employee to any

7   rights, benefits, or positions they would not have been entitled to had they not taken leave.  It

8   simply guarantees that an employee's taking leave will not result in a loss of job security or in

9   other adverse employment actions."  *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003)

10  (citation omitted).  The statute "sets forth two very different ways to protect these substantive

11  rights": the entitlement or interference theory and the retaliation or discrimination theory.

12  *Sanders*, 657 F.3d at 777.  Plaintiff brings a claim for interference and a claim for discrimination

13  and retaliation.  (Dkt. No. 1 ¶¶ 47–56.)  Defendant's arguments go to the interference claim, so

14  that is what the Court will address.

15      "[I]t is unlawful for any employer to interfere with, restrain, or deny the exercise of or the

16  attempt to exercise" the substantive rights guaranteed by the FMLA.  *Sanders*, 657 F.3d at 777.

17  Interference is "activity that tends to chill an employee's freedom to exercise FMLA rights."

18  *Olson v. United States ex rel. Dep't of Energy*, 980 F.3d 1334, 1338 (9th Cir. 2020).  "Thus, the

19  inquiry for interference is whether the employer's conduct makes an employee less likely to

20  exercise their FMLA leave rights because they can expect to be fired or otherwise disciplined for

21  doing so."  *Id.*  "FMLA interference can take many forms including, for example, using FMLA

22  leave as a negative factor in hiring, promotions, disciplinary actions, and no-fault attendance

23  policies."  *Id.*  To prevail on an interference claim, a plaintiff "need only prove by a preponderance

24  of the evidence that her taking of FMLA-protected leave constituted a negative factor in the

25  decision to terminate her.  She can prove this claim, as one might any ordinary statutory claim, by

26  using either direct or circumstantial evidence, or both."  *Bachelder v. Am. W. Airlines, Inc.*, 259

27  F.3d 1112, 1125 (9th Cir. 2001).

28      Plaintiff alleges he ended 2019 with a balance of 9.5 points but that he would have had

United States District Court
Northern District of California

8

only 7.5 points had he not taken FMLA leave.  He alleges Defendant told him that it based its termination decision on his point balance.  These allegations plausibly support an inference that Plaintiff's leave was a negative factor in the decision to terminate him; it quite literally gave him a worse score.  The allegations plausibly support an inference that employees would be less likely to exercise their FMLA leave rights because doing so would increase their chances of termination. *See Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 476–77 (6th Cir. 2019); *see also Xin Liu*, 347 F.3d at 1136–37 (finding triable issue of fact as to whether supervisor considered plaintiff's leave in recommending termination).

The Sixth Circuit's opinion in *Dyer* is instructive.  There, the CBA's attendance policy assessed .5 to 1.5 points per absence and terminated employees who accumulated 11 points.  934 F.3d at 474.  Under the CBA's "Attendance Point Reduction Schedule" one point would be deducted:

> for each rolling 30 day period wherein an employee has perfect attendance.  Vacations, Bereavement, Jury Duty, Military Duty, Union Leave and Holidays will count toward the 30 days all other excused absences will not be included. [sic]

*Id.*  Thus, "while [Defendant] did not *add* points for absence due to FMLA leave, it classified FMLA leave as an absence that 'reset' the 30-day perfect attendance clock." *Id.* at 474–75.  The court held that "a jury could reasonably find that forcing Dyer to choose between taking needed FMLA leave and enjoying the bargained-for terms of his employment relationship improperly interfered with his FMLA rights." *Id.* at 476.  The points reduction policy could be considered a negative factor, *see* 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(c) ("[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions."); or alternatively an accrued benefit to which Dyer was entitled after returning from leave, *see* 29 U.S.C. § 2614(a)(2)–(3); 29 C.F.R. § 825.215(d)(1) ("At the end of an employee's FMLA leave, benefits must be resumed in the same manner and at the same levels as provided when the leave began.").  Both could support an interference claim.  *See Dyer*, 934 F.3d at 476–78.

