JASON M. ERLICH, Bar No. 203661
  Email: jason@erlichlawfirm.com
ERLICH LAW FIRM, P.C.
180 Grand Ave., Suite 1380
Oakland CA 94612
Tel: (510) 390-9140
Fax: (510) 369-3876

Jennie Lee Anderson, Bar No. 203586
  Email: jennie@andrusanderson.com
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Tel:   (415) 986-1400
Fax:   (415) 986-1474

Attorneys for Plaintiff and Proposed Class and Subclass
RORESTE REFUERZO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RORESTE REFUERZO and SELINA CASHIN, on behalf of themselves and others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>SOUTHWEST AIRLINES CO.,<br><br>        Defendant. | Case No. 3:22-cv-00868-JSC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        September 5, 2024<br>Time:        10:00 a.m.<br>Location:    Courtroom 8, 19th Floor<br>            Phillip Burton Federal Building<br>            450 Golden Gate Avenue<br>            San Francisco, CA 94102 |

**Contents**

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION.....................................1

STATEMENT OF RELIEF REQUESTED ...........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................3

I.    INTRODUCTION..................................................................................................3

II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................4

      A.    The Subject Policy..............................................................................4

      B.    The Operative Complaint ...................................................................6

            1.    The Proposed Classes ...........................................................6

            2.    The Class Representatives .....................................................8

            3.    The Causes of Action ............................................................9

III.  ARGUMENT .......................................................................................................10

      A.    The Rule 23(a) Requirements Are Satisfied.......................................10

            1.    Rule 23(a)(1) Is Satisfied. ....................................................10

            2.    The Class Shares Common Issues of Law and Fact...............14

            3.    Ms. Cashin and Mr. Refuerzo's Claims Are Typical of the Class Claims..........................................................................15

            4.    Counsel and the Class Representatives Will Continue to Adequately Protect the Classes' Interests. ...........................16

      B.    The Rule 23(b)(3) Requirements Are Satisfied...................................16

            1.    Common Issues Predominates Over Subordinate Issues .........16

            2.    A Class Action is the Superior Method of Adjudication...........18

IV.   CONCLUSION ....................................................................................................19

# TABLE OF AUTHORITIES

### Cases

*A.B. v. Hawaii State Department of Education*, 30 F.4th 828 (9th Cir. 2022)....................................11

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (1997) ...............................16

*Bublitz v. E.I. du Pont de Nemours and Co.*, 202 F.R.D. 251 (S.D. Iowa 2001) ...............................14

*Castillo v. Bank of America, NA*, 980 F.3d 723 (9th Cir. 2020) ....................................15, 16

*Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) .........................................11

*Gaspar v. Linvatec Corp.*, 167 F.R.D. 51 (N.D. Ill. 1996) ...............................13, 18

*Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318(1980) ....................................10

*Gen'l Tel. of Southwest v. Falcon*, 457 U.S. 158 n. 13 (1982)....................................15

*Gold v. Midland Credit Management, Inc.*, 306 F.R.D. 623 (C.D. Cal. 2014)..................................10

*Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419 (N.D. Cal. 2011)....................................Passim

*In re Beer Distribution Antitrust Litigation*, 188 F.R.D. 557 (N.D. Cal. 1999)...........................10, 13

*Johns v. Bayer Corp.*, 280 F.R.D. 551 (S.D. Cal. 2012) ....................................17

*Johnson v. Gen. Mills, Inc.*, 276 F.R.D. 519 (C.D. Cal. 2011) ....................................17

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012)..................................16

*O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479 (N.D. Cal. 2011) ................................10, 12

*Olean Wholesale Grocery Coop., Inc., et al.  v. Bumble Bee Foods LLC, et al.*,
    31 F. 4th 651, n. 14 (9th Cir. 2022)....................................12

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*,
    188 F.R.D. 365 (D. Or. 1998) ....................................17

*Robidoux v. Celani*, 987 F.2d 931 (2nd Cir. 1993) ....................................10, 11

*Ruiz Torrez v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1138 and n. 7 (9th Cir. 2016)....................12,16

*Scott v. California Forensic Medical Group*,  Case No. 2:16-cv-03084-DSF (RAOx),
    2020 WL 10501243 at *2 (C.D. Cal., September 30, 2020) ....................................11

*Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir 2006) ....................................13

*Twegbe v. Pharmaca Integrative Pharmacy, Inc.*,

    No. CV 12-5080 CRB, 2013 WL 3802807 at *2 (N.D. Cal. July 17, 2013) ..........................Passim

*Vaquero v. Ashley Furniture Indus., Inc*. 824 F.3d 1150 (9th Cir. 2016) ...........................................15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).........................................................................15

### Other Authorities

7A Wright et al., Federal Practice & Procedure § 1762 (3d ed.) .......................................................11

McLaughlin, *McLaughlin on Class Actions* § 4:6....................................................................................11

William B. Rubenstein, Newberg on Class Actions § 3:13–14 (5th ed., 2011).....................10, 11, 12

### Rules

FRCP Rule 23(a) ....................................................................................................................Passim

FRCP Rule 23(b) ....................................................................................................................Passim

### Regulations

29 C.F.R. § 825.102 ..................................................................................................................4

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

PLEASE TAKE NOTICE THAT on September 5, 2024 at 10:00 A.M., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, Floor 19, Courtroom 8, before the Honorable Jacqueline Scott Corley, Plaintiffs will, and hereby do, move the Court for an order under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure certifying the classes, and appointing the class representatives and class counsel, as detailed below.

