ANNIE LAU (SBN 302438)
Email:  alau@fisherphillips.com
MEGAN F. CLARK (SBN 301476)
Email:  mclark@fisherphillips.com
FISHER & PHILLIPS LLP
One Montgomery Street, Suite 3400
San Francisco, California 94104
Telephone:  (415) 490-9000
Facsimile:   (415) 490-9001

Attorneys for Defendant
SOUTHWEST AIRLINES CO.

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

RORESTE REFUERZO and SELINA CASHIN, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

SOUTHWEST AIRLINES CO.,

Defendant.

Case No: 3:22-cv-00868-JSC

**DEFENDANT SOUTHWEST AIRLINES CO.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Date:       September 5, 2024
Time:       10:00 a.m.
Place:      Courtroom 8, 19th Floor
            Phillip Burton Federal Building
            450 Golden Gate Avenue
            San Francisco, CA  94102
Before:     Hon. Jacqueline Scott Corley

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ........................................................................................................7

II.   RELEVANT FACTS ...............................................................................................7

III.  PARTIES AND CLASS DEFINITIONS ...............................................................9

IV.   LEGAL STANDARD.............................................................................................10

V.    ARGUMENT ..........................................................................................................11

    A.    Plaintiff Cashin Lacks Article III Standing ...............................................11

    B.    Plaintiffs Have Failed to Meet the Rule 23(a) Requirements ............................12

        1.    Numerosity ................................................................................13

            a)    Rule 23 (b)(3) Damages Classes ............................................13

        2.    Commonality................................................................................14

            a)    FMLA/CFRA Interference Claim..............................................15

            b)    FMLA/CFRA Retaliation and Discrimination..........................17

            c)    Wrongful Termination (Brought by the California Subclasses)...................................................................17

            d)    Unfair Competition (Brought by California Subclasses)....................................................................18

        3.    Typicality ...................................................................................18

        4.    Adequacy ...................................................................................19

    C.    Plaintiffs Cannot Satisfy the Requirements of Rule 23(b)(2)............................20

    D.    Plaintiffs Cannot Satisfy the Requirements of Rule 23(b)(3)............................22

        1.    Predominance is Not Met.......................................................................22

            a)    Individualized Questions as to Damages Overwhelm Common Ones........................................................23

            b)    FMLA/CFRA Interference.......................................................26

            c)    FMLA/CFRA Discrimination and Retaliation..........................26

            d)    Wrongful Termination and Unfair Competition Claims......................................................................27

        2.    Class Action is Not Superior to Other Means of Adjudication .............27

    E.    The Railway Labor Act ("RLA") Preempts Plaintiffs' Claims .........................28

    F.    Plaintiffs' Trial Plan is Smoke and Mirrors........................................................29

    G.    The Class Definitions Are Overly Broad and Uncertain ....................................29

    H.    Mr. Erlich's Declaration Should be Stricken In Its Entirety..............................30

VI.   CONCLUSION........................................................................................................31

DEFENDANT SOUTHWEST AIRLINES CO.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

FP 51143725.2

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alaska Airlines Inc. v. Schurke,*
    898 F.3d 904 (9th Cir. 2018) (en banc) ..................................................................28

*Arrunategui v. ConocoPhillips Co.,*
    No. CV 09-01008 SJO, 2010 WL 6064592, (C.D. Cal. Jan. 26, 2010) ...............................19

*Bachelder v. America West Airlines,*
    259 F.3d 1112 (9th Cir. 2001) .................................................................15, 16, 17, 26

*Bateman v. Am. Multi-Cinomea, Inc.,*
    623 F.3d 708 (9th Cir. 2010) ..................................................................................11

*Blackwell v. SkyWest Airlines, Inc.,*
    245 F.R.D. 453 (S.D. Cal. 2007) .............................................................................27

*Boehm v. American Broadcasting Co., Inc.,*
    929 F.2d 482 (9th Cir. 1991) ..................................................................................24

*Bowerman v. Field Asset Services, Inc.,*
    60 F.4th 459 (9th Cir. 2023) .............................................................................23, 25

*Canova v. NLRB,*
    708 F.2d 1498 (9th Cir. 1983) ................................................................................24

*Clary v. Southwest Airlines, Co.,*
    No. 3:07-CV-0126-P, 2007 WL 4947690 (N.D. Tex. Dec. 17, 2007) ...................................11

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013) ...............................................................................................23

*Davis v. Astrue,*
    250 F.R.D. 476 (N.D. Cal. 2008) .......................................................................29, 30

*Deitz v. Comcast Corp.,*
    2007 WL 2015440 (N.D. Cal. July 11, 2007) .............................................................20

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    563 U.S. 804 (2011) .............................................................................................22

*Escriba v. Foster Poultry Farms,*
    793 F.Supp.2d 1147 ............................................................................................24

*In re Firearm Cases,*
    126 Cal.App.4th 959 (Cal. Ct. App. 2005) ................................................................18

DEFENDANT SOUTHWEST AIRLINES CO.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

FP 51143725.2

**Page(s)**

CASES

*Gaudin v. Saxon Mortg. Servs., Inc.*,
    297 F.R.D. 417 (N.D. Cal. 2013) ..........................................................................................22

*General Telephone Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982) ..............................................................................................................15

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ................................................................................................18

*Howard v. CVS Caremark Corp.*,
    2014 WL 7877404 (C.D. Cal. Dec. 9, 2014) ........................................................................30

*Jiminez v. Domino's Pizza, Inc.*,
    238 F.R.D. 241 (C.D. Cal. 2006) ..........................................................................................22

*Kobold v. Good Samaritan Reg'l Med. Ctr.*,
    832 F.3d 1024 (9th Cir. 2016) ..............................................................................................28

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978) ................................................................................................20

*Lozano v. Wireless Servs.*,
    504 F.3d 718 (9th Cir. 2007) ................................................................................................18

*Marchisheck v. San Mateo County*,
    199 F.3d 1068 (9th Cir. 1999) ..............................................................................................16

*Martino v. Ecolab, Inc.*,
    No. 14-cv-04358-PSG, 2016 WL 614477 (N.D. Cal. Feb. 16, 2016) ....................................31

*Melendres v. Arpaio*
    784 F.3d 1254 (9th Cir. 2015) ..............................................................................................11

*Mendoza v. Home Depot, U.S.A. Inc.*,
    No. CV09-05843 ..................................................................................................................22

*Nelson v. United Technologies*,
    74 Cal.App.4th 597, 88 Cal.Rptr.2d 239 (1999) ..................................................................18

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ..........................................................................................10, 23

*Olson v. United States by & through Dep't of Energy*,
    980 F.3d 1334 (9th Cir. 2020) ..............................................................................................15

DEFENDANT SOUTHWEST AIRLINES CO.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

FP 51143725.2

**Page(s)**

**CASES**

*Oman v. Delta Air Lines, Inc.,*
    610 F.Supp.3d 1257 (N.D. Cal. 2022) ........................................................................10

*Perata v. City & Cnty. of San Francisco,*
    No. 21-CV-02819-TSH, 2023 WL 4537695 (N.D. Cal. July 13, 2023)...................17

*Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.,*
    371 Fed.Appx. 719 (9th Cir. 2010) ...........................................................................31

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016)................................................................................................11

*Valdez v. Neil Jones Food Co.,*
    No. 1:13-CV-00519-AWI-SA, 2014 WL 3940558 (E.D. Cal. Aug. 12, 2014)......................12

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996) ..............................................................................27, 29

*Valenzuela v. Best-Line Shades, Inc.,*
    No. 19-cv-07293-JSC, 2021 WL 3514101 (N.D. Cal. Aug. 10, 2021) ...................14

*Wagner v. Lehman Bros. Kuhn Loeb, Inc.,*
    646 F.Supp. 643 (N.D. Ill. 1986) ...............................................................................20

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011).........................................................................10, 11, 14, 15, 21

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) ...................................................................................22

*Xin Liu v. Amway Corp.,*
    347 F.3d 1125 (9th Cir. 2003) ............................................................15, 16, 17, 18

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ............................................................................27, 29

**STATUTES, RULES AND REGULATIONS**

United States Government Code
    29 U.S.C. § 2615(a)(2),(3) and (b).......................................................................17, 26
    29 U.S.C. § 2617(a)(1)(B) ..........................................................................................21

CASE NO: 3:22-CV-00868-JSC

DEFENDANT SOUTHWEST AIRLINES CO.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

