UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RORESTE REFUERZO, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>SOUTHWEST AIRLINES CO.,<br><br>　　　　　Defendant. | Case No. 22-cv-00868-JSC<br><br>**ORDER RE: PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 97 |

Plaintiffs bring this putative class action against Southwest for penalizing flight attendants' exercise of family and medical leave. (Dkt. No. 84.)[1] Before the Court is Plaintiffs' motion for class certification. (Dkt. No. 97.) Having carefully considered the briefing, and with the benefit of oral argument on September 5, 2024, the Court CERTIFIES Plaintiffs' claims for FMLA interference, wrongful termination, and unfair competition as to the (b)(2) Nationwide Injunctive Relief Class, (b)(2) California Subclass, and (b)(3) Nationwide Damages Class. Plaintiffs' motion as to the (b)(3) California Subclass is DENIED for failure to establish numerosity.

## BACKGROUND

**I.　Complaint Allegations**

Plaintiffs allege Southwest "instituted a policy in 2019 that effectively penalizes its flight attendants' exercise of family and medical leave. Under the policy, a flight attendant who would otherwise be entitled to a reduction in disciplinary points is not given the reduction if she took medical or family leave." (Dkt. No. 84 ¶ 1.) Southwest tracks "points" for attendance and disciplinary violations; when a flight attendant accumulates 12 points, they are eligible for

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

termination. (*Id.* ¶ 15.) Flight attendants can reduce their points through Southwest's "record-improvement" mechanisms, which reward good attendance under the following four circumstances: "(1) No Chargeable Occurrences During a Quarter; (2) Perfect Attendance During a Quarter; (3) Fourth Quarter Record Improvement Bonus; (4) December Record Improvement." (*Id.* ¶ 16.) Prior to 2019, Southwest penalized flight attendants who took continuous leave under the Family and Medical Leave Act (FMLA) for less than 14 days by disqualifying them from record-improvement mechanisms. (*Id.* ¶ 17.) In March 2019, Southwest instituted a new policy that disqualified flight attendants who took intermittent FMLA leave from record-improvement mechanisms. (*Id.* ¶ 18.) So, "[e]mployees who exercise the right to protected leave lose the benefit of point reductions to which they would otherwise be entitled." (*Id.*)

Plaintiff Refuerzo, who began working for Southwest as a flight attendant in 2006, applied for intermittent FMLA leave in May 2019. (*Id.* ¶¶ 22-23.) Southwest approved Mr. Refuerzo's request, and he used his intermittent leave in November and December of 2019. (*Id.* ¶ 23.) Because Mr. Refuerzo used his intermittent leave, he did not receive the two-point deduction to which he would have otherwise been entitled for the final quarter of 2019. (*Id.* ¶ 24.) So, Mr. Refuerzo ended 2019 with 9.5 disciplinary points instead of 7.5. (*Id.* ¶ 25.) When Mr. Refuerzo had to call out sick in January 2020, Southwest incorrectly assessed 2.5 disciplinary points against Mr. Refuerzo for reporting his illness less than two hours prior to the scheduled check-in, even though Mr. Refuerzo had reported his illness exactly 2 hours before the scheduled check-in. (*Id.* ¶ 27.) Southwest terminated Mr. Refuerzo in February 2020 because he had reached the 12-point termination threshold. (*Id.* ¶¶ 27-28.)

Plaintiff Cashin, who began working for Southwest as a flight attendant in 2015, applied for intermittent FMLA leave in May 2018. (*Id.* ¶ 31.) Ms. Cashin could not return from her intermittent leave until completing her FMLA intake pursuant to Southwest's policies. (*Id.* ¶ 32.) However, Ms. Cashin could not complete her FMLA intake until Southwest granted her access to Southwest's portal. (*Id.*) Southwest failed to provide Ms. Cashin access to the portal until less than two hours before her next scheduled flight, when Ms. Cashin had already checked in pursuant to Southwest's attendance requirements. (*Id.*) So, Southwest assessed Ms. Cashin disciplinary

points for her absence on the flight she had checked into instead of characterizing her absence as FMLA leave. (*Id*.) As a result, Southwest terminated Ms. Cashin in June 2018. (*Id*. ¶ 33.) Ms. Cashin grieved her termination through the Transport Workers Union Local 556 and was reinstated as a flight attendant in July 2018. (*Id*. ¶ 33.) After Ms. Cashin's reinstatement, she took time off from work due to a broken palm. (*Id*. ¶ 34.) Southwest double-counted Ms. Cashin's time off as both paid medical and FMLA leave. (*Id*. ¶ 34.) In April 2022, Southwest approved Ms. Cashin's request for intermittent leave of two three-day absences per month. (*Id*. ¶ 35.) But in May 2022, Southwest informed Ms. Cashin her disciplinary point total was 11. (*Id*. ¶ 36.) Though a quarterly reduction of 2 points through one of Southwest's record-improvement mechanisms would have lowered Ms. Cashin's disciplinary point total, any use of her approved intermittent FMLA leave would make her ineligible for a quarterly reduction. (*Id*.)