Defendant's insistence that *Dyer* rested on a genuine dispute as to whether the employer treated equivalent leave differently is unpersuasive.  After concluding that "a jury could find that

United States District Court
Northern District of California

1    [the] policy interfered with Dyer's FMLA rights by not freezing the accrual of perfect attendance

2    during his leave," the court added:

> In addition, [Defendant] is not entitled to summary judgment if
> FMLA leave is treated less favorably than other equivalent leave
> statuses. The district court held that the policy did not violate the Act
> because "equivalent" non-FMLA leave also interrupts the 30-day
> window. But, under [Defendant's] policy, there is a disputed issue of
> material fact as to what constitutes "equivalent" leave and whether
> any equivalent leave statuses similarly reset the point-reduction clock.

7    *Id.* at 478. Thus, the factual dispute about equivalent leave was a separate and independent reason

8    to reverse summary judgment. Therefore, *Dyer* does not support Defendant's contention that

9    Plaintiff must allege Defendant treated FMLA leave differently from equivalent leave. It did not

10   analyze equivalent leave to conclude that the points reduction policy could support a negative

11   factor interference theory or a benefit interference theory. The case cannot reasonably be

12   interpreted as requiring proof of differential treatment of equivalent leave as an element of an

13   FMLA interference claim. Nor has Defendant cited any Ninth Circuit requiring that element.

14   The Department of Labor's 1999 and 2018 opinion letters do not dictate otherwise. The

15   letters require "that accrual toward point reduction must, at the very least, be frozen during FMLA

16   leave." *Id.* at 477 (giving DOL opinion letters persuasive effect). The 2018 letter found no

17   FMLA violation where points were to remain on an employee's record for 12 months of "'active

18   service' after accrual," and the employer froze an employee's points while on leave. 2018 FMLA

19   Ltr., 2018 WL 4678694 (Aug. 28, 2018). If an employee had a certain point balance for six

20   months and then went on leave for one month, she would return to the same point balance that

21   would remain on her record for six more months. *Id.* at *1–2. The 1999 letter opined:

> If the employee had 45 days without a recordable incident at the time
> the unpaid FMLA leave commenced, the employer would be
> obligated to restore the employee to this number of days credited
> without an incident. The employer could neither count the FMLA
> leave period towards an attendance control policy for potential
> termination, nor credit the unpaid FMLA leave towards the recordable
> time for dropping such points.

26   1999 FMLA Ltr., 1999 WL 1002428, at *2 (Jan. 12, 1999). Neither letter precisely matches

27   Plaintiff's complaint, in which the policy refers to a fixed calendar quarter rather than requiring a

28   streak of perfect days at any time of the year. In any event, Plaintiff alleges Defendant did not

United States District Court
Northern District of California

1   freeze his balance while on leave (as the letters require) because Defendant allowed his leave days

2   to spoil the calendar quarter.  *See Dyer*, 934 F.3d at 478 ("[A] jury could find that [Defendant's]

3   policy interfered with Dyer's FMLA rights by not freezing the accrual of perfect attendance during

4   his leave.").

5          Finally, Defendant argues that the point reduction policy is a benefit comparable to a

6   performance bonus.  *See Jefferson v. Time Warner Cable Enters. LLC*, 584 F. App'x 520, 523 (9th

7   Cir. 2014).  The policy at issue in *Jefferson* awarded monthly monetary bonuses based on metrics

8   "including the average time it takes to handle an incoming call and the percentage of customers an

9   employee successfully retains."  *Jefferson v. Time Warner Cable*, No. CV 11-5637-GW(CWx),

10  2012 WL 12887692, at *2 (C.D. Cal. July 23, 2012).  The employer designed the bonus system:

11               to account for time taken off for purposes such as sick leave, FMLA
                 leave, or vacations by setting performance goals low enough that any
12               employee who is present for fifty percent or more of the cycle hours
                 should achieve a score higher than a tier one.  If an employee is absent
13               for fifty percent or more of the cycle, then the goals do not apply and
                 the employee will not be penalized for failing to achieve performance
14               expectations.

15  *Id.* at *3 (citation omitted); *see id.* at *16.  The policy here is not comparable to that bonus because

16  it takes away something to which Plaintiff would have been entitled had he not taken leave.