**STATEMENT OF RELIEF REQUESTED**

Plaintiffs' Selina Cashin ("Plaintiff Cashin") and Roreste Refuerzo ("Plaintiff Refuerzo") (together with the proposed classes, "Plaintiffs") move, pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure ("FRCP" or "Rules"), to certify as a class action their claims on behalf of the proposed classes described below against Defendant Southwest Airlines Co. ("Defendant" or "Southwest"). Specifically, Plaintiffs seek certification of the following classes and subclasses:

**The "(b)(2) Nationwide Injunctive Relief Class"**

All Southwest flight attendants based in the United States since March 1, 2019 to present who exercised their rights to family and medical leave and consequently lost access to disciplinary points reduction.

**The "(b)(2) California Subclass"**

All Southwest flight attendants based in California since March 1, 2019 to present who exercised their rights to family and medical leave and consequently lost access to disciplinary points reduction.

**The "(b)(3) Nationwide Damages Class"**

All Southwest flight attendants based in the United States since March 1, 2019 to present who exercised their rights to family and medical leave and consequently lost access to a disciplinary points reduction and were subsequently terminated for an accumulation of disciplinary points.

**The "(b)(3) California Subclass"**

All Southwest flight attendants based in California since March 1, 2019 to present who exercised their rights to family and medical leave and consequently lost access to a disciplinary points reduction and were subsequently terminated for an accumulation of disciplinary points.

- 1 -

Plaintiffs also seek appointment of Plaintiff Cashin as the class representative for the (b)(2) Nationwide Injunctive Relief Class and the (b)(2) California Subclass; and appointment of Plaintiff Refuerzo as the class representative of the (b)(3) Nationwide Damages Class and the (b)(3) California Subclass. Finally, Plaintiffs seek appointment of Andrus Anderson LLP and the Erlich Law Firm, P.C. as class counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This class action was filed by Plaintiff Cashin and Plaintiff Refuerzo on behalf of themselves and other flight attendants who were penalized by Southwest for taking leave under the Family and Medical Leave Act ("FMLA") and/or the California Family Rights Act ("CFRA") (collectively referred to herein as "FMLA"). This penalty operates by barring flight attendants who take FMLA leave from having access to disciplinary point reductions.

Class certification is appropriate as Plaintiffs meet the prerequisites of Rules 23(a) and 23(b). Joinder is impracticable for all flight attendants whose FMLA rights were interfered with by Southwest's policy. The collective number of class members is in the thousands which satisfies FRCP 23(a)(1). While Defendant has stymied the identification of all class members by refusing to provide contact information, it is clear that class members of both the injunctive and damages classes are spread widely throughout the country. Moreover, a variety of factors diminish class members' willingness to bring suit. Accordingly, joinder is impracticable, and Plaintiffs' meet the numerosity requirement. Common questions of law and fact also exist in satisfaction of Rule 23(a)(2). In fact, a single issue pierces the center of the claims brought by the injunctive class and the damages: whether Southwest has violated the FMLA through its policy of barring flight attendants from disciplinary point reductions when they exercise leave rights guaranteed under the FMLA. This is the core issue common to every class member. Accordingly, commonality is met.

Typicality and adequacy are satisfied under FRCP 23(a)(3)-(4). Both lead Plaintiffs were harmed by the subject policy: Plaintiff Cashin lost access to point reduction after taking intermittent FMLA leave, and Plaintiff Refuerzo was fired for disciplinary point accumulation after losing access to a point reduction because he took FMLA leave. As Plaintiff Cashin's experience goes to the heart of the experience of all members of the injunctive class, and Plaintiff Refuerzo's experience goes to the heart of the experience of all members of the damages class, they meet the typicality requirement. For the same reason, Plaintiffs Cashin and Refuerzo meet the adequacy requirement, and their counsel are experienced and capable of litigating the class claims.

As to the requirements of Rule 23(b)(2), Southwest has acted and refused to act on grounds that apply the same to all class members. Indeed, the challenged policy was and continues to be applied in an identical manner to all.

Finally, Rule 23(b)(3) predominance and superiority are established. First, the question of whether Southwest's policy violates the FMLA predominates over all individual issues here, including calculation of damages. Plaintiffs' economic and statistical expert offers a simple foundation for the measurement of classwide damages, subject to easily obtainable mitigation evidence. Second, the class action mechanism is superior to any other method of adjudicating Plaintiffs' claims. There is a single, core issue at stake, and Plaintiffs offer a clean, well-ordered trial plan that highlights the many efficiencies of bringing these claims as a class action.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Subject Policy

On March 1, 2019, Southwest unilaterally implemented a change to the way it treats its flight attendants' use of intermittent FMLA leave. Going forward from that date, Southwest decreed that intermittent FMLA leave would disqualify a flight attendant from a procedure known as "record improvement" when they exercised their statutory right to FMLA leave. Southwest—as Plaintiffs learned during discovery—was already barring flight attendants who took continuous FMLA leave from record improvement, so attaching the penalty to intermittent use brought their policy into alignment as between flight attendants who take intermittent and continuous FMLA leave.[1] (Declaration of Jason M. Erlich ("Erlich Decl."), Ex. 1, Policy Change Announcement.)