FP 51143725.2

**Page(s)**

**STATUTES, RULES AND REGULATIONS**

Federal Rule of Civil Procedure
 Rule 23 ........................................................................................ *passim*
 Rule 23(a) ..................................................................................... *passim*
 Rule 23(a)(1) .......................................................................................13
 Rule 23(a)(2) .......................................................................................14
 Rule 23(a)(3) .......................................................................................18
 Rule 23(a)(4) .......................................................................................19
 Rule 23(b) ...........................................................................7, 10, 22, 27
 Rule 23(b)(2) ......................................................................9, 20, 21, 22
 Rule 23(b)(3) ............................................................................10, 13, 22

Federal Rule of Evidence
 Rule 702 ..............................................................................................30

California Business and Professions Code
 § 17200 ................................................................................................18

California Labor Code
 § 226 ....................................................................................................10
 § 203 ....................................................................................................10

The California Family Rights Act of 1993 (CFRA) ............................... *passim*

The Family and Medical Leave Act of 1993 (FMLA) ........................... *passim*

The Railway Labor Act of 1926 (RLA) ...........................................21, 28

**OTHER AUTHORITIES**

United States District Court, Northern District of California, Civil Local Rule
 L.R. 7-5(a) ...........................................................................................30
 L.R. 7-5(b) ...............................................................................7, 30, 31

DEFENDANT SOUTHWEST AIRLINES CO.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

FP 51143725.2

## I.     INTRODUCTION

Class litigation is the exception, not the rule. To qualify for the exception, Plaintiffs must meet their evidentiary burden to demonstrate to the Court that class certification of each of their claims is warranted under Federal Rule of Civil Procedure 23. Plaintiffs have not and cannot meet this burden. Any purported common legal questions are dwarfed by individualized answers. Indeed, as each flight attendant has a unique attendance record, there is no one-size-fits all approach to determine who is a proper class member or to establish liability, damages or injunctive relief for each of Plaintiffs' claims. Further, Plaintiffs rely heavily on the self-serving declaration of their attorney, Jason Erlich, which should be stricken pursuant to Civil Local Rule 7-5(b) as it is speculative, contains argument and legal conclusions, and it is not supported by admissible evidence. As Plaintiffs have not met their burden to establish that the requirements of Rule 23(a) and (b) are met, class certification must be denied.

## II.     RELEVANT FACTS

Southwest flight attendants are subject to a Collective Bargaining Agreement ("CBA")[1] with the Transport Workers Union of America, AFL-CIO, Local 556 ("Union"). Declaration of Catherine Rea ("Rea Decl."), ¶ 4. The Attendance Policy in the CBA details instances when flight attendants may incur attendance points, when flight attendants will not incur attendance points, and when flight attendants may reduce their attendance points. *Id.*

If flight attendants incur chargeable occurrences, they are assessed attendance points. *Id.* at ¶¶ 5-6, 20. For example, a flight attendant who "no shows" for a scheduled flight is assessed 2.5 points. *Id.* If a flight attendant has less than 5 points, no disciplinary action is taken. *Id.* at ¶ 6. Flight attendants with 5-6.5 points receive a letter of counsel, those with 7-9 points receive a written warning, those with 9.5-11.5 points receive a final warning with possible termination for overall job performance, and those with 12 points are subject to termination. *Id.*

The CBA allows active flight attendants to "Record Improve" by reducing their total attendance points through several different methods of record improvement, including: (1) No Chargeable

---

[1] The CBA was entered into between Southwest and the flight attendants' Union. It provides for a dispute resolution process for disputes about the interpretation and application of the CBA, culminating in neutral and binding arbitration before the System Board of Adjustment. *See* Request for Judicial Notice, ¶ 1, Ex. 1, pp. 20-143 to 20-147; Rea Decl., ¶ 4.

Occurrences During a Quarter, (2) Perfect Attendance During a Quarter, (3) Fourth Quarter Record Improvement Bonus, and (4) December Record Improvement Bonus (collectively referred to as "RI Bonuses"). *See* Rea Decl., ¶¶ 4, 9, Ex. A, at pp. 32-212 - 32-213. Flight attendants may improve their attendance record to as low as negative seven points, meaning there is a 19-point range between the best possible attendance record (-7) and the termination level (12). *Id.* at ¶ 17.

The No Chargeable Occurrences During a Quarter and Perfect Attendance During a Quarter RI Bonuses provide for a deduction of two points from a flight attendant's record if the relevant conditions are met. *Id.* at ¶¶ 10-13.[2] Under the Fourth Quarter bonus, a flight attendant who has four or fewer points at the end of the fourth quarter, who does not receive more than one point and who remains active the entire quarter since October 1st can reduce their points to zero. *Id.* at ¶ 14.[3] Under the December Bonus, flight attendants with perfect attendance in December can have their record reduced by one point or they may bank a point (*i.e.*, a negative point). *Id.* at ¶ 15. Quarterly RI Bonuses are applied on the first day of the following quarter, i.e., January 1, April 1, July 1 or October 1. The December Bonus is applied on January 1 of the following year. *Id.* at ¶ 17.

Points also roll off a flight attendant's record 16 active months after the event for which the points are charged. *Id.* at ¶ 16. If during the 16-month period, the flight attendant's points reach zero or below, they have a "fresh start" and they do not receive any roll off of past points as they have a clean slate. *Id.* Points incurred in the future after the "fresh start" are subject to the 16-month roll off.

There are various types of absences that place flight attendants on "inactive" status. *Id.* at ¶ 5. Flight attendants who are on approved leaves of absences such as personal leaves, leaves under worker's compensation, parental leave, who use continuous Family Medical Leave Act ("FMLA") or California Family Rights Act ("CFRA") (or jointly "FMLA") leave become "inactive."[4] *Id.* at ¶¶ 4, 5 20. An

---

[2] Under No Chargeable Occurrences, if a flight attendant is at zero points, they do not get a point reduction. Under Perfect Attendance During a Quarter, if a flight attendant is at zero points, they can bank up to a maximum of negative two points into their points bank. The maximum points a flight attendant may bank is negative 6 points (or up to 7 points for the December Bonus). *Id.* at ¶¶ 10-15.

[3] If a flight attendant qualifies for more than one of the quarterly RI Bonuses in the fourth quarter, they are awarded the RI Bonus with the greater points benefit (i.e., they do not stack). They are also eligible to receive a December Bonus. *Id.* at ¶ 14.

[4] For example, flight attendants on a leave of absence "other than a single OJI occurrence of four (4) working days or less (limited to once per calendar year), funeral leave, and jury duty will not permit Record Improvement." *Id.* at ¶¶ 4-5, Ex. A, p. 32-212.

inactive flight attendant both does not incur points and does not reduce points through record improvement. *Id.* at ¶¶ 5, 9. In other words, flight attendants return from FMLA leave, as well as other types of leaves, with the same amount of points they had prior to the leave. *Id.* Prior to March 1, 2019, using intermittent FMLA leave did not place flight attendants on inactive status. *Id.* at ¶ 37. From March 1, 2019 to April 30, 2024, using intermittent FMLA placed flight attendants on inactive status. *Id.* Following negotiations with the Union, effective May 1, 2024, flight attendants who use intermittent FMLA leave are no longer considered inactive and may record improve through the No Chargeable Occurrences in a Quarter and the Fourth Quarter Record Improvement Bonus – even though they are not otherwise meeting the terms for such record improvement. *Id.*

It is critical to note that in order to determine (1) whether a flight attendant actually used FMLA leave, (2) the effect of FMLA leave on their points (if any), and/or (3) the effect of other occurrences on their attendance points, a flight attendant's records must be manually and individually examined. *Id.* at ¶¶ 18-19, 32, 36. Given the intricacies with the different types of record improvement, the 16-month points roll off, and their interactions with each other, a flight attendant's points record cannot be analyzed in a vacuum by looking at one specific quarter in which they took FMLA leave. *Id.* Nor is there any computer program that Southwest is aware of that can automatically determine these issues. *Id.* Rather, an extensive individualized assessment of each flight attendant's attendance record is necessary to determine whether their FMLA leave had any impact on their attendance points. *Id.*

## III.    PARTIES AND CLASS DEFINITIONS

Plaintiffs Roreste Refuerzo and Selina Cashin allege that they were approved for and took FMLA leave during their employment with Southwest. Dkt. No. 84, ¶¶ 22-28, 30-36.