## II. Relevant Procedural History

Plaintiffs seek to assert three causes of action against Southwest on a class basis: (1) interference in violation of FMLA, (2) wrongful termination, and (3) unfair competition.[2] Plaintiffs move to certify the following nationwide classes and California subclasses:

> **The "(b)(2) Nationwide Injunctive Relief Class"**
> All Southwest flight attendants based in the United States since March 1, 2019 to present who exercised their rights to family and medical leave and consequently lost access to disciplinary points reduction.
>
> **The "(b)(2) California Subclass"**
> All Southwest flight attendants based in California since March 1, 2019 to present who exercised their rights to family and medical leave and consequently lost access to disciplinary points reduction.
>
> **The "(b)(3) Nationwide Damages Class"**
> All Southwest flight attendants based in the United States since March 1, 2019 to present who exercised their rights to family and medical leave and consequently lost access to a disciplinary points reduction and were subsequently terminated for an accumulation of disciplinary points.
>
> **The "(b)(3) California Subclass"**
> All Southwest flight attendants based in California since March 1, 2019 to present who exercised their rights to family and medical leave and consequently lost access to a disciplinary points reduction and

---

[2] As was confirmed at the September 5, 2024, hearing, Plaintiffs withdraw their FMLA and California Family Rights Act discrimination and retaliation claims. (Dkt. No. 102 at 12 n.9.)

3

> were subsequently terminated for an accumulation of disciplinary points.

(Dkt. No. 97 at 5.) Plaintiffs also seek appointment of Plaintiff Cashin as the class representative for the (b)(2) Nationwide Injunctive Relief Class and (b)(2) California Subclass, Plaintiff Refuerzo as the class representative of the (b)(3) Nationwide Damages Class and (b)(3) California Subclass, and appointment of Andrus Anderson LLP and Erlich Law Firm, P.C. as class counsel.

### a. Objections

The parties lodge various objections to the opposing side's evidence. (Dkt. Nos. 100 at 30; 103, 104.) To the extent the Court considers the objected-to evidence, the objections are addressed in context.

## DISCUSSION

### I. Railway Labor Act Preemption

Southwest rehashes the argument Plaintiffs' claims are preempted by the Railway Labor Act on the grounds interpretation of the collective bargaining agreement between Southwest and the flight attendants' union is required to adjudicate Plaintiffs' claims. As the Court has already determined, Plaintiffs claims arise from

> the right to take family and medical leave without penalty, which is created by the FMLA and CFRA. . . . Plaintiff[s'] claims refer to the Record Improvement policy laid out in the CBA, but they are rooted in a right to take leave that does not come from the CBA.

(Dkt. No. 25 at 5 (cleaned up).) Further, Plaintiffs' claims "do not substantially depend on analysis of the CBA" because "there is no real dispute about how the policy was applied." (Dkt. No. 25 at 6); *see also Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007) ("[N]either looking to the CBA merely to discern that none of its terms is reasonably in dispute nor the simple need to refer to bargained-for wage rates in computing a penalty is enough to warrant preemption." (cleaned up)). Accordingly, Plaintiffs' claims are not preempted by the Railway Labor Act and this Court retains subject matter jurisdiction over this action.

### II. Plaintiff Cashin's Article III Standing

Southwest challenges Plaintiff Cashin's Article III standing to represent the (b)(2)

4

Nationwide Injunctive Class and (b)(2) California Subclass.

In putative class actions "seeking injunctive or declaratory relief, only one plaintiff need demonstrate standing to satisfy Article III." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir.), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc., On Behalf of Itself & All Others Similarly Situated*, 143 S. Ct. 424 (2022).

> In order to establish standing for injunctive relief, a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1240 (9th Cir. 2024) (cleaned up). "The plaintiff must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Id*. (cleaned up). "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects. Nor does speculation or subjective apprehension about future harm support standing." *Id*. (cleaned up).