17         Accordingly, the complaint states a claim for interference under the FMLA.

18         **B.     State Law Claims**

19         The CFRA is the "state counterpart" to the FMLA and "the same standards apply."  *Xin*

20  *Liu*, 347 F.3d at 1132 & n.4.  For this reason, Defendant has not established that the CFRA

21  interference claim is insufficiently pleaded or fails as a matter of law.  Similarly, Defendant has

22  not established that the wrongful termination and unfair competition claims fail as derivative of

23  the FMLA and CFRA claims.

24  **III.    CLASS CLAIMS**

25         Finally, Defendant argues that Plaintiff's class claims, (Dkt. No. 1 ¶¶ 47–77), are

26  improperly pleaded under Federal Rule of Civil Procedure 23.  According to Defendant, the

27  FMLA adopted the opt-in collective action scheme of the federal Fair Labor Standards Act

28  ("FLSA").  *See* 29 U.S.C. § 216(b).

United States District Court
Northern District of California

1    There is a "presumption that class actions are available unless Congress expressed its

2    contrary intent." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 716 (9th Cir. 2010) (citing

3    *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) ("In the absence of a direct expression by

4    Congress of its intent to depart from the usual course of trying 'all suits of civil nature' under the

5    Rules established for that purpose, class relief is appropriate in civil actions brought in federal

6    court.")).  The FMLA has no expression comparable to the FLSA, which explicitly provides: "No

7    employee shall be a party plaintiff to any such action unless he gives his consent in writing to

8    become such a party and such consent is filed in the court in which such action is brought."  29

9    U.S.C. § 216(b).  Defendant points only to the two statutes' use of the phrase "similarly situated,"

10   *id.* §§ 216(b), 2617(a)(2)(B), and a piece of the FMLA legislative history explaining that it is

11   modeled on the FLSA enforcement scheme.  Neither sheds light on the distinction between Rule

12   23 class actions and opt-in collective actions, much less provides a "direct expression" of an intent

13   to depart from the "usual course" of class actions under Rule 23.  *Califano*, 442 U.S. at 700.

14   Defendant cites only one case that reached this conclusion.  *Clary v. Sw. Airlines*, No.

15   3:07-CV-0126-P, 2007 WL 4947690, at *1–2 (N.D. Tex. Dec. 17, 2007); *see also Anderson v.*

16   *Sch. Bd. of Gloucester Cty., Va.*, No. 3:18cv745, 2020 WL 2832475, at *31 n.47 (E.D. Va. May

17   29, 2020) (concluding that FMLA rights, like FLSA rights, cannot be enforced using Section

18   1983); *Schonewolf v. Waste Mgmt., Inc.*, No. CV 17-3745, 2018 WL 1381133, at *5 (E.D. Pa.

19   Mar. 19, 2018) (concluding that liquidated damages under FMLA, like under FLSA, are

20   remedial).  *Clary* used this conclusion to deny class certification, not to dismiss class claims as

21   pleaded.  2007 WL 4947690, at *1–2.  Defendant cites no authority that applies to the procedural

22   posture here.  Even on its own terms, however, *Clary* is not persuasive because the Ninth Circuit

23   has instructed that class actions are presumed available unless Congress expresses otherwise in the

24   statute at issue.  *See Bateman*, 623 F.3d at 716; *see also Carrel v. MedPro Grp., Inc.*, No. 1:16-

25   CV-130-TLS, 2017 WL 1488359, at *3 (N.D. Ind. Apr. 26, 2017) (rejecting *Clary*).

26   Accordingly, the complaint's invocation of Rule 23 is no basis for dismissal.

27                                    **CONCLUSION**

28   Defendant's motion to dismiss is DENIED.  The Court will hold an initial case

United States District Court
Northern District of California

1    management conference on June 2, 2022 at 1:30 p.m. by Zoom video.  The parties shall submit an

2    updated joint case management conference statement one week in advance.

3            This Order disposes of Docket No. 12.

4            **IT IS SO ORDERED.**

5    Dated: May 12, 2022

6

7

8                                                  JACQUELINE SCOTT CORLEY
                                                   United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

13