Southwest's attendance and disciplinary-point policies are straightforward, and there is no dispute between the parties as to how they function. Southwest assesses "points" for attendance and disciplinary violations. (Erlich Decl., Ex. 2, Deposition of Sarah Hill ("Hill Dep.") at 15:9-21; Erlich Decl., Ex. 3, "Quick Reference Chart for Attendance and Leaves/Contractual Record Improvement".)

---

[1] The FMLA implementing regulations define "intermittent leave" as "leave taken in separate periods of time due to a single illness or injury, rather than for one continuous period of time, and may include leave of periods from an hour or more to several weeks." 29 C.F.R. § 825.102.

The points for attendance infractions vary by severity.  For example, if a flight attendant "might be late" for a planned shift, but eventually makes the shift, the flight attendant is assessed 0.5 points.  But more severe infractions such as a "no show," or if Southwest's scheduling department is "unable to contact" a flight attendant, the Flight Attendant is assessed 2.5 points. (Erlich Decl., Ex. 2.) Flight attendants receive various levels of discipline as their points total crosses ascending thresholds. (Erlich Decl., Ex. 2, Hill Dep. at 46:14-21; Ex. 4, Plaintiff Refuerzo's Termination Memo.) When a flight attendant accumulates 12 points, Southwest verifies the accuracy of the points, and the flight attendant is terminated. (Erlich Decl., Hill Dep. at 49:8-22.)

Southwest offers flight attendants four "record-improvement" devices that allow for point reductions through good attendance hygiene: (1) "No Chargeable Occurrences During a Quarter," where a flight attendant is eligible for 2 point reduction; (2) "Perfect Attendance During a Quarter" where a flight attendant is eligible for 2 point reduction; (3) "Fourth Quarter Record Improvement Bonus" where flight attendants who have 4 points or fewer can have their points reduced to zero; and (4) "December Record Improvement Bonus" where a flight attendant is eligible for 1 point reduction. (Erlich Decl., Ex. 3.)

Prior to March 2019, Southwest was already attaching a negative consequence to flight attendants' exercise of FMLA rights by disqualifying attendants who take FMLA continuous leave from record-improvement mechanisms. (Erlich Decl., Ex. 5, Catherine Rea April 25, 2023 Dep. ("Rea April 2023 Dep.") at 24:8-15.) In February of 2019, Southwest announced the changes to its Record Improvement and FMLA policies for intermittent leave. (Erlich Decl., Ex. 1.) Under the new rule, which went into effect on March 1, 2019, a flight attendant's use of intermittent FMLA leave disqualified the flight attendant from record improvement. (Erlich Decl., Ex. 5, Rea April 2023 Dep. at 38:6-9; 39:8-40:5.) This policy functions to penalize flight attendants for taking protected FMLA leave. Specifically, employees who exercise their statutory right to FMLA leave *lose* the benefit of point reductions to which they would otherwise be entitled.

The result is that the exercise of FMLA leave places employees in a materially worse position. For those employees who receive this penalty and who are subsequently terminated, it always plays a role in the termination decision. Given the lockstep and numerical nature of

Southwest's disciplinary system, where a flight attendant is fired after reaching 12 points, the inability to record improve is invariably a clear negative factor in the termination. For employees who remain with Southwest, the policy serves as a deterrent to the exercise of the right to intermittent family and medical leave.

In its motion to dismiss, Defendant argued that the subject policy does not violate the FMLA, contending that the access to record improvement that flight attendants lose by taking FMLA leave amounts to a bonus that an employee earns by showing up to work. In denying the motion, the Court found that Plaintiffs adequately stated a cause of action for interference under the FMLA and rejected Defendant's bonus argument, finding that the policy instead attached a negative consequence, as it "takes away something to which Plaintiff would have been entitled had he not taken leave." (ECF Doc. No. 25 at 11.)

**B.    The Operative Complaint**

After learning in discovery that Southwest was violating the FMLA rights of flight attendants who take continuous FMLA leave as well as those who take intermittent FMLA leave, Plaintiffs filed their Second Amended Complaint on August 24, 2023 (the "SAC") to include allegations that the challenged practice impacted Southwest flight attendants taking both intermittent and continuous leave.  (ECF Doc. No. 84.)  Defendant did not object to or move against the SAC. Plaintiffs had previously amended the Complaint as a matter of right to add Selina Cashin as a representative for the injunctive class. (ECF Doc. No. 36.)

1.    The Proposed Classes

Plaintiffs propose two Nationwide classes and two California subclasses.  The class definitions have remained the same for the duration of this lawsuit.

a.    The (b)(2) Injunctive Relief Class

The "(b)(2) Nationwide Injunctive Relief Class," represented by Plaintiff Cashin, is organized under FRCP Rule 23(b)(2). The class is defined as:

All Southwest flight attendants based in the United States since March 1, 2019, to present who exercised their rights to family and medical leave and consequently lost access to disciplinary points reduction.

- 6 -

The "(b)(2) California Subclass" is defined as:

All Southwest flight attendants based in California since March 1, 2019, to present who exercised their rights to family and medical leave and consequently lost access to disciplinary points reduction.

(SAC, ¶ 39.)