The Rule 23(b)(2) injunctive classes are represented by Ms. Cashin, who is still employed as a flight attendant by Southwest and who claims that she has come "perilously close to termination for attendance points on several occasions." *See* Dkt. No. 97-3, ¶ 10. The Nationwide (b)(2) class includes "all Southwest flight attendants based in the United States since March 1, 2019, to present who exercised their rights to family and medical leave and consequently lost access to disciplinary points reduction." The California (b)(2) subclass is defined the same, except it only includes flight attendants "based in

California".[5] The injunctive classes seek a declaration that Southwest's "policy of barring flight attendants from disciplinary point reductions when they exercise leave rights guaranteed under the FMLA" violates the FMLA. Dkt. No. 97 at pp. 3:16-18; 7:7-11. The injunctive classes also seek an order prohibiting the subject policy, and an order requiring that all members of the (b)(2) class be granted the point reductions they lost due to the subject policy. *Id.*

The Rule 23(b)(3) classes are represented by Mr. Refuerzo, who was terminated in February 2020 after accumulating 12 points for non-FMLA absences. The Nationwide (b)(3) Damages class is defined as "All Southwest flight attendants based in the United States since March 1, 2019, to present who exercised their rights to family and medical leave and consequently lost access to disciplinary points reduction and were subsequently terminated for an accumulation of disciplinary points." *Id.* at p. 7:12-27. The California (b)(3) subclass is defined the same, except it only includes flight attendants "based in California". *Id.* The (b)(3) damages classes seek "monetary damages related to their termination and injunctive relief." *Id.*

## IV.    LEGAL STANDARD

The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. *See Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2550 (2011). To justify a departure from that rule, a class representative must be part of the class and suffer the same injury as the class members. *Id*. It is Plaintiffs' burden to establish that the four requirements of Federal Rule of Civil Procedure 23(a) and the requirements for certification under one of the subsections of Rule 23(b) are met. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). Plaintiffs must establish that the Rule 23 requirements are met for **each one** of the claims for which class certification is sought. *See Wal-Mart*, 131 S. Ct. at 350.

When considering class certification under Rule 23, district courts are not only at liberty to, but must perform "a rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied."

---

[5] Plaintiffs do not define "based in California" for the (b)(2) or (b)(3) sub-classes. They appear to suggest that an employee is based in California if "the airport base where the flight attendant works from" is in California. *See* Dkt. No. 97, p. 13, fn 7. However, in analyzing whether certain Labor Code sections applied to flight attendants, courts have conducted a more individualized analysis. *See Oman v. Delta Air Lines, Inc.*, 610 F.Supp.3d 1257, 1269 (N.D. Cal. 2022) (finding Labor Code 226 and 203 applied to flight attendants who were based in California and who did not perform a majority of their work in another state). As a result, a flight attendant's base airport is not determinative.

*Wal–Mart,* 131 S. Ct. at 2551 (citation omitted). In many cases, "that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id.* Rule 23 does not set forth a mere pleading standard. *Id.* Plaintiffs must affirmatively demonstrate their compliance with the Rule by proving that there are *in fact* sufficiently common questions of law or fact, and that other requirements for certification have been met. *Id*. This requires the Court to probe behind the pleadings, as actual, not presumed, conformance with Rule 23 remains indispensable. *Id*. As set forth herein, Plaintiffs cannot meet their burden of proof under Rule 23, and thus certification must be denied.[6]

## V.    ARGUMENT

### A.    Plaintiff Cashin Lacks Article III Standing

In a class action, the named plaintiff must demonstrate their individual standing before the court can determine whether the requirements of Rule 23 are met. *See Melendres v. Arpaio* 784 F.3d 1254, 1261 (9th Cir. 2015). To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). An injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (citing *Lujan,* 504 U.S. at 560).

In a class action, the named plaintiffs must allege "they personally have been injured, not that an "injury has been suffered by other, unidentified members of the class to which they belong." Spokeo, 136 S. Ct. at 1547 n.6 (quoting *Simon v. Eastern Ky. Welfare Rights Org*., 426 U.S. 26, 40 fn. 20 (1976)). Each plaintiff must "demonstrate standing for each claim he seeks to press" and "for each form of relief" sought. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Under the "injury in fact" requirement of standing, an injury must "affect the plaintiff in a personal and individual way." Spokeo, 136 S. Ct. at 1548.

---

[6] Class certification should also be denied as occurred in *Clary v. Southwest Airlines, Co.*, where the court held certification of a class under Rule 23 was inappropriate for a suit alleging FMLA class violations, and that a collective action was proper. *Clary v. Southwest Airlines, Co.,* No. 3:07-CV-0126-P, 2007 WL 4947690, at *1 (N.D. Tex. Dec. 17, 2007). While the Court's Order on Southwest's Motion to Dismiss (Dkt. No. 25) stated that *Clary* is not persuasive because in *Bateman v. Am. Multi-Cinomea, Inc.*, 623 F.3d 708, 716 (9th Cir. 2010), the Ninth Circuit said class actions are presumed available unless otherwise expressed in the statute, the Supreme Court noted the class action is an exception to the usual rule that litigation is conducted by the individual named parties. *Wal-Mart,* 131 S. Ct. at 2550.

Here, Ms. Cashin must establish that she was subjected to an adverse employment action in order to assert claims for FMLA interference, retaliation, and discrimination and unfair competition. Her declaration states "I believe that by exercising my rights to FMLA leave, and not having points removed from my Attendance Records, has caused me to become perilously close to termination for attendance points on several occasions." *See* Dkt. No. 97-3, ¶ 10. Ms. Cashin has not alleged or provided evidence establishing that she has suffered a concrete or particularized harm[7]. She does not claim that she was assessed points for taking FMLA leave or that she suffered an adverse employment action *because* she took FMLA leave. Further, prior to taking FMLA leave in Q1 2021 and Q3 2023, she had other non-FMLA absence occurrences which already prevented her from receiving RI Bonuses. *See* Rea Decl., ¶ 33. As a result, she returned from FMLA leave in the same position as when she left – unable to receive RI Bonuses – and thus suffered no injury. *Id.* Nor does she claim that she suffered an adverse employment action because she complained about or opposed a practice made unlawful by the FMLA or because she instituted or participated in FMLA proceedings. As such, she does not have Article III standing to bring the FMLA interference, retaliation or discrimination claims or the unfair competition claim and she cannot represent the (b)(2) injunctive class.

## B.    Plaintiffs Have Failed to Meet the Rule 23(a) Requirements

To obtain class certification, Plaintiffs must establish that the following requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Fed. R. Civ. P. 23(a). "The burden is on the moving party to show that the requirements of Rule 23 are met; and the moving party can do this by producing affidavits, documents or testimony establishing each Rule 23 requirement." *Valdez v. Neil Jones Food Co.*, No. 1:13-CV-00519-AWI-SA, 2014 WL 3940558, at *5 (E.D. Cal. Aug. 12, 2014) (citation omitted).

///

///

///

///

---

[7] In 2018, Ms. Cashin was reinstated after she grieved her termination. *See* Dkt. No. 84, ¶ 33. She signed a reinstatement agreement which included a release of claims up through the date she signed the agreement (July 30, 2018). *See* Rea Decl., ¶ 33. Further, her termination is outside the class period.

FP 51143725.2

### 1.    **Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs must establish numerosity for each class[8] and California sub-class.

#### a)    Rule 23 (b)(3) Damages Classes

With regard to the (b)(3) damages class, Plaintiffs contend there are 74 flight attendants who fall within the (b)(3) class definition of flight attendants in the U.S. who "***exercised*** their rights to family and medical leave ***and consequently lost access to disciplinary points reduction*** and were subsequently terminated for an accumulation of disciplinary points." *See* Dkt. 97, p. 12:10-22. This number is purportedly based on a formula utilized by Mr. Erlich to sort and/or interpret a spreadsheet produced by Southwest in discovery and is not based any testimony of Southwest's corporate representatives, discovery responses, or expert opinion. *See* Dkt. 97-1, ¶ 21. However, Mr. Erlich's declaration states that these 74 flight attendants were ***approved*** for FMLA leave and terminated for points. *Id.* Yet the (b)(3) class definition is much narrower and only includes flight attendants who ***exercised*** (i.e., actually used) FMLA leave ***and consequently lost access to disciplinary points reduction*** and were terminated for points. Accordingly, reliance on the 74 flight attendants identified in Mr. Erlich's declaration who were merely ***approved*** for FMLA leave to support numerosity of the (b)(3) class is improper.[9] Plaintiffs appear to acknowledge that the (b)(3) class is defined more narrowly by then asserting that out of the 74 flight attendants, "at least 28 flight attendants were undisputedly terminated ***because of*** their FMLA use", again relying on Mr. Erlich's objectionable declaration. *See* Dkt. Nos. 97 at p. 12:20-22; 97-1 at ¶ 23.[10] Setting aside the four flight attendants that Mr. Erlich claims signed release agreements (and thus would not be part of the (b)(3) class as they were reinstated), Plaintiffs appear to <u>actually</u> contend that the (b)(3) class consists of <u>24 flight attendants</u>. *See* Dkt. No. 97-1, ¶ 23. "Although there is no

---

[8] Plaintiffs' reliance on Newburg and Rubenstein on Class Actions to contend that the California sub-classes need not independently satisfy the numerosity requirements is misplaced. That reasoning only applies if a larger class has already been certified, which is not the case here.