Plaintiff Cashin alleges facts sufficient to support Article III standing to represent the (b)(2) Nationwide Injunctive Class and the (b)(2) California Subclass. The alleged injuries include the loss of record improvement eligibility based on the use of FMLA leave and the deterrent effect of Southwest's policy on flight attendants who otherwise would exercise their FMLA rights. *See, e.g.*, *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002) (holding deterrence qualifies as an "actual injury."); *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 823 (2024), *reh'g denied*, 144 S. Ct. 1132 (2024) (same). Plaintiff Cashin herself has suffered and continues to suffer these concrete and particularized injuries, which are directly traceable to Southwest's policy barring flight attendants who exercise FMLA leave from record improvement. It is undisputed she is employed at Southwest under the policy barring record improvement for quarters in which flight attendants use their approved FMLA leave. (Dkt. Nos. 84 ¶¶ 31-33; 97-3 ¶ 6; 100 at 12 n.7.) It is also undisputed Southwest approved Plaintiff Cashin's request for intermittent FMLA leave in April 2022, which she used

during Q2 of 2022.  (Dkt. Nos. 97 at 12; 97-1 at 40.)  It is further undisputed Plaintiff Cashin was disqualified from record improvement for Q2 of 2022 because of her use of her approved FMLA leave.  (Dkt. No. 97-1 at 45-46.)  In sum, Plaintiff Cashin sufficiently alleges (and offers evidence) she has lost record improvement eligibility because she took FMLA leave, and Southwest's attendance policies deter her from taking future FMLA leave.  So, Plaintiff Cashin demonstrates Article III standing to represent the (b)(2) Nationwide Injunctive Class and the (b)(2) California Subclass.

Southwest argues "prior to taking FMLA leave in Q1 2021 and Q3 2023, [Plaintiff Cashin] had other non-FMLA absence occurrences which already prevented her from [record improvement]."  (Dkt. Nos. 100 at 12; 100-4 ¶ 33.)  Sure.  But she was disqualified from record improvement in Q2 of 2022 because she used her FMLA leave.  (Dkt. Nos. 97 at 12; 97-1 at 40, 45-46.)  So, Plaintiff Cashin sufficiently alleges past injury from Southwest's policy.  Further, Southwest's argument does not address her deterrence injury.

### III. Rule 23

"Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017).  Plaintiffs must satisfy the threshold requirements of Rule 23(a) as well as the requirements under one of the subsections of Rule 23(b).  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588-89 (9th Cir. 2012), overruled by *Olean Wholesale Grocery Coop.,* 31 F.4th at 682 n. 32 (overruling *Mazza*'s holding that "no class may be certified that contains members lacking Article III standing," and upholding "*Mazza* as to any other holding which remain[*sic*] good law.").  "[E]ach subclass must independently meet the requirements of Rule 23 for the maintenance of a class action." *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981); *see also Simon v. City & Cnty. of San Francisco*, No. 22-CV-05541-JST, 2024 WL 590360, at *16 (N.D. Cal. Feb. 13, 2024) (same).  Under Rule 23(a), a case is appropriate for certification if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Plaintiffs insist the (b)(2) Nationwide Injunctive Relief Class and (b)(2) California subclass satisfy Rule 23(b)(2), which requires "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

> Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011).

Plaintiffs contend the (b)(3) Nationwide Damages Class and (b)(3) California Subclass satisfy Rule 23(b)(3), which requires the Court to find "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza*, 666 F.3d at 588 (cleaned up).

### a. Rule 23(a)

#### i. Numerosity

Each putative class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[I]mpracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (cleaned up). "While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not." *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012).

#### 1. (b)(2) Nationwide Injunctive Relief Class

1    Plaintiffs estimate the number of flight attendants in the (b)(2) Nationwide Injunctive
2    Relief Class is over 9,000, making it impracticable to bring all class members before the Court on
3    an individual basis. Their estimate relies on two spreadsheets provided by Southwest; the first
4    identifies 6,176 flight attendants who were approved for intermittent FMLA leave from February
5    2018 to December 2023, and the second identifies 2,879 flight attendants who were approved for
6    continuous FMLA leave from March 2019 to April 2024. (Dkt. No. 97-1 ¶ 20.) Accordingly,
7    Plaintiffs have established the (b)(2) Nationwide Injunctive Relief Class is sufficiently numerous.