Hereinafter, the (b)(2) Nationwide Injunctive Relief Class and the (b)(2) California Subclass may collectively be referred to as the "(b)(2) Class."

The (b)(2) Class seeks a declaration that the subject policy violates the FMLA, and the (b)(2) California Subclass additionally seeks a declaration that the subject policy violates the FMLA's California counterpart, the CFRA. Additionally, the (b)(2) Injunctive Class seeks an order prohibiting the subject policy and requiring that all members of the (b)(2) Class be granted the point reductions they lost due to the subject policy. (SAC at 20-21.)

### b.    The (b)(3) Damages Class

The "(b)(3) Nationwide Damages Class" is organized under FRCP Rule 23(b)(3). It is defined as:

All Southwest flight attendants based in the United States since March 1, 2019, to present who exercise their rights to family and medical leave and consequently lost access to disciplinary points reduction and were subsequently terminated for an accumulation of disciplinary points.

(SAC, ¶ 37.)

The "(b)(3) California Subclass" is defined as:

All Southwest flight attendants based in California since March 1, 2019, to present who exercised their rights to family and medical leave and consequently lost access to a disciplinary points reduction and were subsequently terminated for an accumulation of disciplinary points.

(SAC, ¶ 38.)

Hereinafter the (b)(3) Nationwide Damages Class and the (b)(3) California Subclass may collectively be referred to as the "(b)(3) Class."

The (b)(3) Class seeks monetary damages related to their termination and injunctive relief.

- 7 -

2.    The Class Representatives

a.    Plaintiff Cashin

Plaintiff Cashin is the proposed class representative for (b)(2) Nationwide Injunctive Relief Class and the (b)(2) California Subclass.  Ms. Cashin began working for Southwest as a flight attendant in March of 2015. Ms. Cashin suffers from chronic otitis media, a condition affecting the eardrum and middle ear. Initially, Ms. Cashin feared retaliation for exercising her rights under the FMLA. (SAC, ¶ 31.) However, in May of 2018, the persistence of her condition required Ms. Cashin to apply for FMLA leave. (*Id*.) In March 2022, Ms. Cashin applied for intermittent FMLA leave for her chronic otitis media. (Erlich Decl., Ex. 6, FMLA Application of Plaintiff Cashin; SAC, ¶ 35.) On or about April 7, 2022, Southwest approved Ms. Cashin's intermittent FMLA allowing two absences per month for three days per leave, and Ms. Cashin used her intermittent FMLA two times in April 2022 and once each in May and June 2022. (Erlich Decl., Ex. 7, FMLA Approval re: Plaintiff Cashin.) Under Southwest's policy, Ms. Cashin was disqualified from record improvement for the April to June 2022 quarter. (Erlich Decl., Ex. 8, Southwest's First Supplemental Responses to Plaintiffs' Request for Admissions, No. 1.)

Southwest will not show flight attendants their disciplinary point status upon request. (SAC, ¶ 36.) However, it sends out notifications when flight attendants reach certain point-levels. (*Id*.) On May 6, 2022, Southwest informed Ms. Cashin that her point total was eleven, one shy of the twelve-point threshold at which Southwest terminates flight attendants.  (*Id*.; Erlich Decl., Ex. 9, Attendance Point Notification of Disciplinary Action Memorandum to Plaintiff Cashin.) A quarterly reduction of two points would have brought her point totals to a safer level and vouchsafed her a measure of job security. However, any use of protected FMLA leave would nullify her access to quarterly reduction. (SAC, ¶ 36.) This circumstance is a dramatic illustration of the deterrent force that Southwest's policy wields over thousands of flight attendants who are made to choose between their statutorily protected rights and the security of their jobs. Ms. Cashin's experience is a common one shared by all members of the (b)(2) Class, as she—like every other member of the class—lost access to point reduction by exercising rights guaranteed under the FMLA.

b.    Plaintiff Refuerzo

Plaintiff Refuerzo is the class representative for (b)(3) Nationwide Damages Class and the (b)(3) California Subclass. On August 25, 2006, Mr. Refuerzo began working for Southwest as a flight attendant. In May of 2019, Mr. Refuerzo applied for intermittent FMLA leave for a chronic knee injury. (SAC, ¶ 23.) On June 4, 2019, Southwest approved Mr. Refuerzo's intermittent FMLA leave request for two times per year and up to five days per leave. (*Id.*) In November and December of 2019, Mr. Refuerzo used his intermittent FMLA leave pursuant to Southwest's approval. (*Id.*)

In Mr. Refuerzo's final full quarter with Southwest, which comprised October through December of 2019, he accrued no chargeable offenses or penalty points. (SAC, ¶ 24; Erlich Decl., Ex. 10, Plaintiff Refuerzo's 2019 Attendance Record Points Calendar.)

Under Southwest's record improvement policy, this would typically have entitled Mr. Refuerzo to a two-point deduction. However, as Mr. Refuerzo exercised his right to intermittent FMLA leave, Mr. Refuerzo did not receive a two-point deduction. This penalty meant that Mr. Refuerzo ended 2019 with 9.5 disciplinary points instead of 7.5, resulting in his termination in February 2020, when he reached the twelve-point termination threshold. (Erlich Decl, Ex. 4.) Mr. Refuerzo's experience is typical of members of the for (b)(3) Nationwide Damages Class and the (b)(3) California Subclass who were also fired after being barred from point reduction for exercising rights provided under the FMLA.