[9] Of the 74 flight attendants identified by Plaintiffs, only 5 have a base airport in California, including Employees 121027, 108034, 147621, 114507 and 81076. *See* Rea Decl., ¶ 34.

[10] This is an important admission by Plaintiffs that in many cases, a flight attendant's use of FMLA leave did not impact their points as they would have been terminated anyways.

absolute minimum number of plaintiffs necessary to demonstrate that the putative class is so numerous so as to render joinder impracticable, ... joinder has been deemed impracticable in cases involving as few as 25 class members." *Valenzuela v. Best-Line Shades, Inc.,* No. 19-cv-07293-JSC, 2021 WL 3514101, at *3-4 (N.D. Cal. Aug. 10, 2021) (citing *Davy v. Paragon Coin, Inc.*, No. 18-CV-00671-JSW, 2020 WL 4460446, at *5 (N.D. Cal. June 24, 2020)).

While Southwest moves to strike Mr. Erlich's Declaration for the reasons set forth below, Southwest assumes, *arguendo*, for purposes of analyzing numerosity that there are 24 potential flight attendants in the (b)(3) class. A manual review of the attendance records for each of the 24 flight attendants is required to determine what occurrences accrued attendance points, whether the flight attendants actually used FMLA leave, and whether they would have been terminated regardless of the FMLA leave's impact on their receipt of RI Bonuses. Rea Decl., ¶¶ 18, 19, 21-22, 25-29, 32, 36. Based on Ms. Rea's analysis as set forth in her declaration, at least 5 of the 24 flight attendants identified by Plaintiffs would still have been terminated for points regardless of the FMLA leave's impact on a flight attendant's receipt of RI Bonuses. *Id*. Specifically, Employees 100210, 125575, 147621, 87319, and 88039 would still have accrued at least 12 attendance points, resulting in their termination, <u>even if their FMLA leave did not impact their ability to receive RI Bonuses</u>. Rea Decl. ¶¶ 21, 25-29. Further, 5 of the 24 flight attendants have been reinstated and thus are not part of the (b)(3) class. *Id.* at ¶ 22.[11] As a result, at most, the (b)(3) nationwide class only consists of 18 flight attendants. *Id.* at ¶¶ 21-24.[12] Of those 18 flight attendants, only 3 have a base airport in California (Employees 147621, 121027 and 81076). *See* Rea Decl., ¶ 35; Dkt. No. 97-1, Ex. 11 at p. 63, Ex. 14 at p. 92. As a result, numerosity is not met for the nationwide (b)(3) damages class or the California sub-class.

### 2.    Commonality

Plaintiffs must also establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, Plaintiffs must demonstrate that the class members' claims depend on a common contention such that "determination of its truth or falsity will resolve an

---

[11] Employees 101212, 114507, 118317, 142443, and 78137 were reinstated. Rea Decl., ¶ 22.

[12] This number includes the remaining 14 of the 24 flight attendants identified in Paragraphs 21 and 22 of Ms. Rea's Declaration and the remaining 4 of the 7 flight attendants discussed in Paragraphs 23 and 24 of Ms. Rea's Declaration. *See* Rea Decl., ¶¶ 21-24.

issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart,* 131 S. Ct. at 2551. "What matters to class certification ... is not the raising of common 'questions'—even in droves— but, rather **the capacity of a classwide proceeding to generate common answers** apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 131–132 (2009)) (emphasis added). Thus, commonality requires Plaintiffs to demonstrate that the class members "have suffered the same injury...." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 (1982).

Plaintiffs claim that the common question is whether Southwest's policies violated the FMLA and that the answer to this question will resolve liability questions for all putative class members in both classes. Not so. Commonality is not present for **any** of the alleged class claims.

a)    FMLA/CFRA Interference Claim

To prevail on the FMLA/CFRA interference claim, Plaintiffs must prove that the taking of FMLA leave "constituted a negative factor in an employment decision." *Bachelder v. America West Airlines*, 259 F.3d 1112, 1125 (9th Cir. 2001).[13] To do so, they can use direct or circumstantial evidence, or both. *Id.* In *Olson*, the Ninth Circuit explained that the inquiry for an FMLA interference claim is "whether the employer's conduct makes an employee less likely to exercise their FMLA leave rights because they can expect to be fired or otherwise disciplined for doing so." *Olson v. United States by & through Dep't of Energy*, 980 F.3d 1334, 1338 (9th Cir. 2020).

In its ruling on Southwest's Motion to Dismiss, the Court held that Mr. Refuerzo's allegation that his FMLA leave prevented him from receiving a two-point reduction supported an inference that the leave was a negative factor in the decision to terminate him, as well as an inference that employees would be less likely to exercise their FMLA leave rights. *See* Dkt. No. 25 at p. 9:2-8. However, in *Bachelder*, the Ninth Circuit held, "'the FMLA is not implicated and does not protect an employee against disciplinary action based upon absences' if those absences are not taken for one of the reasons enumerated in the Act…." *Bachelder,* 259 F.3d at 1125 (citing *Rankin v. Seagate Techs., Inc.,* 246 F.3d

---

[13] The Ninth Circuit has held that FMLA and CFRA claims may be analyzed together, so the same analysis applies to the CFRA claim. *See Xin Liu,* 347 F.3d at 1132, n.4. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132, n.4 (9th Cir. 2003).

1145, 1147 (8th Cir. 2001)); *see also Marchischeck v. San Mateo County,* 199 F.3d 1068 (9th Cir. 1999) (finding a terminated employee had no cause of action under the FMLA because the absences for which she was fired were not protected by the Act). Additionally, to prove FMLA interference, Plaintiffs must establish by a preponderance of the evidence that they are entitled to the benefit they claim they were unable to receive, *i.e.*, RI Bonuses. *See Bachelder*, 259 F.3d at 1125. "The FMLA does not entitle the employee to any rights, benefits, or positions they would not have been entitled to had they not taken leave. It simply guarantees that an employee's taking leave will not result in a loss of job security or in other adverse employment actions." *Xin Liu*, 347 F.3d at 1132 (citation omitted).

Here, it is undisputed that Mr. Refuerzo and Ms. Cashin were never assessed points or disciplined for their FMLA absences. As a result, they are not protected from termination or other adverse actions for ***other*** non-FMLA points-generating absences. *Id.* Further, Plaintiffs' declarations do not state that Southwest's policy made them less likely to take FMLA leave because they expected to be fired or subjected to an adverse action for doing so. *See* Dkt. Nos. 97-2 and 97-3. Also, as stated above, Ms. Cashin does not claim that her taking of FMLA leave constituted a negative factor in any *employment decision* purportedly taken against her but rather, she claims that has been "perilously close to termination for attendance points on several occasions." Dkt. No. 97-3, ¶ 10.

Here, commonality is not met as an individualized inquiry is necessary to determine if each class member's taking of FMLA leave constituted a negative factor in an employment decision. As demonstrated in Ms. Rea's declaration, there are numerous factors that can impact a flight attendant's points that would have rendered an FMLA leave's impact on the ability to receive RI Bonuses null. *See* Rea Decl., ¶¶ 18-19, 20, 32, 36. For example, many putative class members had other occurrences that would have prevented them from receiving RI Bonuses in the same period when they took FMLA leave. *See* Rea Decl., ¶¶ 20, 21, 25-31, 33, 35. Under those circumstances, the use of FMLA leave did not impact their ability to receive RI Bonuses and the flight attendant would <u>not</u> be less likely to exercise their FMLA leave rights, as they had already lost the ability to receive RI Bonuses due to another non-FMLA occurrence. *Id.* Further, as the FMLA does not permit employees to receive a right or benefit that they would not have been entitled to receive had they not taken the leave, an individualized inquiry would be necessary to determine whether each flight attendant was already prevented from receiving

RI Bonuses in each quarter or month in which they took FMLA leave. *Id.*; *See also Xin Liu,* 347 F.3d at 1132. Further, a flight attendant's record would need to be manually reviewed to determine whether they were subject to any employment action and whether that employment action would have been taken regardless of their FMLA leave. Rea Decl., ¶¶ 18-19, 25-32, 36. As each class member's specific circumstances and attendance records vary and require <u>individualized assessment</u>, commonality is not met for the FMLA interference claim.

b)    <u>FMLA/CFRA Retaliation and Discrimination</u>

To prevail on the FMLA retaliation and discrimination claims (and the related CFRA claims analyzed under the same standard), Plaintiffs must prove: (1) they engaged in protected activity under the FMLA, (2) they suffered an adverse employment action and (3) the adverse employment action was causally linked to the protected activity. *Perata v. City & Cnty. of San Francisco*, No. 21-CV-02819-TSH, 2023 WL 4537695, at *43-44 (N.D. Cal. July 13, 2023) (citing *Yphantides v. Cty. of San Diego,* No. 21CV1575-GPC (BLM), 2023 WL 2438916, at *15 (S.D. Cal. Mar. 9, 2023)).