### 2. (b)(2) California Subclass

9    While Plaintiffs do not provide an estimate of the number of flight attendants in the (b)(2)
10   California Subclass, it is likely the size of the (b)(2) California subclass meets the numerosity
11   requirement because the (b)(2) Nationwide Injunctive Relief Class includes over 9,000 flight
12   attendants. Further, "the size of the class is not the sole determining factor." *A. B. v. Hawaii State*
13   *Dep't of Educ.*, 30 F.4th 828, 835-36 (9th Cir. 2022) (cleaned up). "[O]ther factors bearing upon
14   the feasibility and convenience of joinder . . . . include the geographical diversity of class
15   members, the ability of individual claimants to institute separate suits, and whether injunctive or
16   declaratory relief is sought, as well as the ability to identify and locate class members." *Id*.
17   (cleaned up). Here, "the presence of other indicia of impracticability persuade [the Court] that the
18   requirement has been met." *Id*. at 836. The joinder of unknown flight attendants is "inherently
19   impracticable" and because "the class seeks only prospective injunctive and declaratory relief, the
20   practical value of joining *each* of the [] class members as a formal party is slim to non-existent and
21   is plainly outweighed by the substantial logistical burdens that would entail." *Id*. at 836, 837.
22   Accordingly, the numerosity requirement for the (b)(2) California Subclass is met.

### 3. (b)(3) Nationwide Damages Class

24   Plaintiffs identify 74 individual flight attendants who were approved for FMLA leave and
25   terminated for an accumulation of disciplinary points. (Dkt. No. 97-1 ¶ 21.) Of those 74,
26   Plaintiffs identify at least 28 flight attendants who lost access to a disciplinary points reduction
27   based on their use of FMLA leave and subsequently were terminated for an accumulation of
28   disciplinary points. (Dkt. Nos. 97-1 ¶ 23; 102-1 ¶ 53.) Plaintiffs claim four additional flight

8

1    attendants "were terminated by Southwest after the initiation of this lawsuit but signed releases
2    without being notified of the pendency of this case." (Dkt. No. 97-1 ¶ 23.) However, three of
3    those four flight attendants are already included in the list of flight attendants. (*Id*.) So, Plaintiffs
4    identify at least 29 flight attendants who fall within the putative (b)(3) Nationwide Damages
5    Class.[3] "Although there is no absolute minimum number of plaintiffs necessary to demonstrate
6    that the putative class is so numerous so as to render joinder impracticable, joinder has been
7    deemed impracticable in cases involving as few as 25 class members." *Valenzuela v. Best-Line*
8    *Shades, Inc.*, No. 19-CV-07293-JSC, 2021 WL 3514101, at *3 (N.D. Cal. Aug. 10, 2021) (cleaned
9    up). Because Plaintiffs' putative (b)(3) Nationwide Damages Class exceeds this numerical
10   threshold, the numerosity requirement is met.

11          Southwest argues numerosity is lacking because only those flight attendants who were
12   terminated based on their exercise of FMLA leave should be included in the class. But the
13   putative class is not defined only to include those who were terminated for exercising FMLA
14   leave; instead, it is defined as flight attendants who lost access to points reduction because of
15   taking FMLA leave and then were subsequently terminated for points accumulation. *See infra* at
16   p. 3. Moreover,

> [a] court may not [] create a 'fail safe' class that is defined to include only those individuals who were injured by the allegedly unlawful conduct. Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.

20   *Olean Wholesale Grocery Coop., Inc.*, 31 F.4th at 669 n.14 (cleaned up). Because the (b)(3)
21   Nationwide Damages Class cannot be restricted "to include only those individuals who were
22   injured by the allegedly unlawful conduct," the class is not limited to flight attendants who were
23   terminated for exercising FMLA leave.

24          Southwest also argues it reinstated five of the identified putative class members, so they
25   should be excluded from the (b)(3) Nationwide Damages Class. (Dkt. No. 100-4 ¶ 22.) But

---

[3] The 29 flight attendants are identified by Employee IDs: 47826, 69044, 78137, 81076, 81979, 86919, 87319, 88039, 100210, 101212, 107974, 109189, 111501, 114507, 118317, 120266, 125238, 125575, 132068, 138561, 142443, 142471, 147621, 150241, 106977, 117780, 123973, 132423, and 109176.

United States District Court
Northern District of California

Southwest fails to provide any evidence the five flight attendants were reinstated or that they released their claims against Southwest despite the Court's order Southwest provide "[r]eleases or other documents on which [Southwest] relies as the basis to exclude certain flight attendants from the putative class." (Dkt. No. 66.)  So, the Court declines to exclude them.  Further, just because a flight attendant was reinstated does not mean they were not terminated for an accumulation of disciplinary points after their exercise of FMLA leave disqualified them from point reduction.  And without any evidence as to what the reinstatement means, the alleged reinstatement also does not establish the flight attendant did not suffer an injury.