3.    The Causes of Action

The SAC asserts five causes of action on a class basis:[2] (1) FMLA interference brought by Plaintiff Cashin and Plaintiff Refuerzo on behalf of the (b)(2) Class and the (b)(3) Class; (2) FMLA discrimination and retaliation brought by Plaintiffs Cashin and Refuerzo on behalf of the (b)(2) Class and the (b)(3) Class; (3) CFRA discrimination and retaliation brought by Plaintiffs Cashin and Refuerzo on behalf of the (b)(2) California Subclass and the (b)(3) California Subclass; (2) Wrongful termination in violation of public policy brought by Plaintiff Refuerzo on behalf of the (b)(3) California Subclass; and (5) unfair competition under California Unfair Competition Law, Bus. &

---

[2] The sixth and seventh causes of action are brought by Plaintiff Refuerzo as an individual. SAC, ¶¶ 96-99.

Prof. Code §17200, *et seq.*, ("UCL") brought by Plaintiffs Cashin and Refuerzo on behalf of the (b)(2) California Subclass and the (b)(3) California Subclass.

### III.   ARGUMENT

Plaintiffs' motion should be granted because, as explained below, the proposed classes meet the criteria of Rule 23(a), and also meet the requirements of Rule 23(b)(2) and 23(b)(3) for the proposed classes.

**A.   The Rule 23(a) Requirements Are Satisfied.**

Rule 23(a) sets out four prerequisites to class certification: (1) "the class is so numerous that joinder of all members is impracticable;" (2) "there are questions of law or fact common to the class;" (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" (4) "the representative parties will fairly and adequately protect the interests of the class." FRCP Rule 23(a)(1-4). Each Rule 23(a) prerequisite is satisfied here.

**1.   Rule 23(a)(1) Is Satisfied.**

Rule 23(a)(1) requires that the class is "so numerous that joinder of all members is impracticable." The Supreme Court has held that the prerequisite under Rule 23(a)(1) "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).

Plaintiffs need not prove the exact number of class members to prevail at the certification stage. *O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 488 (N.D. Cal. 2011) ("Plaintiffs need not state the exact number of class members"); *see also* William B. Rubenstein, Newberg on Class Actions § 3:13–14 (5th ed., 2011). Relatedly, courts have long held that "[n]o exact numerical cut-off can be stated" and that "there is no threshold number above which impracticability is presumed." *In re Beer Distribution Antitrust Litigation*, 188 F.R.D. 557, 561 (N.D. Cal. 1999); *see also Gold v. Midland Credit Management, Inc.*, 306 F.R.D. 623, 630 (C.D. Cal. 2014).

The focus of the inquiry "is less on the raw number and more on the impracticability of joinder." *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, No. CV 12-5080 CRB, 2013 WL 3802807 at *2 (N.D. Cal. July 17, 2013) (finding that joinder was impracticable for a class of 26-36 members), citing *Robidoux v. Celani*, 987 F.2d 931, 935-936 (2nd Cir. 1993). Courts have long

inflected this analysis with a reminder that "[i]mpracticable does not mean impossible." *A.B. v. Hawaii State Department of Education*, 30 F.4th 828, 837 (9th Cir. 2022), quoting *Robidoux*, 987 F.2d at 935. While a class of 40 raises a presumption of impracticability, courts have found the numerosity requirement met for much smaller classes. *See e.g., Greko v. Diesel U.S.A., Inc*., 277 F.R.D. 419, 425-426 (N.D. Cal. 2011) (finding that numerosity prerequisite met with a class of 19); *Scott v. California Forensic Medical Group*, Case No. 2:16-cv-03084-DSF (RAOx), 2020 WL 10501243 at *2 (C.D. Cal., September 30, 2020) (noting that "[f]orty or fewer class members have regularly been found sufficient").[3]

Courts analyzing impracticability "have identified a variety of factors relevant to whether joinder of all class members would be impracticable." *Twegbe*, 2013 WL 3802807 at *2. While noting that courts use different labels, the *Twegbe* court listed categories of consideration for interpreting impracticability:

"(1) the number of individual class members;

(2) the ease of identifying and contacting class members;

(3) the geographical spread of class members; and

(4) the ability and willingness of individual members to bring claims, as affected by their financial resources, the size of the claims, and their fear of retaliation in light of an ongoing relationship with the defendant."

*Id*., citing *Greko*, 277 F.R.D. 419, 425 (N.D.Cal.2011); 7A Wright et al., Federal Practice & Procedure § 1762 (3d ed.); McLaughlin, *McLaughlin on Class Actions* § 4:6; Rubinstein et al., *Newberg on Class Actions* § 3:11.

a.    The Classes Are Numerous

The number of flight attendants in the (b)(2) Class is over 9000.[4] The (b)(2) Class is defined as all "Southwest flight attendants based in the United States since March 1, 2019, to present who

---

[3] Courts in the Northern District, surveying the caselaw, have suggested a gray area where there is no typical resolution to the numerosity requirement between more than 21 class members and less than 40. *Celano v. Marriott Int'l, Inc*., 242 F.R.D. 544, 549 (N.D. Cal. 2007). However, "[e]xceptions to that rule abound." *Twegbe* at *2, citing Rubinstein et al., *Newberg on Class Actions* § 3.12 (5th Ed.).