"By their plain meaning, the anti-retaliation or anti-discrimination provisions do not cover visiting negative consequences on an employee simply because he has **<u>used</u>** FMLA leave." *Bachelder*, 259 F.3d at 1124 (emphasis added). Rather, the employee must engage in protected activity by complaining about or opposing a practice made unlawful by the FMLA or by instituting or participating in FMLA proceedings. *See Bachelder*, 259 F.3d at 1125 n.11; 29 U.S.C. § 2615(a)(2) and (b). Here, Plaintiffs do not allege that they engaged in protected activity as defined by the statute or that they suffered an adverse employment action as a result. Even assuming they did, in order to prevail on this claim, each member of the class would need to prove that they engaged in the requisite protected activity and that they suffered an adverse employment action that was ***causally linked*** to the protected activity. ***Merely taking FMLA leave is not enough***. Accordingly, as there is no common evidence that can be used on a class-wide basis and rather, establishing liability for this claim would necessarily involve a mini-trial for each class member, commonality is not met.

c)    <u>Wrongful Termination (Brought by the California Subclasses)</u>

To prove a claim for wrongful termination in violation of public policy, a plaintiff must establish (1) an employer-employee relationship; (2) termination or other adverse employment action; (3) the

termination or adverse action was a violation of public policy; (4) the termination or adverse action was a legal cause of Plaintiff's damages; and (5) the nature and extent of the damages. *Lavin v. United Technologies Corporation*, 2:13-cv-09384-CAS (JEMx), 2015 WL 847392, at *1 (C.D. Cal. Feb. 23, 2015) (citing *Holmes v. General Dynamics Corp.*, 17 Cal.App.4th 1418, 1426 n.8 (1993)). "Discharge in violation of the CFRA and FMLA has been held as a matter of law to constitute wrongful discharge in violation of public policy." *Xin Liu*, 347 F.3d at 1137-38 (citing *Nelson v. United Technologies,* 74 Cal.App.4th 597, 612, 88 Cal.Rptr.2d 239 (1999)); *see also Moreau,* 2002 WL 500779, at *8. As the wrongful termination claim is derivative of the FMLA and CFRA claims, commonality is similarly not met for the reasons set forth above.

### d)   Unfair Competition (Brought by California Subclasses)

Business and Professions Code section 17200 prohibits "unfair competition," which is defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. . . ." Because the statute is written in the disjunctive, it is violated where a defendant's act or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of section 17500 (false or misleading advertisements). *Lozano v. Wireless Servs.*, 504 F.3d 718, 731 (9th Cir. 2007) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (Cal. 1999)). There must be a "causal connection between the alleged unfair practices and the harm." *In re Firearm Cases*, 126 Cal.App.4th 959, 967 (Cal. Ct. App. 2005). As the unfair competition claim is derivative of the FMLA and CFRA claims, and because Plaintiffs' Motion and trial plan fails to establish that this claim meets the Rule 23 requirements, commonality is similarly not met.

### 3.   **Typicality**

To demonstrate typicality, Plaintiffs must show that the named parties' claims or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3); *see also Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* A plaintiff is not typical where he and the putative class face different defenses. *Id.*

///

Here, Plaintiffs' claims are not typical of the class members' claims. As set forth above, they cannot bring the FMLA discrimination or retaliation claims as they do not contend that they engaged in the requisite protected activity. Even if they did, each class member's individual conduct would need to be analyzed to establish these claims and any associated defenses.

Further, Ms. Cashin does not claim that she has suffered any harm or adverse employment action as a result of taking FMLA leave, only that she was "perilously close to termination for attendance points on several occasions." Dkt. No. 97-3, ¶ 10. Further, the remedy sought by the (b)(2) class – adjustment of their points – would not be typical for the entire class as Ms. Cashin's attendance record, and the attendance record of each prospective class member, is unique. *See Arrunategui v. ConocoPhillips Co.*, No. CV 09-01008 SJO MANX, 2010 WL 6064592, at *2 (C.D. Cal. Jan. 26, 2010) (finding the lead plaintiffs alleging violation of the FMLA could not demonstrate typicality where the potential class members suffered a wide range of discipline from verbal warnings to threats of termination and plaintiffs failed to prove the remedy sought was typical of the entire class). As set forth in Ms. Rea's Declaration, the points adjustment (if any) must be done <u>manually for each flight attendant,</u> and it is not as simple as looking at a quarter in which FMLA leave was taken in a vacuum and subtracting points. Rea Decl., ¶¶ 18, 19, 20-22, 25-29, 32, 36.

Mr. Refuerzo's claims and defenses are similarly not typical of the (b)(3) class members' claims. He was terminated for accumulating 12 points in the quarter immediately following his taking of FMLA leave, whereas other class members were terminated months, if not years later, requiring a manual review of their records to determine if their FMLA leave had any impact on their points whatsoever. Mr. Refuerzo also admitted at his deposition that he has not applied for any jobs since he was terminated from Southwest in 2020. Declaration of Annie Lau ("Lau Decl."), ¶ 2, Ex. A at pp. 189:11-203:6. His injury is therefore quite different than a class member who tried to mitigate their damages by searching for and securing a comparable job. For these reasons, typicality is not met.

### 4.    <u>Adequacy</u>

Rule 23(a)(4) requires the representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). It requires that the representatives and their counsel (a) be free from irreconcilable conflicts of interest with absent class members, and (b) demonstrate their ability to

prosecute the action competently and vigorously on behalf of absent class members. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Similar to typicality, adequacy may also be defeated when litigation "could be overwhelmed by the disposition of unique defenses." *Deitz v. Comcast Corp.*, 2007 WL 2015440, *5 (N.D. Cal. July 11, 2007) (citing *Gartin v. S&M Nutec LLC*, 245 F.R.D. 429, 434 (C.D. Cal. 2007)); *see also Wagner v. Lehman Bros. Kuhn Loeb, Inc.,* 646 F.Supp. 643, 660 (N.D. Ill. 1986) ("It is enough to deny class treatment when a defense peculiar to the class representative is even arguably present").

As stated above, Plaintiffs cannot represent a class of employees who were retaliated or discriminated against after making a complaint or engaging in protected activity by instituting or participating in FMLA proceedings, because they make no such claims. Further, Ms. Cashin does not allege that she suffered any adverse employment action or injury because she took FMLA leave. Nor does she claim that Southwest's record improvement policy made her less likely to take FMLA leave because she was expecting to be disciplined for doing so. Further, as set forth above, Ms. Cashin had other non-FMLA occurrences which already prevented her from receiving RI Bonuses, so she returned from FMLA leave in the same position – unable to receive RI Bonuses. *See* Rea Decl., ¶ 33.

Mr. Refuerzo is not an adequate representative of the (b)(3) class because he admitted at his deposition that he has not applied for any jobs or worked since he was terminated from Southwest in 2020. Lau Decl., ¶ 2, Ex. A, at pp. 189:11-203:6. Further, since Mr. Refuerzo only took *intermittent* FMLA leave, he cannot adequately represent the interests of class members who took *continuous* FMLA leave. This is especially true given that the newly ratified CBA reverts to the previous unchallenged practice of permitting flight attendants who take intermittent leave to record improve through the No Chargeable Occurrences in a Quarter and the Fourth Quarter Perfect Attendance Bonus. *See* Rea Decl., ¶ 37.

As Plaintiffs have not established that each of their claims meet the requirements of Rule 23(a), Plaintiffs' motion for class certification should be denied.

## C.    Plaintiffs Cannot Satisfy the Requirements of Rule 23(b)(2)

Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Wal-Mart,* 564 U.S. at 360.