Finally, Southwest objects to Plaintiffs' counsel's declaration in its entirety, and in particular, to the portions supporting Plaintiffs' numerosity estimates, as violative of Civil Local Rule 7-5(b).  *See* N.D. Cal. Civ. L.R. 7-5(b) ("An affidavit or declaration may contain only facts, must conform as much as possible to the requirements of Fed. R. Civ. P. 56(e), and must avoid conclusions and argument.").  The relevant portions of the declaration contain only factual statements and thus comply with Civil Local Rule 7-5.  (Dkt. No. 97-1 ¶¶ 12, 20, 21, 23, 24-27.)  Further, the Federal Rules of Evidence permit use of "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  Fed. R. Evid. 1006.  And, in any event, "a district court is not limited to considering only admissible evidence in evaluating whether Rule 23's requirements are met." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018).  As in *Sali*, Southwest does not "dispute the authenticity of the [] data underlying [Plaintiffs' counsel's] analysis, nor d[oes] it directly dispute the accuracy of his calculations." *Id*. at 1006.  So, the Court overrules Southwest's objections to Plaintiffs' counsel's declaration.

Accordingly, Plaintiffs' proposed (b)(3) Nationwide Damages Class is sufficiently numerous.

### 4. (b)(3) California Subclass

Plaintiffs do not provide an estimate of the number of flight attendants in the (b)(3) California Subclass.  Southwest contends only five of the 74 flight attendants who were approved for FMLA leave and terminated for an accumulation of disciplinary points have a base airport in

California. (Dkt. Nos. 100 at 13 n.9; 100-4 ¶ 34.) Accordingly, Plaintiffs fail to show the (b)(3) California Subclass is sufficiently numerous. *Betts*, 659 F.2d at 1005 ("[E]ach subclass must independently meet the requirements of Rule 23 for the maintenance of a class action."); *see also Simon*, 2024 WL 590360, at *16 (same).

\* \* \*

Because Plaintiffs fail to satisfy the numerosity requirement as to the (b)(3) California subclass, their motion to certify this subclass is DENIED.

### b. Commonality

"[C]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" *Mazza*, 666 F.3d at 588 (quoting *Dukes*, 564 U.S. at 350). "[P]laintiff[s] must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Id.* (cleaned up). The commonality requirement is construed permissively and is "less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "Even a single common question of law or fact that resolves a central issue will be sufficient to satisfy this mandatory requirement for all class actions." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020).

Plaintiffs satisfy the commonality requirement for the (b)(2) Nationwide Injunctive Relief Class and the (b)(3) Nationwide Damages Class. Whether Southwest's policy barring employees who exercise FMLA leave from point reduction creates a negative consequence that "tends to chill an employee's freedom to exercise FMLA rights" is a common question capable of common resolution underlying each of Plaintiffs' causes of action. *Olson v. United States by & through Dep't of Energy*, 980 F.3d 1334, 1338 (9th Cir. 2020). This central question goes to the heart of each cause of action and each class member's potential relief, satisfying the "limited burden" of commonality. *Mazza*, 666 F.3d at 589.

Southwest argues commonality does not exist because "an individualized inquiry is necessary to determine if each class member's taking of FMLA leave constituted a negative factor

11

1  in an employment decision." (Dkt. No. 100 at 16.)  Not so.  "[T]he inquiry for interference is
2  whether the employer's conduct makes an employee less likely to exercise their FMLA leave
3  rights because they can expect to be fired or otherwise disciplined for doing so." *Olson*, 980 F.3d
4  at 1338 (cleaned up).  "FMLA interference can take many forms including, for example, using
5  FMLA leave as a negative factor in hiring, promotions, disciplinary actions, **and no-fault**
6  **attendance policies**." *Id*. (emphasis added).  Because Southwest's challenged attendance policy
7  uniformly bars flight attendants who take FMLA leave from points reduction, the determination of
8  whether Southwest's policy interferes with flight attendants' FMLA rights can be addressed on a
9  classwide basis.  This "single common question of law or fact that resolves a central issue" is
10 sufficient to satisfy the commonality requirement for the (b)(2) Nationwide Injunctive Relief
11 Class, (b)(2) California Subclass, and the (b)(3) Nationwide Damages Class.  *Castillo*, 980 F.3d at
12 728.