[4] Due to Southwest's computer systems and the inability of Southwest to extract data, Plaintiffs have been provided two Excel Spreadsheets identifying flight attendant who were approved for FMLA leave.  The first sheet identifies **6176** individual flight attendants who were approved for leave from February 2018 to March 2023.  The second sheet identifies **2879** individual flight attendants approve for continuous FMLA leave from March 2019 to February 2024. (*See* Erlich Decl., ¶ 20.)

exercised their rights to family and medical leave and consequently lost access to disciplinary points reduction." This includes every Southwest flight attendant who took intermittent or continuous FMLA leave.[5]

Due to Southwest's ongoing failure to comply with its discovery obligations, the precise number of (b)(3) Class members is not yet certain.[6]  However, Plaintiffs are not required to prove the exact number of class members to prevail at the certification stage--only that the class is so numerous that joinder is impracticable. *O'Donovan*., 278 F.R.D. 479, 488 ("Plaintiffs need not state the exact number of class members"); *see also* William B. Rubenstein, Newberg on Class Actions § 3:13–14 (5th ed., 2011).

Here, using the data Southwest produced during discovery to date, Plaintiffs have identified 74 flight attendants who fall within the (b)(3) Class definition, i.e., they were subjected to the challenged policies, exercised their rights to family and medical leave and consequently lost access to disciplinary points reduction, and were subsequently terminated for an accumulation of disciplinary points. (See Erlich Decl., ¶ 21.)

Plaintiffs are not required to prove liability at this stage; nor is a "fail safe" class definition that includes only employees who were injured by Southwest's conduct appropriate. *See Olean Wholesale Grocery Coop., Inc., et al.  v. Bumble Bee Foods LLC, et al.*, 31 F. 4th 651, 669 n. 14 (9th Cir. 2022) ("A court may not, however, create a 'fail safe' class that is defined to include only those individuals who were injured by the allegedly unlawful conduct."), citing *Ruiz Torrez v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1138 and n. 7 (9th Cir. 2016).  Nevertheless, it is telling that Plaintiffs have identified at least 28 flight attendants from the records produced to date who were undisputedly terminated ***because of*** their FMLA use.  (See Erlich Decl., ¶ 23.)

In any event, when taken together with the other factors described below, the (b)(3) Class is also too impracticable for joinder. *See Twegbe* at 2-3 (finding that, while defendant maintained that

---

[5]  "[I]f the subclass members are also members of the larger, already certified class, courts have held that the subclass may not be required to satisfy independently the numerosity requirement." Newberg and Rubenstein on Class Actions, § 3:16.

[6]  For example, numerous "Points Calendars" (which show when a flight attendant takes FMLA leave, as well as disciplinary-point accruals and roll offs) are missing from Southwest's production despite repeated attempts to obtain this relevant data. See Erlich Decl. at ¶ 22.

there were 26 members in the class and the plaintiffs maintained that there were 36, either number met the requirements of 23(a)(1) after analyzing the other three factors).

b.  Class Members Are Dispersed Across the Country

Joinder is impracticable where class members are spread across the country. *In re Beer Distribution Antitrust Litig.*, 188 F.R.D. 557, 562 (N.D. Cal 1999) (holding that 25 class members were enough for a finding of impracticability where "the class members are spread out among the fifty states"). "Even a relatively small group of people may be difficult to join if they are spread out far enough." *Twegbe*, 2013 WL 3802807 at \*4. *See also Greko v. Diesel U.S.A*, 277 F.R.D. 419 (N.D. Cal. 2011) (finding a class of 19 members sufficiently numerous where members were "dispersed throughout California."); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 55–57 (N.D. Ill. 1996) (finding that 18 plaintiffs satisfied the numerosity requirement due to the geographic dispersion of the plaintiffs across three different states and the judicial economy of resolving the plaintiffs' claims in one suit).  Here, the (b)(3) class members are dispersed across at least eight different states – and are widely dispersed in multiple locations within each of the states – while the (b)(2) Class is likely dispersed across all 48 continental states and Hawaii, as Southwest operations extend  into all of those states. Given this wide geographic dispersal across the classes, joinder is impracticable.[7]

c.  Defendants Have Refused to Identify Putative Class Members

"When the identities, names, and locations of class members are knowable and known, joinder of those members is more practicable." *Twegbe*, 2013 WL 3802807 at \*3 (citing *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). And where the defendant has control over the identity and contact information of the putative class members but has refused to produce it in discovery, courts have found that joinder is all the more impracticable and that this factor weighs in favor of class certification. *Id.* at \*4. Here, Plaintiffs' Interrogatory No. 6 asked Defendant to "provide contact information (name, phone, last known street address, email address) for the Putative [(b)(3)] Class members…." (Erlich Decl., Ex. 12, Defendant's Responses to Plaintiffs' Interrogatories, Set

---

[7] The represented states include Arizona, California, Colorado, Florida, Georgia, Illinois, Maryland/Washington D.C., Nevada, and Texas.  These states represent the airport base where the flight attendant works from.  (*See* Erlich Decl., Ex. 11.)