As a preliminary matter, the only enumerated types of equitable relief provided for in the FMLA statute are "employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B). However, the (b)(2) injunctive class seeks an order "prohibiting the subject policy and requiring that all members of the (b)(2) class be granted the point reductions they lost due to the subject policy."[14]

As set forth in Ms. Rea's Declaration, the analysis and adjustment of flight attendants' points cannot be performed on a class-wide basis using a one-size-fits-all formula, and would need to be done manually for each putative class member. Rea Decl., ¶¶ 18-22, 25-32, 36. Each flight attendant's attendance records are unique and subject to a number of variables which impact when and how flight attendants accumulate points and reduce them. *Id.* Again, Southwest would need to look at a flight attendant's record to identify if/when they actually took FMLA leave from March 1, 2019 to present. *Id.* In quarters when FMLA was taken, Southwest would need to determine (i) if the flight attendant had another separate occurrence or absence that prevented them from receiving RI Bonuses in that same quarter or month, or (ii) if the flight attendant's points total prevented them from receiving a points reduction (*e.g.*, if they were at zero, they could not bank more points under the No Chargeable Occurrences During a Quarter). *Id.* If the answer is yes in either case, the flight attendant would not be entitled to any RI Bonuses for that quarter and no adjustments would need to be made to their points. *Id.* at ¶¶ 12-15, 18-22, 25-32, 36. Accordingly, it is not as simple as subtracting a set amount of points in each quarter or month that a flight attendant took FMLA leave. Rather, a manual, individualized review of each class member's attendance record is required for the relief sought. *Id.*

Further, Southwest recently renegotiated the CBA with the Union and the new CBA permits flight attendants who take intermittent FMLA in a given quarter to receive the No Chargeable

---

[14] As set forth in more detail below, given that an order prohibiting the policy would necessarily require interpretation and modification of the CBA, the class claims are preempted by the Railway Labor Act.

Occurrences and Fourth Quarter Record Improvement Bonus. *See* Rea Decl., ¶ 37. The treatment of continuous FMLA leave has not changed under the new CBA and flight attendants who take continuous or intermittent FMLA leave do not receive the December Record Improvement Bonus or Perfect Attendance During a Quarter bonus if they take FMLA leave in a given quarter or month. *Id.* As a result of the change to the CBA, different types of injunctive relief would be required for flight attendants who take continuous versus intermittent FMLA leave. For these reasons, the requirements of Rule 23(b)(2) are not met as there is no one-size-fits-all final injunctive relief for the entire class.

### D.   Plaintiffs Cannot Satisfy the Requirements of Rule 23(b)(3)

Rule 23(b)(3) permits certification only when common questions of law or fact predominate, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b). The (b)(3) requirements are "far more demanding" than the Rule 23(a) requirements. *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615 (1997). The inquiry must include "the likely difficulties in managing a class action." *Id.* The Ninth Circuit has confirmed that although a uniform policy may suggest some degree of homogeneity among employees, "it does nothing to facilitate common proof on the otherwise individualized issues." *Mendoza v. Home Depot, U.S.A. Inc.,* No. CV09-05843 SJO(JCX), 2010 WL 424679, at *7 (C.D. Cal. Jan. 21, 2010) (citing *In re Wells Fargo Home Mortgage Overtime Pay, Inc.,* 571 F.3d 959 (9th Cir. 2009)).

### 1.   Predominance is Not Met

The determination of whether common questions of law or fact predominate "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 809 (2011). In determining predominance, the Court must look to "the substantive issues raised by Plaintiff and . . . the proof relevant to each issue." *Jiminez v. Domino's Pizza, Inc*., 238 F.R.D. 241, 250 (C.D. Cal. 2006); *see also Gaudin v. Saxon Mortg. Servs., Inc*., 297 F.R.D. 417, 426 (N.D. Cal. 2013) (the Court "considers the proof necessary to establish each element of the claim or defense; and considers how these issues would be tried"). This "analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of

action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (internal quotation marks and citations omitted). If the substantive issues require individual proof for each member's claims, then class certification is inappropriate.

a)    Individualized Questions as to Damages Overwhelm Common Ones

The Ninth Circuit has held that class certification is inappropriate when individualized questions will overwhelm common ones. *Bowerman v. Field Asset Services, Inc.*, 60 F.4th 459, 468-471 (9th Cir. 2023). In *Bowerman*, the plaintiff sought class certification for the misclassification of vendors as independent contractors instead of employees, resulting in the failure to pay overtime and business expenses. *Id.* at 464. The district court certified the class, and a trial ensued with complex individualized testimony and mini-trials regarding work history and credibility of each individual class member. *Id.* at 470. The Ninth Circuit found that in light of the complexity of the individualized questions and the absence of any representative evidence introduced, the individual issues predominated over the common questions in the case and class certification was improper. *Id.* at 471.

*Bowerman* distinguished this individualized assessment from the "straightforward" damages calculation set forth in *Olean*. *Id.* (citing *Olean*, 31 F.4th at 682).[15] *Bowerman* similarly distinguished *Tyson Foods, Inc. v. Bouaphakeo*, in that the plaintiffs offered common evidence, in the form of a representative sample, that each class member could have relied on as evidence of hours that he or she worked if he or she had brought an individual action. *Id.* (citing *Tyson*, 577 U.S. 442, 455 (2016)).[16] The Ninth Circuit noted that the common evidence in *Bowerman* only spoke to some elements of the class members' claims: namely whether they were misclassified as independent contractors – it did not bear on whether the class members actually worked overtime or incurred reimbursable business expenses. *Id.* The "common issue it helps resolve is outweighed by the complexity of the individualized inquiries that remain." *Id.*

---

[15] *Olean* related to claims regarding price-fixing antitrust conspiracy in violation of Sherman Act and California's Cartwright Act. *Olean,* 31 F.4th at 662.

[16] *Tyson* related to claims for compensation of time donning and doffing protective gear. Plaintiffs' expert conducted videotaped observations analyzing how long various donning and donning activities took, and then averaged the time taken in each department. These estimates were then added to the timesheets of each employee to ascertain which class members worked more than 40 hours a week. *Tyson,* 577 U.S. at 445.

Here, Plaintiffs seek recovery of back and front pay, injunctive relief, compensatory, special and general damages, reinstatement, as well as other damages and injunctive relief. *See* Dkt. No. 84 at ¶¶ 100-102.[17] Southwest asserted a failure to mitigate affirmative defense, among other defenses. *See* Dkt. No. 86, at p. 13.

Plaintiffs rely on the declaration of Jeffrey Petersen, Ph.D. to outline a "relatively simple method for the calculation of damages for the (b)(3) Class." *See* Dkt. No. 97 at p. 17:13-14. As an initial matter, Dr. Petersen acknowledged that none of the cases wherein he was designated as an expert in the last four years was a class action alleging FMLA interference, discrimination, or retaliation claims. Lau Decl., ¶ 3, Ex. B, at p. 21:13-17. Moreover, Dr. Petersen does not regard himself as a vocational rehabilitation expert and offers no opinion in this case as to vocational rehabilitation, *i.e.*, the likelihood of finding equivalent employment and the time frame in which that might be accomplished. *Id.* at 31:13-32:16.[18] Further, Dr. Petersen only assessed back pay and front pay damages, and not special damages, general damages, or any claim for emotional distress or mental anguish. *Id.* at 61:23-62:17. Nor does he offer any medical expert opinion relating to whether Mr. Refuerzo or any prospective class member is able to find and hold a job based on their medical conditions. *Id.* at p. 62:15-22.

As set forth in the Declaration of Karl Erik Volk filed concurrently herewith, Dr. Petersen makes improper assumptions and his proposed damages model cannot be applied on a classwide basis without accounting for significant individual differences across the putative class members, which will most certainly impact the computation of their damages. *See* Declaration of Karl Erik Volk, ¶¶ 1-26.

///

---

[17] "Under the avoidable consequences doctrine a person injured by another's wrongful conduct will not be compensated for damages that the injured person could have avoided by reasonable effort or expenditure." *Escriba v. Foster Poultry Farms*, 793 F.Supp.2d 1147, 1170 (citing *State Dept. of Health Services v. Superior Court*, 31 Cal.4th 1026, 1043 (2003)). "[A]n employee who has been wrongfully terminated has a duty to mitigate damages through reasonable efforts to achieve other employment." *Boehm v. American Broadcasting Co., Inc.*, 929 F.2d 482, 485 (9th Cir. 1991). "The general rule is that the measure of recovery by a wrongfully discharged employee is the amount of salary agreed upon for the period of service, less the amount which the employer affirmatively proves the employee has earned or with reasonable effort might have earned from other employment." *Id.* (citing *Parker v. Twentieth Century-Fox Film Corp.*, 3 Cal.3d 176, 181). Plaintiffs may not recover backpay for periods in which they are unavailable for comparable work, even due to a disability. *Canova v. NLRB*, 708 F.2d 1498, 1505 (9th Cir. 1983).