### c. Typicality

"Typicality refers to the nature of the claim or defense of the class representative and not on facts surrounding the claim or defense."  *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 510 (N.D. Cal. 2007) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (cleaned up).  The typicality requirement serves as a "guidepost[] for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Dukes*, 564 U.S. at 349 n.5.  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Castillo*, 980 F.3d at 729.

#### i. (b)(2) Class

Plaintiff Cashin's claims are typical because they arise from Southwest's policy uniformly

United States District Court
Northern District of California

barring flight attendants from points reduction for taking FMLA leave. *See Castillo*, 980 F.3d at 730 (holding the plaintiff established typicality because the plaintiff's "claims arise from the same allegedly unlawful policy of using total hours worked in the divisor.") Indeed, Southwest admits "the taking of intermittent FMLA leave, for even one day of a quarter, prevents an Otherwise Qualified Flight Attendant from receiving Record Improvement under the No Chargeable Occurrences During a Quarter procedure." (Dkt. No. 97-1 at 45-46.) For this reason, Plaintiff Cashin's claims are reasonably co-extensive with the putative class members, and so she has satisfied the typicality requirement.

Southwest's primary argument against the typicality of the putative (b)(2) classes is "the remedy sought by the (b)(2) class[es] – adjustment of their points – would not be typical for the entire class" because the attendance record of each class member is unique. (Dkt. No. 100 at 19.) Southwest contends "the points adjustment (if any) must be done <u>manually for each flight attendant</u>." (Dkt. No. 100 at 19 (emphasis in original).) At the hearing, Southwest insisted *Dukes*, 564 U.S. 338, and *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459 (9th Cir. 2023), support the proposition typicality is lacking if the sought-after injunctive relief would have to be implemented manually. Not so. *Dukes* did not consider whether the plaintiff's requested relief met Rule 23(a)'s typicality requirement because the Supreme Court found commonality lacking. *Dukes*, 564 U.S. at 349 n.5 ("In light of our disposition of the commonality question, however, it is unnecessary to resolve whether respondents have satisfied the typicality and adequate-representation requirements of Rule 23(a)."). And just because points adjustment must be done manually for each flight attendant does not mean the remedy is unique or otherwise incapable of "classwide" application. *Id*. at 350. Rather, the remedy is typical across the (b)(2) classes in that it seeks uniform restoration of the points reductions to which flight attendants would otherwise have been entitled but for their exercise of FMLA leave.

In *Bowerman*, "complex, individualized inquiries" as to liability and damages overwhelmed common questions when the plaintiffs relied exclusively "on individual testimony to establish the existence of an injury and the amount of damages." *Id*. at 468-71. But here, Southwest's liability for FMLA interference can be established through common evidence because

1    Southwest's challenged attendance policy applied uniformly across the class. Moreover, unlike in
2    *Bowerman*, Southwest's own attendance records will be sufficient to show who among the class
3    members were denied quarterly points reduction based solely on their exercise of FMLA leave.
4    So, *Bowerman* fails to support Southwest's argument manual points adjustment defeats the
5    typicality of Plaintiff Cashin to represent the (b)(2) classes.

####    ii.   (b)(3) Class

Southwest argues Plaintiff Refuerzo's claims are not typical of the (b)(3) class because he was terminated immediately after the quarter he took FMLA leave, "whereas other class members were terminated months, if not years later." (Dkt. No. 100 at 19.) But Southwest fails to explain why that distinction makes a difference. The question is whether each class member was terminated for points accumulation after being denied point reduction because of taking FMLA leave, the same question posed by Plaintiff Refuerzo's claims. Southwest's argument that Plaintiff Refuerzo's lack of mitigation of damages makes him atypical is similarly unavailing. "[T]he amount of damages is invariably an individual question and does not defeat class action treatment." *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

Accordingly, Plaintiffs satisfy the typicality requirement for the (b)(2) Nationwide Injunctive Relief Class, (b)(2) California Subclass, and (b)(3) Nationwide Damages Class.

### d.   Adequacy of Representation

Like typicality, adequacy of representation ultimately concerns whether the class action device will protect the interests of absent class members. *Dukes*, 564 U.S. at 349 n.5; Fed. R. Civ. P. 23(a)(4). Courts ask, "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the actions vigorously on behalf of the class?" *Evon*, 688 F.3d at 1030 (cleaned up); *see also Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992) (noting adequacy of representation "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." (cleaned up)); Fed. R. Civ. P. 23(g)(1).