Two.) Defendant, however, refused to provide the contact information sought. Plaintiffs do not know the identity or contact information for putative class members, which supports the conclusion that joinder is impracticable here.

d.     Class Members' Willingness to Sue Is Diminished by a Variety of Factors

Bringing a lawsuit against a current or former employer is hard.  It is rendered impracticable but for the class action mechanism in a wide variety of circumstances. "[A] class member presented with the opportunity to sue the company signing her paychecks would be reasonable to worry that the adversarial postures adopted in a lawsuit would spill over to the workplace." *Twegbe*, 2013 WL 3802807 at *5. Former workers may also suffer "a variety of unpleasant outcomes" for bringing suit against a former employer. *Id.*  For example, a common disincentive is that "former employees who might utilize (the former employer) as an employment reference may be unwilling to initiate an individual suit against the company." *Greko*, 277 F.R.D. at 425*; see also Bublitz v. E.I. du Pont de Nemours and Co*., 202 F.R.D. 251, 255–56 (S.D. Iowa 2001) (finding that 16 current employees and one former employee bringing class claims for ERISA violations with respect to their severance benefits met the numerosity requirement even in the absence of geographical dispersal).  Putative class members may also fear that suing a former employer could harm their prospects of employment generally.  Moreover, bringing an individual lawsuit may be cost prohibitive, particularly in circumstances where a flight attendant's economic damages are low because she was able to find new work relatively quickly after being terminated by Southwest.

These factors, taken together, support a finding that joinder is impracticable and that the classes meet the criteria of Rule 23(a)(1).

2.     The Class Shares Common Issues of Law and Fact

The prerequisite set out under Rule 23(a)(2) provides that there must be "questions of law or fact common to the class." Commonality, as the requirement is known, "means that the class members' claims 'must depend upon a common contention' and that the 'common contention, moreover, must be of such a nature that is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of

the claims in one stroke.'" *Vaquero v. Ashley Furniture Indus., Inc.* 824 F.3d 1150, 1153 (9th Cir. 2016), quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "To meet this requirement, the existence of shared legal issues or common facts need only be minimal." *Greko*, 277 F.R.D. at 426 (internal citation omitted). "Even a single common question of law or fact that resolves a central issue will be sufficient to satisfy this mandatory requirement for all class actions." *Castillo v. Bank of America, NA*, 980 F.3d 723, 728 (9th Cir. 2020).

The subject policy is at the heart of every cause of action in the litigation and applied equally to all class members. Thus, the allegation that Southwest's policies violated the FMLA forms the common nucleus of each members' claims. Answering the question of whether the subject policy is unlawful will resolve liability questions for all plaintiffs in both classes. Accordingly, the requirement of commonality is met.

### 3. Ms. Cashin and Mr. Refuerzo's Claims Are Typical of the Class Claims

Typicality is required under Rule 23(a)(3). In practice, the commonality and typicality requirements "tend to merge." *Gen'l Tel. of Southwest v. Falcon*, 457 U.S. 158 n. 13 (1982). Typicality looks for alignment between the interests of the class representatives and the represented class: "Under the rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Castillo*, 980 F.3d at 729 (internal citation omitted).

Ms. Cashin is the representative for (b)(2) Class and subclass. Her experience at Southwest illustrates the way in which Southwest's FMLA and leave policies impermissibly attach a negative consequence to an individual's exercise of the right to family and medical leave. Southwest nullified point roll-offs Ms. Cashin and all members of the (b)(2) Class because of their exercise of protected FMLA rights. As this denial goes to the heart of why the subject policy violates federal and California law, Ms. Cashin's claims are typical of the claims of the entire injunctive class.

Mr. Refuerzo is the representative for the (b)(3) Class and subclass. Like all (b)(3) Class members, Mr. Refuerzo exercised his rights to family and medical leave, lost access to disciplinary points reduction, and was subsequently terminated for an accumulation of disciplinary points. His interests are aligned with, and his claims are typical of, the other (b)(3) Class members.

Southwest may attempt to argue that Plaintiffs Cashin and Refuerzo each used intermittent leave and, therefore, are not typical or representative of class members who lost points for use of continuous leave.  Not so.  As Southwest has aligned its intermittent and continuous policies, they are the same.  Thus, this distinction is not a barrier to their representativeness. *See Ruiz Torres*, 835 F.3d at 1141 (rejecting defendant's argument that a worker who is a seasonable worker could not represent workers who were migrant workers where the applicable disclosure provisions were nearly identical).

> 4.    Counsel and the Class Representatives Will Continue to Adequately Protect the Classes' Interests

Plaintiffs have no conflict with the classes, as their claims, like the class', depend on a finding that Southwest's policies violated the FMLA. (Declaration of Plaintiff Cashin, ¶ 4; Declaration of Plaintiff Refuerzo, ¶ 4.) Moreover, Plaintiffs' counsel is competent and highly experienced in employment class action litigation. (Declaration of Jennie Lee Anderson, ¶¶ 4-10; Erlich Decl., ¶¶ 34-36.)

**B.    The Rule 23(b)(3) Requirements Are Satisfied**

> 1.    Common Issues Predominate Over Subordinate Issues

"Under Rule 23(b)(3), a plaintiff must demonstrate the superiority of maintaining a class action and show that the questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596, (9th Cir. 2012) quoting FRCP 23(b)(3). The focus of this inquiry is whether "a proposed class is sufficiently cohesive to warrant adjudication by representation*." Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (1997). But predominance "does not require a plaintiff seeking class certification to prove that each element of their claim is susceptible to classwide proof, so long as one or more common questions predominate." *Castillo*, 980 F.3d at 730. "Individual differences in calculating the amount of damages will not defeat class certification where common issues otherwise predominate." *Id*.