[18] Interestingly, Dr. Petersen states, "if it was for an individual case and there was a vocation opinion, then, yes, we would utilize it as part of the analysis." Lau Decl., ¶ 3, Ex. B, at p. 32:3-8.

Critically, Dr. Petersen never spoke with Mr. Refuerzo or Ms. Cashin, did not review Mr. Refuerzo's deposition transcript, and made no assessment of Mr. Refuerzo's mitigation efforts. Lau Decl., ¶ 3, Ex. B, at pp. 34:3-10, 64:2-66:3, 66:17-67:19, 68:6-9. Mr. Refuerzo testified that from February 2020 through November 9, 2022 (his deposition date), he had not applied for any jobs, despite several airlines reaching out to him with offers. Lau Decl., ¶ 2, Ex. A, pp. 189:11-203:6. Moreover, Mr. Refuerzo has produced no records reflecting his job search efforts. Lau Decl., ¶ 4. Accordingly, Mr. Refuerzo, as the class representative, would be what Dr. Petersen characterizes as a "shirker", *i.e.*, an individual who is not conducting reasonable mitigation. Lau Decl., ¶ 3, Ex. B at pp. 68:22-69:15. Dr. Peterson acknowledged that where a class consists of a group of "shirkers," he would need to make individual determinations regarding damages and mitigation. *Id.*

While Dr. Petersen denies making any assumptions, he testified that a class member who made no effort and never got a job and a class member who made an incredible effort "should cancel each other out," so that "on average, you would see reasonable efforts being made" to mitigate damages. *Id.* at pp. 39:13-40:9, 70:19-71:3. Yet, Dr. Petersen acknowledges that the following factors would affect an individual's damages assessment: the reason for their termination from subsequent employment, their own medical or health condition that prevents them from working, their job search efforts and associated job opportunities offered, their personal life challenges, their personal decision not to work, a family member's medical condition that prevents them from working, and/or their decision not to apply for jobs. *Id.* at pp. 51:24-52:7, 53:2-55:1, 57:25-59:8.[19]

Further, Dr. Petersen seeks to rely on each class member's voluntary production of their Social Security Administration earnings history and their paystubs as evidence of their subsequent earnings, which would be unique to each class member and which would not reflect other income such as disability insurance, unreported income, or whether they made reasonable efforts to search for jobs. *Id.* at pp. 38:21-39:12. Accordingly, here, as in *Bowerman*, <u>individualized questions predominate over common questions and class certification is improper</u>.

///

---

[19] All individuals in the (b)(3) class took unpaid FMLA leave during their employment at Southwest, so it is very likely they are taking unpaid leave during their subsequent employment, which would further decrease their pay. Class members should not be paid for any periods they are unable to work.

b)    FMLA/CFRA Interference

As set forth above, Plaintiffs must establish by a preponderance of the evidence that their taking of protected FMLA/CFRA leave "constituted a negative factor in an employment decision." *Bachelder*, 259 F.3d at 1125. As set forth above, common proof cannot be used to establish this claim and rather, a manual review of each flight attendant's attendance record is necessary. Rea Decl., ¶¶ 18-22, 25-32, 36. There are a number of non-FMLA occurrences that can prevent a flight attendant from receiving a points reduction. *Id.* at ¶ 20. Even assuming a flight attendant had no other occurrences in the quarter when they took FMLA leave and thus could have received one or more RI Bonuses, the RI Bonuses ultimately may not make a difference in their points total at termination. *Id.* at ¶¶ 18-19, 25-32, 36. For example, receiving an RI Bonus in one quarter can cause a flight attendant to lose the benefit of an RI Bonus or 16-month roll off in another quarter, *e.g.*, if the receipt of an RI Bonus in the FMLA quarter brings them to zero, they could not receive a 16-month roll off of past points in the following quarter, in which case, their points even out. *Id.* at ¶¶ 12-32, 36. Given that each class member will need to establish by a preponderance of the evidence that they were entitled to receive RI Bonuses and that the bonuses would have actually made a difference in their points total on a date certain (such as on the date of their termination), predominance cannot be met. This determination can only be made through a manual review of each flight attendant's record and cannot be established with common proof. As a result, the FMLA and CFRA interference claims cannot be certified.

c)    FMLA/CFRA Discrimination and Retaliation

Plaintiffs' trial plan curiously relies on jury instructions from the Eighth Circuit Court of Appeals rather than Ninth Circuit jury instructions or case law establishing the required elements of this claim. In doing so, Plaintiffs erroneously contend that they need only show that their *leave of absence* was a *motivating factor* in the adverse action. However, "the anti-retaliation or anti-discrimination provisions do not cover visiting negative consequences on an employee simply because he has ***used FMLA leave***." *Bachelder*, 259 F.3d at 1124 (emphasis added). Rather, Plaintiffs must establish that they opposed or complained about an unlawful practice under the FMLA or they initiated or participated in FMLA proceedings. *See* 29 U.S.C. § 2615(a)(2),(3). Here, Plaintiffs do not contend that they engaged in any such protected activity, let alone that they were subject to an adverse action because of such

protected activity. Even if they did, this claim cannot be litigated on a class-wide basis through common evidence as each individual class member would need to show that they engaged in protected activity (other than simply taking FMLA leave) and that their protected activity was the cause of their termination or other adverse employment action. Because of this, predominance is not met and Plaintiffs' FMLA and CFRA retaliation and discrimination claims cannot be certified.

d)    <u>Wrongful Termination and Unfair Competition Claims</u>

As set forth above, the wrongful termination and unfair competition claims are derivative of the FMLA/CFRA claims and predominance for these claims is similarly not met. Plaintiffs' trial plan also fails to mention the unfair competition claim or establish how the elements of the claim can be proved on a class-wide basis through common evidence. For these reasons, class certification should be denied as to both claims.

2.    <u>**Class Action is Not Superior to Other Means of Adjudication**</u>

Under Rule 23(b), Plaintiffs must establish that a class action is superior to other means of adjudication. *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996). A class action is not superior if "each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001), modified in part by *Zinser*, 273 F.3d 1266 (noting that causation difficulties do not necessarily render class certification impossible). As discussed above, Plaintiffs' claims will each require time-consuming individualized mini-trials for each flight attendant to determine if they were entitled to receive RI Bonuses based on their attendance records, and if they did receive the RI Bonuses notwithstanding their taking of FMLA leave, whether the end result would have been the same (*e.g.*, they would have been terminated regardless). Further, to determine the remedy sought for the injunctive class – a points adjustment – an individualized assessment would be necessary as well. Indeed, "[t]o determine who is a class member, whether Defendant is liable to that person, and what damages are due requires an examination of individual circumstances." *Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 470 (S.D. Cal. 2007). For these reasons, a class action is not superior.

Plaintiffs' trial plan entirely ignores the complexities in establishing liability for the claims alleged and the inescapable fact that an individualized, manual review of each flight attendant's

attendance record will be necessary. Similarly, with regard to the (b)(2) class's requested injunctive relief, adjustment of flight attendants' points cannot be performed on a class-wide basis using a one-size-fits-all formula and would need to be done manually for each putative class member. This is because each flight attendant's attendance records are unique and subject to numerous variables that impact when and how flight attendants accumulate and reduce their points. Lastly, as set forth above, an individualized analysis of each putative class member's damages and mitigation efforts is required.