**IV.**   Given no conflicts are apparent between Plaintiffs and other class members, and class

counsel is experienced in class action employment litigation, the adequacy requirement is met. (Dkt. Nos. 97-1 ¶¶ 34-41; 97-2 ¶¶ 4-5; 97-3 ¶¶ 4-5; 97-4 ¶¶ 4-10.) **Rule 23(b)(2)**

To satisfy Rule 23(b)(2), Plaintiffs must show Southwest "has acted or refused to act on grounds that apply generally to the [(b)(2) Nationwide Injunctive Relief Class and (b)(2) California Subclass], so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Because Southwest's accused policy applies uniformly to all members of the (b)(2) classes, the same declaratory and injunctive relief addressing the accused policy is appropriate across the whole putative class. *See Dukes*, 564 U.S. at 360-61 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.").

Southwest again argues Plaintiffs fail to satisfy Rule 23(b)(2) because the adjustment of flight attendants' points would need to be done manually for each putative class member. As discussed above, that manual adjustment may be required does not mean the requested relief cannot be performed on a class-wide basis. The relief is the same across the class: granting the points reductions to which flight attendants would otherwise have been entitled but for their exercise of FMLA leave. Southwest fails to identify any authority suggesting otherwise.

Southwest also argues "different types of injunctive relief would be required for flight attendants who take continuous versus intermittent FMLA leave" because Southwest no longer bars flight attendants who take intermittent FMLA leave from record improvement. (Dkt. No. 100 at 21-22.) But Southwest fails to explain why its recent policy change affects the relief sought by Plaintiffs, especially considering the policy barring points reductions remains intact for flight attendants who took continuous FMLA leave. An order declaring Southwest's policy violates the FMLA, enjoining Southwest from enforcing the policy or any practice with a similar intent or impact, and requiring all members of the (b)(2) classes be granted the points reductions to which they otherwise would have been entitled but for their exercise of FMLA leave would still apply across the whole putative class. Accordingly, the (b)(2) Nationwide Injunctive Relief Class and (b)(2) California Subclass satisfy Rule 23(b)(2).

\* \* \*

Because Plaintiffs satisfy Rule 23(a) and 23(b)(2) as to the (b)(2) Nationwide Injunctive Class and (b)(2) California Subclass, Plaintiff's motion to certify the (b)(2) classes is GRANTED.

## V.  Rule 23(b)(3)

### a.  Predominance

"The focus of the predominance inquiry is whether a proposed class is sufficiently cohesive to warrant adjudication by representation.  But the rule does not require a plaintiff seeking class certification to prove that each element of their claim is susceptible to classwide proof, so long as one or more common questions predominate." *Castillo*, 980 F.3d at 730 (9th Cir. 2020) (cleaned up) (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013)). "Considering whether questions of law or fact common to the class predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (cleaned up).  "[T]he Court identifies the substantive issues related to plaintiff's claims . . . ; then considers the proof necessary to establish each element of the claim or defense; and considers how these issues would be tried." *Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D. 417, 426 (N.D. Cal. 2013).  Class certification "analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (cleaned up).

Plaintiffs seek to assert claims for FMLA interference, wrongful termination, and unfair competition against Southwest on a class basis.  To prevail on their FMLA interference claim, Plaintiffs "need only prove by a preponderance of the evidence that their taking of FMLA-protected leave constituted a negative factor in the" application of Southwest's no-fault attendance policies. *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001) ("[The plaintiff] need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her."); *see also Olson*, 980 F.3d at 1338 ("FMLA interference can take many forms including, for example, using FMLA leave as a negative factor in hiring, promotions, disciplinary actions, and no-fault attendance policies.").

16

Common proof can establish Plaintiffs' exercise of FMLA leave barred Plaintiffs from Southwest's attendance record improvement mechanisms under Southwest's policy. Indeed, Southwest admits flight attendants who take FMLA leave are ineligible for points reduction. (Dkt. No. 97-1 at 46.) Similarly, as to Plaintiffs' derivative wrongful termination and unfair competition claims, classwide proof can determine whether Southwest's policy barring flight attendants who exercise FMLA from record improvement violates the FMLA. Because the common issue of whether Southwest's policy penalizes FMLA leave predominates, the putative (b)(3) Nationwide Damages Class satisfies the predominance requirement.