Here, the core and common issue in this case is whether the subject policy is unlawful.  This issue will rise or fall on classwide proof.  Southwest does not contend that the policy applied in

different ways or that individual issues impacted application of the policy.

Any individual issues relating to damages are not a barrier. Damages will be determined from Southwest's own records. "[T]o the extent [Defendant] has individualized defenses, it is free to try those defenses against individual claimants." *Johns v. Bayer Corp.*, 280 F.R.D. 551, 560 (S.D. Cal. 2012); *see also Johnson v. Gen. Mills, Inc.*, 276 F.R.D. 519, 524 (C.D. Cal. 2011) (finding that, if plaintiff "establishes liability for the class, Defendants may challenge reliance and causation individually during a determination of damages, after the issues that are common have been litigated"). While mitigation may be determined based on class member tax records of subsequent employment, such minor issues in no way predominate here. *See Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 376 (D. Or. 1998) (rejecting defendant's argument that individualized analysis of mitigation defeats predominance where it was "defendants' conduct that is at the heart of this dispute.").

Here, Plaintiffs' economic and statistical expert, Jeffrey Petersen, Ph.D., has outlined a relatively simple method for the calculation of damages for the (b)(3) Class:

> Economic damages can be determined for the putative class members who were terminated as a result of taking time off work under the FMLA. The economic damages are:
>
> • past income loss from the time of termination to the present,
>
> • future income from the present until the end of the catch up period.
>
> Past income loss is the difference between the expected earnings as an employee of Southwest Airlines and mitigating income (actual earnings) from the date of termination to the present. Future income loss is difference between projected earnings as an employee of Southwest Airlines and projected mitigating income from the present until the end of the catch up period.
>
> The "catch up" period is the date when annual expected earnings from Southwest Airlines are expected to be equivalent to annual mitigating earnings, i.e., the actual earnings have caught up to the expected earnings. The same methodology for determining past income loss and future income loss will be applied to all putative class members.
>
> (Declaration of Jeffrey Peterson, ¶ 2.)

Here, a single question of law dwarfs—whether the subject policy violates the FMLA – dwarfs any questions affecting only individual members. Moreover, the question of damages may be

1  analyzed through a single, simple method. Accordingly, Plaintiffs meet the predominance

2  requirement.

3               2.    A Class Action is the Superior Method of Adjudication

4        Under Rule 23(b)(3), a court, before certifying, must determine that a class action is the

5  superior method for arriving at a fair and efficient adjudication of the controversy. "Under Rule

6  23(b)(3), factors that the Court considers include: "(a) class members' interests in controlling

7  separate actions; (b) the extent and nature of any suits involving the same controversy already

8  initiated; (c) whether concentrating litigation in a particular forum is desirable or understandable; (d)

9  the likely difficulties in managing a class action." *Greko*, 277 F.R.D.  at 428.

10       Here, there is no indication class members have expressed interest in controlling separate

11 actions. While no other suits involving the same controversy have been initiated, settling the

12 question of whether the subject policy violates the FMLA is best done through the class mechanism

13 to prevent against the danger of inconsistent judgments.

14       As to the injunctive class, the balance of incentives and disincentives makes class resolution

15 the only practical option. As discussed above, there is a strong disincentive for current workers to

16 litigate against their employer.  *Twegbe*, 2013 WL 3802807 at *5 ("[A] class member presented with

17 the opportunity to sue the company signing her paychecks would be reasonable to worry that the

18 adversarial postures adopted in a lawsuit would spill over to the workplace"). That is especially true

19 where there is no monetary incentive for the injunctive class.

20       Moreover, where "[o]ne action presents a variety of efficiencies over the potential for dozens

21 of separate lawsuits," the factors cut in favor of certification.  *Twegbe*, 2013 WL 3802807, at *3,

22 citing *Califano v. Yamas* (1979), 442 U.S.682, 701. This is especially true where, as here, there is

23 significant overlap between the claims of a large injunctive class and a smaller damages class.

24 *Gaspar*, 167 F.R.D. 51, 56–57  (holding that where "the damages flow from the resolution of a

25 single question … judicial economy would be served by deciding this issue in one case).

26       A single issue—the lawfulness of the subject policy—pierces the center of both (b)(2) Class

27 and the (b)(3) Class. A class action is the superior method of adjudication, as the resolution of this

28

issue will come most of the way of resolving the claims of both classes. In these circumstances, the class method offers huge efficiencies with little downside. (See Erlich Decl., Ex. 13, Trial Plan.)

## IV.   CONCLUSION

For the reason set forth herein, Plaintiff's respectfully requests that the Court grants Plaintiffs' application for class certification.

Date:   April 25, 2024                                        ERLICH LAW FIRM, P.C.

/S/ *Jason Erlich*

_____
By:  Jason M. Erlich, Esq.
Jennie Lee Anderson, Esq.
**Attorneys for Plaintiff and Proposed Class and Subclass RORESTE REFUERZO**

- 19 -