### E.     The Railway Labor Act ("RLA") Preempts Plaintiffs' Claims

The Ninth Circuit applies a two-step test to determine whether the RLA preempts a state-law claim. The first step is evaluating whether the claim is "grounded in" a CBA by asking whether the claim "seeks purely to vindicate a right or duty created by the CBA itself." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 920–21 (9th Cir. 2018) (en banc). The RLA preempts state-law claims under this first step if the CBA is the only source of the right the plaintiff asserts; claims that merely refer to a CBA-defined right or that rely only in part on a CBA's terms are not preempted. *Id.* at 921. The second step asks whether adjudicating the state-law claim requires "interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration." *Id.*

Here, in ruling on Southwest's Motion to Dismiss, the Court stated the RLA does not preempt Plaintiffs' claims as the claims are not grounded in the CBA and rather are based on rights under the FMLA/CFRA. Dkt. No. 25. However, the *Alaska Airlines* and *Kobold* cases relied upon by the Court are distinguishable as in both cases, the CBA largely tracked the relevant state laws with slight differences. In *Alaska Airlines*, the CBA did not allow use of vacation days for family medical reasons and the state law permitted workers to use accrued paid leave for family medical reasons. *Alaska Airlines,* 898 F.3d at 917. In *Kobold*, the CBA required the employer to remit deductions monthly without any specified date, whereas the relevant state law provided that deductions must be remitted seven days after wages were due. *See Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1039–40 (9th Cir. 2016). Our facts are distinguishable from these cases as the FMLA and CFRA do not provide for RI Bonuses or points reduction. Without the bargained-for CBA providing for RI Bonuses and progressive discipline based on points accumulation, Plaintiffs would be unable to allege any FMLA or CFRA violation as there is no dispute that they were approved for and took FMLA leave and they

were reinstated to their same position upon their return. The CBA also sets forth the enumerated absences that constitute an attendance occurrence and the amount of points assessed for each. RJN, ¶ 1, Ex. 1. Interpretation of the CBA is therefore essential to determine whether each class member did not receive RI Bonuses due to their FMLA leave, due to some other occurrence, or both, and whether the flight attendant was subject to any discipline under the progressive discipline policy based on their points level. Further, it is apparent that Mr. Erlich and Ms. Rea have come to different conclusions in interpreting the CBA to analyze whether the above-referenced 24 flight attendants would have still been terminated for points regardless of their FMLA leave. *See* Rea Decl., ¶¶ 21-22, 25-29. As a result, Plaintiffs' claims are preempted under the second step as adjudication and resolution of their claims require interpretation of and are substantially dependent on, the CBA, including the Attendance Policy. Further, the (b)(2) injunctive class seeks modification of the bargained-for CBA and an adjustment of the flight attendants' points so they receive RI Bonuses, if eligible, regardless of their FMLA leave, which will require interpretation and amendment of the CBA. For these reasons, class certification is inappropriate as Plaintiffs' claims are preempted by the RLA.

### F.    **Plaintiffs' Trial Plan is Smoke and Mirrors**

"Certification is only proper when a plaintiff demonstrates a 'suitable and realistic plan for trial of the class claims.'" *Zinser,* 253 F.3d at 1189 (citing *Chin v. Chrysler Corp.,* 182 F.R.D. 448, 453 (D.N.J. 1998)); *see also Valentino,* 97 F.3d at 1234 (no certification where "no showing by plaintiffs of how the class trial could be conducted"). As set forth above, Plaintiffs' trial plan completely ignores the countless individualized issues that must be addressed to assess liability, damages, and injunctive relief. Indeed, Plaintiffs estimate that Phase 1 of trial—during which Plaintiffs would need to establish liability for each cause of action and entitlement to injunctive and declaratory relief—will take only **2-3 days**. Given all the individualized issues described above, this estimate is completely unrealistic. Further, the trial plan fails to appreciate the complexities in evaluating whether each class member was damaged and if so, whether they sufficiently mitigated their damages.

### G.    **The Class Definitions Are Overly Broad and Uncertain**

Apart from the enumerated requirements of Rule 23(a), "[a]n implied prerequisite to certification is that the class must be sufficiently definite." *Davis v. Astrue*, 250 F.R.D. 476, 484 (N.D. Cal. 2008)

(citing *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, No. C 05–2320 SBA, 2006 WL 2642528, at *3 (N.D. Cal. Sep. 14, 2006)). The class definition must set forth a class which is ascertainable and clearly identifiable. *See Davis*, 250 F.R.D. at 484. Here, the definitions of the injunctive (b)(2) classes and (b)(3) damages classes necessarily require an evaluation of each putative class member's likelihood of success on the merits. *See Howard v. CVS Caremark Corp.*, 2014 WL 7877404, at * 4 (C.D. Cal. Dec. 9, 2014). To ascertain who is a class member, the Court must engage in an individualized analysis to determine if a flight attendant **actually took** FMLA leave and **consequently** lost access to RI Bonuses. This would require the Court to analyze each flight attendant's attendance record to determine if they had another non-FMLA absence or occurrence in the relevant period in which they took FMLA leave that also prevented them from receiving RI Bonuses. If so, the flight attendant did not lose access to RI Bonuses **as a consequence** of their FMLA leave as they would return from FMLA leave in the same position as before they left – unable to receive RI Bonuses. Further, we cannot look at the quarter in which a flight attendant took FMLA leave in a vacuum, as if a flight attendant receives any RI Bonuses in that quarter, it may prevent them from receiving a future points reduction such as a 16 month roll off. *See* Rea Decl., ¶¶ 18-19, 32, 36. For these reasons, class certification should be denied.

### H.    Mr. Erlich's Declaration Should be Stricken In Its Entirety

Southwest objects to Mr. Erlich's declaration in its entirety[20] as it contains legal conclusions, speculation and argument rather than factual statements based on admissible evidence and it must be stricken pursuant to Civil Local Rules 7-5(a) and (b). *See* Dkt. No. 97-1; N.D. Cal. Civ. L. R. 7-5(a), (b). Civil Local Rule 7-5(b) provides "[a]n affidavit or declaration may contain only facts…and must avoid conclusions and argument… An affidavit or declaration not in compliance with this rule may be stricken in whole or in part." In Paragraphs 20, 21, 23 of his declaration, Mr. Erlich tries to serve as a quasi-expert witness by sorting, altering and interpreting the data produced by Southwest in discovery and applying excel formulas to such spreadsheets in order to make conclusions about the data. *See* Fed. R. Evid. 702; N.D. Cal. Civ. L. R. 7-5(a), (b). However, Mr. Erlich is not an expert witness or an employee of Southwest and his conclusions and argument must be stricken for violating Local Rule 7-

---

[20] To the extent the Court is not inclined to strike the declaration in its entirety, the Court should strike Paragraphs 12, 20, 21, 23 and 24-27 and Exhibit 11, which is Mr. Erlich's "filtered" version of an Excel spreadsheet produced by Southwest, pursuant to Civil Local Rule 7-5(a) and (b).

5(b). Southwest objects to Paragraph 21 of Mr. Erlich's declaration wherein he states that he used a "simple excel formula" to sort a spreadsheet produced by Southwest in discovery which shows flight attendants who were terminated for accumulating 12 or more attendance points. *See* Dkt. No. 97-1, ¶ 21. Southwest also objects to Mr. Erlich's self-serving conclusions in Paragraph 23 of his declaration relating to his "manual review" of the attendance records of 64 flight attendants. *See* Dkt No. 97-1, ¶ 23. As Mr. Erlich is not an expert, a fact witness or an employee of Southwest with personal knowledge of its policies or systems, his improper conclusions and arguments must be stricken.

Further, Southwest objects to Paragraphs 24-27 of Mr. Erlich's Declaration wherein he purportedly analyzes, interprets, and makes legal conclusions about the attendance records in an effort to show that Southwest penalizes flight attendants who use FMLA leave. Dkt. 97-1, ¶¶ 24-27. Mere "legal conclusions without underlying *factual support* ... constitute 'unsupported speculation' and are therefore inadmissible [evidence]." *Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.*, 371 Fed.Appx. 719, 720 (9th Cir. 2010) (citation omitted); *see also Martino v. Ecolab, Inc.,* No. 14-cv-04358-PSG, 2016 WL 614477, at *6 (N.D. Cal. Feb. 16, 2016) (disregarding legal conclusions in declarations submitted at class certification stage). As Mr. Erlich is not a fact witness or a Southwest employee with personal knowledge of its policies, procedures or systems, his declaration must be stricken in whole or in part pursuant to Civil Local Rule 7-5(b).

## VI.    CONCLUSION

Resolution of Plaintiffs' claims requires a difficult, individualized analysis of attendance records going back more than five years. There is no way to fairly determine liability on a classwide basis. As discussed in detail above, each flight attendant's attendance records from 2019 through the present would need to be analyzed on a monthly basis to determine whether their use of FMLA leave had any impact on their attendance points. Accordingly, Plaintiffs have not met their burden under Rule 23 and class certification should be denied.

Dated:  July 1, 2024

Respectfully submitted,
FISHER & PHILLIPS LLP

By:    */s/ Megan F. Clark*
ANNIE LAU
MEGAN F. CLARK
Attorneys for Defendant
SOUTHWEST AIRLINES CO.