Southwest argues any common issues are overwhelmed by individualized damages questions. But "the presence of individualized damages cannot, by itself, defeat class certification." *Bowerman*, 60 F.4th at 469; *see also Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) ("[T]he amount of damages is invariably an individual question and does not defeat class action treatment. We have repeatedly confirmed the *Yokoyama* holding that the need for individualized findings as to the amount of damages does not defeat class certification."). Southwest's reliance on *Bowerman* is misplaced. In *Bowerman*, "complex, individualized inquiries" were "needed to establish that class members worked overtime or that claimed expenses were reimbursable" such that "any common question as to misclassification [wa]s outweighed by the individual questions." 60 F.4th at 469. Here, in contrast, common proof in the form of Southwest's own records can establish whether a flight attendant was terminated because she was denied points reduction based on taking FMLA leave—no individual testimony is required. So, the common question of whether Southwest's uniform policy of denying flight attendants point reductions in quarters in which they take FMLA leave interferes with their FMLA rights predominates this litigation.

### b. Superiority

To certify, a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts consider the following factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

17

>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id*. "[T]hese factors require[] the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (cleaned up).

Here, a class action will serve to streamline time, effort, and expense. Because "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). There is no current similar litigation concerning these putative class members. And the predominance of common questions, as explained above, make a class action a more manageable device than individual litigation.

Southwest argues superiority is lacking because "Plaintiffs' claims will each require time-consuming individualized mini-trials for each flight attendant to determine if they were entitled to receive [points reductions] based on their attendance records" and the injunctive relief of a points adjustment would require individualized assessment. (Dkt. No. 100 at 27.) Because Plaintiffs' FMLA interference claim only requires Plaintiffs prove Southwest's uniform attendance policy penalizes FMLA leave by barring flight attendants who exercise FMLA leave from points reduction, *see Bachelder*, 259 F.3d at 1125, the individualized inquiry into the quarters a specific flight attendant was denied record improvement due to her exercise of FMLA leave fails to defeat the superiority of the class action mechanism to adjudicate the claims of the (b)(3) Nationwide Damages Class. Further, Southwest itself has argued that its own records show whether a flight attendant would have been ineligible for points reduction even if the attendant had not taken FMLA leave—no individualized testimony is likely required. And as to the individualized assessment required for points adjustment, the remedies sought by the (b)(2) classes need not satisfy Rule 23(b)(3)'s superiority requirement. *See* Fed. R. Civ. P. 23(b)(2),(3). Further, that Southwest may have to manually adjust points that it should have reduced in the first place does

18

not mean a class action is not superior. Accordingly, Plaintiffs satisfy the superiority requirement for the (b)(3) Nationwide Damages Class.

\* \* \*

Because Plaintiffs satisfy Rule 23(a) and 23(b)(3) as to the (b)(3) Nationwide Damages Class, Plaintiff's motion for class certification as to the (b)(3) Nationwide Injunctive Relief Class is GRANTED.

**CONCLUSION**

For the reasons stated, Plaintiffs' motion for class certification is GRANTED as to the (b)(2) Nationwide Injunctive Relief Class, (b)(2) California Subclass, and (b)(3) Nationwide Damages Class. Plaintiffs' motion is DENIED as to the (b)(3) California Subclass, for which Plaintiffs fail to establish numerosity. Accordingly, Plaintiffs' claims for FMLA interference, wrongful termination, and unfair competition are certified as to the following classes:

> **The "(b)(2) Nationwide Injunctive Relief Class"**
> All Southwest flight attendants based in the United States since March 1, 2019 to present who exercised their rights to family and medical leave and consequently lost access to disciplinary points reduction.
>
> **The "(b)(2) California Subclass"**
> All Southwest flight attendants based in California since March 1, 2019 to present who exercised their rights to family and medical leave and consequently lost access to disciplinary points reduction.
>
> **The "(b)(3) Nationwide Damages Class"**
> All Southwest flight attendants based in the United States since March 1, 2019 to present who exercised their rights to family and medical leave and consequently lost access to a disciplinary points reduction and were subsequently terminated for an accumulation of disciplinary points.

Andrus Anderson LLP and Erlich Law Firm, P.C. are appointed as class counsel. A further case management conference is set for October 31, 2024 at 1:30 p.m. by Zoom video. An updated joint case management conference statement, which shall include a proposed case schedule through trial, is due October 24, 2024. In the meantime, the parties should meet and confer and propose the form of class notice.

//

This Order disposes of Docket No. 97.

**IT IS SO ORDERED.**

Dated: September 12, 2024

JACQUELINE SCOTT CORLEY
United States District Judge