UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RORESTE REFUERZO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTHWEST AIRLINES CO.,<br><br>Defendant. | Case No.  22-cv-00868-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION FOR DECERTIFICATION**<br><br>Re: Dkt. No. 174 |

Plaintiffs, on behalf of themselves and three certified classes, allege Defendant violated the Family and Medical Leave Act ("FMLA") and California's Family Rights Act ("CFRA") by deeming employees ineligible for a reduction in disciplinary points if they used protected leave. Before the Court is Defendant's motion to decertify all three classes.  (Dkt. Nos. 174.)[1]  Having carefully reviewed the parties' written submissions, and having had the benefit of oral argument on May 12, 2026, the Court denies decertification of the (b)(2) classes without prejudice, and denies decertification of the (b)(3) class, but grants Plaintiffs leave to file a motion to substitute a new or additional (b)(2) class representative, and grants Defendant leave to file a motion for partial summary judgment to exclude certain class members.

## BACKGROUND

### A.    The Second Amended Complaint and Certified Classes

Plaintiffs' Second Amended Complaint ("SAC") alleges five class-based causes of action: (1) "Interference in Violation of the [Family and Medical Leave Act ('FMLA')]," 29 U.S.C. § 2515(a)(1); (2) "Discrimination and Retaliation in Violation of the FMLA," 29 U.S.C §§

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

2615(a)(1) and (2); (3) "Discrimination and Retaliation in Violation of [ California's Family Rights Act ['CFRA']," Cal. Gov. Code § 12945.2(1); (4) Wrongful termination; and (5) Unfair Competition.  (Dkt. No. 84 ¶¶ 59-89.)  The first two causes of action are brought on behalf of nationwide classes, and the remaining three are brought on behalf of California sub-classes.  (*Id.*)  The Court previously denied Defendant's motion to dismiss the original complaint.  (Dkt. No. 25.)

The Court granted Plaintiffs' motion for class certification, in part, certifying three classes.  (Dkt. No. 106.)  The Court's order states:

> Plaintiffs' claims for FMLA interference, wrongful termination, and unfair competition are certified as to the following classes:
>
> **The "(b)(2) Nationwide Injunctive Relief Class"**
> All Southwest flight attendants based in the United States since March 1, 2019 to present who exercised their rights to family and medical leave and consequently lost access to disciplinary points reduction.
>
> **The "(b)(2) California Subclass"**
> All Southwest flight attendants based in California since March 1, 2019 to present who exercised their rights to family and medical leave and consequently lost access to disciplinary points reduction.
>
> **The "(b)(3) Nationwide Damages Class"**
> All Southwest flight attendants based in the United States since March 1, 2019 to present who exercised their rights to family and medical leave and consequently lost access to a disciplinary points reduction and were subsequently terminated for an accumulation of disciplinary points.

(Dkt. No. 106 at 19.)  The Court appointed Plaintiff Cashin as the class representative for each (b)(2) Nationwide Injunctive Relief Class and (b)(2) California Subclass and Plaintiff Refuerzo as the class representative of the (b)(3) Nationwide Damages Class.  (*Id.* at 4, 14, 19.)

**B. Defendant's Point-Based Disciplinary System for Attendance**

The Class Certification Order discusses Defendant's point-based disciplinary system for attendance.  The parties do not dispute how flight attendants accumulate points and the four point-reduction policies at issue here, so the Court reincorporates the prior Order's discussion of Southwest's policy.  (*Id.* at 1-3.)  In short, Plaintiffs assert Defendant uses a point system to track employees' attendance at work shifts, where each infraction adds points to the employee's record and employees are terminated once they accumulate 12 points.  Employees receive point reductions if they meet certain criteria regarding attendance during December or a given calendar

United States District Court
Northern District of California

quarter.  Employees are not eligible for any point reductions if they use FMLA leave, which Plaintiffs assert unlawfully interferes with employees' use of FMLA leave.

## DISCUSSION

Federal Rules of Civil Procedure 23(c)(1)(c) provides "[a]n order that grants or denies class certification may be altered or amended before final judgment."  As judgment has not been entered, Defendant seeks decertification of all three classes on the grounds (1) Plaintiffs have not established all class members' Article III standing, and (2) Plaintiffs have not satisfied the Rule 23(a) and Rules 23(b)(2) and (b)(3) requirements.

### A.  The (b)(3) Class

#### 1.  Article III Standing

For a class to be certified, only one named plaintiff must demonstrate Article III standing. *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1239 (9th Cir. 2024).  If at least one named plaintiff meets the requirements, "the standing inquiry is concluded and the court proceeds to" the Rule 23 analysis.  *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015).  Defendant asserts the (b)(3) class should be decertified because "many" class members do not have Article III standing.  (Dkt. No. 174 at 15-16.)  Specifically, Defendant argues many class members did not suffer any injury in fact, two class members did not suffer any discernable loss, one class member released her claims, and other class members were not deterred from taking FMLA leave.  But Plaintiff Refuerzo is the (b)(3) class representative, and Defendant does not challenge his standing. As a result, "the standing inquiry is concluded," *Melendres*, 784 F.3d at 1262, and the Court denies Defendant's motion as to this basis.

On summary judgment, in contrast to class certification, Plaintiffs must adduce evidence sufficient to support a finding class members have standing. *See Healy v. Milliman, Inc.*, 164 F.4th 701, 708 (9th Cir. 2026) (holding *Trans Union* "compels unnamed class members to demonstrate evidence of standing here— after class certification but prior to trial at summary judgment").  But Defendant has not filed a summary judgment motion, which would require Plaintiffs to adduce facts as to unnamed class members' standing.  Instead, Defendant filed a de-certification motion, evaluated under Rule 23, which, again, requires at least one named plaintiff to demonstrate

standing. *DZ Reserve*, 96 F.4th at 1239; *see also Healy*, 164 F.4th at 708 (noting *DZ Reserve* "addressed the standing inquiry at the time of class certification, not afterwards at summary judgment"). And Plaintiff Refuerzo's standing is not challenged, meaning "the standing inquiry is concluded and the Court proceeds to" the Rule 23 analysis. *Melendres*, 784 F.3d at 1262.

Defendant's reliance on *Behar v. Northrop Grumman Corp.*, No. 2:21-CV-03946-HDV-SK, 2026 WL 184300 (C.D. Cal. Jan. 20, 2026), as "plainly appl[ying] *Healy* in ruling on defendant's motion for decertification," (Dkt. No. 192 at 7) is misplaced. In a footnote addressing *Healy*, which was decided after briefing on the decertification motion was complete, the district court held its decision denying the decertification motion was fully consistent with *Healy* because *Healy* "held that unnamed class members must produce evidence of standing at summary judgment enough to establish 'a genuine question of material fact as to the standing elements'" and the court's summary judgment order more than demonstrated the plaintiffs had met that standard. *Id.* at *8 n.10. Plaintiffs will have to prove class member standing at trial, but because Defendant chose not to move for summary judgment, they have not yet been put to that burden. No case holds otherwise.

### 2. The (b)(3) Class Satisfies Rule 23(a)

#### i. Numerosity is met

Defendant argues the (b)(3) class is no longer sufficiently numerous. At the time of certification, the (b)(3) class was sufficiently numerous when it had "at least 29 flight attendants," (Dkt. No. 106 at 9), and Plaintiffs' final class list has 34 class members. (Dkt. No. 180.) Defendant nonetheless asserts the class size is "at most 32," and 14 members "should be removed" including, "at least eleven … do not have Article III standing." (Dkt. No. 174. at 17-18.) And Defendant was unable to depose three class members, so they, too, should be removed from the class. (*Id.* at 18.)

A motion to decertify, however, is not the proper motion to raise these arguments. Again, Defendant chose not to move for summary judgment when it could have argued the evidence was insufficient as to certain class members. Defendant has not identified any case when a court decertified a class on the basis it was no longer sufficiently numerous because some class

United States District Court
Northern District of California

members "should be removed" on some hypothetical, unfiled motion (not to mention a motion for which the filing deadline has passed). That the plaintiff in *Dyer v. Sandusky*, No. 3:16-cv-02817-JGC (Dkt. No. 37) (N.D. Ohio Apr. 29, 2020), filed an unopposed motion to decertify does not support Defendant's argument.

So, nothing has changed as to numerosity since the Certification Order.

### ii. Commonality and typicality are met

The (b)(3) class continues to satisfy commonality and typicality for the reasons identified in the Class Certification Order.

> Because Southwest's challenged attendance policy uniformly bars flight attendants who take FMLA leave from points reduction, the determination of whether Southwest's policy interferes with flight attendants' FMLA rights can be addressed on a classwide basis. This "single common question of law or fact that resolves a central issue" is sufficient to satisfy the commonality requirement[.]

(Dkt. No. 106 at 12 (quoting *Castillo v. Bank of Am.*, *NA*, 980 F.3d 723, 728 (9th Cir. 2020)).) Regarding typicality, the Order explained:

> Southwest argues Plaintiff Refuerzo's claims are not typical of the (b)(3) class because he was terminated immediately after the quarter he took FMLA leave, "whereas other class members were terminated months, if not years later." (Dkt. No. 100 at 19.) But Southwest fails to explain why that distinction makes a difference. The question is whether each class member was terminated for points accumulation after being denied point reduction because of taking FMLA leave, the same question posed by Plaintiff Refuerzo's claims. Southwest's argument that Plaintiff Refuerzo's lack of mitigation of damages makes him atypical is similarly unavailing. "[T]he amount of damages is invariably an individual question and does not defeat class action treatment." *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Accordingly, Plaintiffs satisfy the typicality requirement for […] (b)(3) Nationwide Damages Class.

(Dkt. No. 106 at 14.) It is still true Plaintiffs' claims hinge on Southwest's point accumulation policy. Plaintiffs continue to raise the same injury and the same common questions of law and fact. Given commonality and typicality are permissively construed, the (b)(3) class continues to satisfy those requirements.

Defendant's counterarguments are unpersuasive. Defendant urges "individualized inquiry is necessary" for each class member (Dkt. No. 174 at 19), but that is a predominance question under Rule 23(b), not under the permissive standards of commonality and typicality. Defendant

United States District Court
Northern District of California

also recycles its arguments Plaintiff Refuerzo's claims are atypical because of his failure to mitigate damages and the timing of his FMLA leave, which the Court already rejected. (Dkt. No. 106 at 14.)

### iii.    Plaintiff Refuerzo is an adequate representative

Defendant asserts Plaintiff Refuerzo is not an adequate representative because "he has failed to mitigate his damages," so his "damages are therefore quite different than" other class members who "fully mitigated their damages." (Dkt. No. 174 at 21-22.) The Class Certification Order did not explicitly address this concern as it relates to adequacy, so the Court addresses the argument now. (*See* Dkt. No. 106 at 14-15.)

Southwest's potential defense does not make Plaintiff Refuerzo an inadequate representative. Defendant raises this defense to at least five (b)(3) class members (*see* Dkt. No. 174 at 22), so the defense is not "unique" to Mr. Refuerzo. More importantly, Mr. Refuerzo's failure to mitigate, if proven, would not defeat class-wide liability or eliminate class-wide recovery; it would reduce his individual damages award. (Dkt. No. 174 at 22 (arguing Mr. Refuerzo's "*damages* are … quite different")) (emphasis added). Therefore, even if Plaintiff Refuerzo's damages are different from other class members, which only matters if liability is proven, that does not make him unable to "prosecute" issues such as liability and causation "vigorously on behalf of the class." *See Hanlon*, 150 F.3d at 1020.

So, Mr. Refuerzo is still an adequate representative. Accordingly, the (b)(3) class satisfies Rule 23(a).

### 3.    The (b)(3) Class Satisfies Rule 23(b)(3)

Defendant recycles its argument from class certification that common issues do not predominate and a class action is not superior because questions about damages and attendance records will create "time-consuming, individualized mini-trials for each flight attendant." (Dkt. No. 174 at 31.) Given Defendant's arguments under predominance and superiority are the same, the Court addresses both issues together.

The inquiry for predominance "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). The

United States District Court
Northern District of California

United States District Court
Northern District of California

Class Certification Order explained:

> Plaintiffs seek to assert claims for FMLA interference, wrongful termination, and unfair competition against Southwest on a class basis. To prevail on their FMLA interference claim, Plaintiffs "need only prove by a preponderance of the evidence that their taking of FMLA protected leave constituted a negative factor in the" application of Southwest's no-fault attendance policies. *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001) ("[The plaintiff] need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her."); *see also Olson* [*v. United States by & through Dept. of Energy*], 980 F.3d [1334,] 1338 [9th Cir. 2020)] ("FMLA interference can take many forms including, for example, using FMLA leave as a negative factor in hiring, promotions, disciplinary actions, and no-fault attendance policies."). Common proof can establish Plaintiffs' exercise of FMLA leave barred Plaintiffs from Southwest's attendance record improvement mechanisms under Southwest's policy. Indeed, Southwest admits flight attendants who take FMLA leave are ineligible for points reduction. (Dkt. No. 97-1 at 46.) Similarly, as to Plaintiffs' derivative wrongful termination and unfair competition claims, classwide proof can determine whether Southwest's policy barring flight attendants who exercise FMLA from record improvement violates the FMLA. Because the common issue of whether Southwest's policy penalizes FMLA leave predominates, the putative (b)(3) Nationwide Damages Class satisfies the predominance requirement.
>
> [...]
>
> [C]ommon proof in the form of Southwest's own records can establish whether a flight attendant was terminated because she was denied points reduction based on taking FMLA leave—no individual testimony is required. So, the common question of whether Southwest's uniform policy of denying flight attendants point reductions in quarters in which they take FMLA leave interferes with their FMLA rights predominates this litigation.

(Dkt. No. 106 at 16-17.)  The Court rejected Defendant's argument individual damages questions predominate common questions, noting

> "the presence of individualized damages cannot, by itself, defeat class certification." *Bowerman* [*v. Field Asset Servs., Inc.*], 60 F.4th [459,] 469 [(9th Cir. 2023)]; *see also Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) ("[T]he amount of damages is invariably an individual question and does not defeat class action treatment. We have repeatedly confirmed the Yokoyama holding that the need for individualized findings as to the amount of damages does not defeat class certification."). Southwest's reliance on *Bowerman* is misplaced. In *Bowerman*, "complex, individualized inquiries" were "needed to establish that class members worked overtime or that claimed expenses were reimbursable" such that "any common question as to misclassification [wa]s outweighed by the individual questions." 60 F.4th at 469. Here, in contrast, common proof in the

7

United States District Court
Northern District of California

> form of Southwest's own records can establish whether a flight attendant was terminated because she was denied points reduction based on taking FMLA leave—no individual testimony is required. So, the common question of whether Southwest's uniform policy of denying flight attendants point reductions in quarters in which they take FMLA leave interferes with their FMLA rights predominates this litigation.

(*Id.* at 17.)

Similarly, the Court ruled a class action is superior because

> a class action will serve to streamline time, effort, and expense. Because "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). There is no current similar litigation concerning these putative class members. And the predominance of common questions, as explained above, make a class action a more manageable device than individual litigation.

> Southwest argues superiority is lacking because "Plaintiffs' claims will each require time-consuming individualized mini-trials for each flight attendant to determine if they were entitled to receive [points reductions] based on their attendance records" and the injunctive relief of a points adjustment would require individualized assessment. (Dkt. No. 100 at 27.) Because Plaintiffs' FMLA interference claim only requires Plaintiffs prove Southwest's uniform attendance policy penalizes FMLA leave by barring flight attendants who exercise FMLA leave from points reduction, see *Bachelder*, 259 F.3d at 1125, the individualized inquiry into the quarters a specific flight attendant was denied record improvement due to her exercise of FMLA leave fails to defeat the superiority of the class action mechanism to adjudicate the claims of the (b)(3) Nationwide Damages Class. Further, Southwest itself has argued that its own records show whether a flight attendant would have been ineligible for points reduction even if the attendant had not taken FMLA leave—no individualized testimony is likely required.

(Dkt. No. 106 at 18.)

For those reasons, common issues continue to predominate and a class action remains superior. It is still true class-wide proof can establish Plaintiffs' taking of FMLA leave constituted FMLA interference. Per Plaintiffs' trial plan, Plaintiffs intend to prove liability and causation through class-wide documentary evidence such as attendance records and testimony from Southwest's representatives regarding Southwest's policy and how it operates. (Dkt. No. 169 at 2-4.) Damages, will be tried, in part, on class-wide evidence, including "testimony from their expert economist about the labor market for flight attendant positions." (*Id.* at 5; *see generally* Dkt. No. 172-2; Dkt. No. 186-5 at 2 (supply-and-demand analysis estimating the probability of obtaining a

8

flight attendant position within certain time frames).)

Additionally, the contours of Plaintiffs' FMLA interference claims have become clearer since the Class Certification Order, and Plaintiffs' theories remain susceptible to common proof. On Plaintiffs' motion for partial summary judgment, for example, they cited an FMLA regulation saying interference includes "discouraging an employee" from using FMLA leave. 29 C.F.R. § 825.220(b). To argue they were discouraged, Plaintiffs cited a Sixth Circuit case which held "a jury could reasonably find" FMLA interference on the theory an employer's denial of point reductions for taking FMLA leave "discourage[d] an employee from using [FMLA] leave" based on the "practical result" of the attendance policy. *See Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 475–77 (6th Cir. 2019) (cleaned up). Here, the "practical result" of a workplace policy and its propensity to discourage employees is a common (and common-sense) question susceptible to class-wide proof in Plaintiffs' trial plan, including attendance records and how the policy operates. (*See generally* Dkt. No. 169.) Additionally, the Ninth Circuit has suggested plaintiffs need not prove FMLA interference through an individual assessment of a plaintiff's subjective experience; for example, in a case upholding 29 C.F.R. § 825.220(c) as a reasonable interpretation of the FMLA, the Ninth Circuit held:

> As a general matter, then, the established understanding at the time the FMLA was enacted was that employer actions that deter employees' participation in protected activities constitute "interference" or "restraint" with the employees' exercise of their rights. Under the FMLA as under the NLRA, attaching negative consequences to the exercise of protected rights surely "tends to chill" an employee's willingness to exercise those rights: Employees are, understandably, less likely to exercise their FMLA leave rights if they can expect to be fired or otherwise disciplined for doing so. The Labor Department's conclusion that employer use of "the taking of FMLA leave as a negative factor in employment actions," 29 C.F.R. § 825.220(c), violates the Act is therefore a reasonable one.

*Bachelder*, 259 F.3d at 1124. In another case, the Ninth Circuit stated "the inquiry for interference is whether the employer's conduct makes an employee 'less likely to exercise their FMLA leave rights [because] they can expect to be fired or otherwise disciplined for doing so.'" *Olson*, 980 F.3d at 1338 (quoting *Bachelder*, 259 F.3d at 1124). Given Plaintiffs may prove FMLA interference through class-wide proof, common questions predominate individual questions and a

United States District Court
Northern District of California

9

class action remains superior.

Defendant's counterarguments do not persuade.  First, Defendant argues "individual questions as to damages overwhelm common questions," relying on *Bowerman*.  (Dkt. No. 174 at 27-29) (cleaned up).  The Court already rejected that argument, explaining why Defendant's "reliance on *Bowerman* is misplaced."  (Dkt. No. 106 at 17.)  Admittedly, Plaintiffs' trial plan suggests there will be at least some individual testimony.  (*See* Dkt. No. 169 at 2-4.)  But, again, "the presence of individualized damages cannot, by itself, defeat class certification," *Bowerman*, 60 F.4th at 469, and "the need for individualized findings as to the amount of damages does not defeat class certification."  *Vaquero*, 824 F.3d at 1155.  Further, it appears Defendant intends to raise the failure-to-mitigate defense as to only "five … class members" discussed in Mr. Volk's report.  (*See* Dkt. No. 174 at 22.)  Five witness's testimony on an affirmative defense to damages does not predominate the extensive common proof in this case.

Second, Defendant insists "an individualized assessment is necessary to determine whether there was any FMLA interference" and the "only" way to prove Plaintiffs claims is through "a manual review of each flight attendant's unique attendance record and cannot be established with common proof."  (Dkt. No. 174 at 29-30) (cleaned up). While each attendance record differs to some degree, the attendance records reflect similar timeframes and policies.  Even the "manual review" of those records is susceptible to common proof; one presumably cannot make sense of those records without class-wide testimony about what those records mean and how the attendance policies operate.  (*See, e.g.*, Dkt. No. 169 at 2-3 (noting Plaintiffs intend to call Southwest representatives and provide documentary evidence showing how "Record Improvement eligibility is coded and calculated" in "attendance records.")) (cleaned up).  So, the theories are susceptible to common proof such that common issues predominate and a class action is superior.

## B.  The (b)(2) Classes

Defendant argues the (b)(2) classes should be decertified because (1) commonality is not met because each class member's attendance record requires individualized inquiries, (2) Ms. Cashin has now demonstrated she lacks standing to pursue injunctive relief, typicality, or adequacy of representation, and (3) the (b)(2) classes do not satisfy Rule 23(b)(2).  Defendant's

United States District Court
Northern District of California

10

first argument is the same as its commonality challenge with respect to the (b)(3) classes. Accordingly, the (b)(2) classes satisfy commonality for the reasons explained above; Southwest's disciplinary policy alone raises common questions of law or fact which resolve a central issue, which is sufficient to satisfy the commonality requirement. *Castillo*, 980 F.3d at 728.

Defendant's arguments regarding Ms. Cashin's standing, typicality, and adequacy of representation essentially boil down to whether Ms. Cashin was injured as a result of taking FMLA leave. Defendant argues Ms. Cashin's claims are not typical and she is not an adequate representative for several reasons:

> First, she does not contend that she was ever assessed points for taking FMLA leave. Second, she hasn't presented any evidence that Southwest's record improvement policy deterred her from taking FMLA leave or made her less likely to take FMLA leave because she was expecting to be disciplined for doing so. Third, she had non-FMLA absence occurrences which already prevented her from receiving RI Bonuses in quarters or months when she took FMLA leave. Rea Decl., ¶ 34, Ex. N. Finally, any other FMLA leave Ms. Cashin took was at least 14 contiguous days or more in a quarter. As a result, Ms. Cashin returned from FMLA leave in the same position as when she left – unable to receive RI Bonuses – and thus suffered no injury. *Id.*

(Dkt. No. 174 at 23) (internal footnote omitted). Relatedly, given Ms. Cashin's non-FMLA absences purportedly made her ineligible for point reductions, Defendant contends Ms. Cashin is unable to prove "she was entitled to" point reductions because when she took FMLA leave, she "ha[d] not yet earned or accrued" point reductions as a benefit. (*Id.* at 24) (emphasis removed). Defendant's argument relies on FMLA regulations about accrual of benefits. (*Id.* (citing 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."); *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003) ("The FMLA does not entitle the employee to any rights, benefits, or positions they would not have been entitled to had they not taken leave. It simply guarantees that an employee's taking leave will not result in a loss of job security or in other adverse employment actions."); *Bailey v. Pregis Innovative Packaging, Inc.*, 600 F.3d 748, 751 (7th Cir. 2010) ("[W]hile the removal of absenteeism points is, we conclude, an employment benefit, … a benefit that accrues after leave

United States District Court
Northern District of California

commenced is not protected.").)

Plaintiffs' opposition does not address these concerns. Instead, Plaintiffs reiterate the Court's prior ruling Ms. Cashin has standing to pursue injunctive relief, which Defendant's motion did not contest.[2] Plaintiffs nonetheless also state they "will move shortly after filing this opposition to **_substitute_** LeSean Lewis as the representative of the injunctive class" and "we agree" with the Court's prior statement "[t]here might be an issue" with "Ms. Cashin as the class rep." (Dkt. No. 190 at 19 (citing Dkt. No. 174-16 ¶ 14)) (emphasis added).

At oral argument, however, both parties raised new or different arguments about Ms. Cashin. Defendant urged Ms. Cashin does not have Article III standing to pursue injunctive relief, an argument not raised in its motion. Meanwhile, Plaintiffs asserted Ms. Cashin is an adequate representative, which the opposition brief did not argue, and clarified they intend to add Mr. Lewis as another (b)(2) class representative, rather than "substitute" him for Ms. Cashin. (*See* Dkt. No. 190 at 19.) Plaintiffs also argued Ms. Cashin has standing to pursue injunctive relief, but for a reason not mentioned in the Class Certification Order or their opposition brief: even though Ms. Cashin's non-FMLA absences made her ineligible for point reductions, she took FMLA leave *before* her non-FMLA absences in those quarters, and upon taking FMLA leave, she became "immediately ineligible" for point reductions.

Given Plaintiffs have now walked back their written representation they intend to "substitute" Mr. Lewis for Ms. Cashin, and that Defendant did not raise Ms. Cashin's standing to pursue injunctive relief until its reply brief, the Court requires further briefing on an appropriate (b)(2) class representative, whether it be Ms. Cashin or a new named plaintiff. Accordingly, the Court DENIES Defendant's motion to decertify the (b)(2) classes without prejudice.[3]

---

[2] Defendant's motion confines its standing discussion to the (b)(3) class. (Dkt. No. 174 at 15-17.) The motion's discussion of the (b)(2) classes does not reference Article III standing, nor does Defendant identify Ms. Cashin as one of the "many (b)(3) class members" who "suffered no injury in fact." (*See* Dkt. No. 174 at 15-17) (cleaned up). Instead, the first time Defendant asserted Ms. Cashin does not have standing is in its reply brief. (Dkt. No. 192 at 12-13.) Although Defendant emphasizes Ms. Cashin's membership in the (b)(3) classes is a "moving target" (Dkt. No. 192 at 5-6), Ms. Cashin is the (b)(2) class representative, meaning Defendant had the opportunity to challenge Ms. Cashin's standing to pursue injunctive relief and chose not to do so.

[3] The (b)(2) classes, with or without Ms. Cashin, continue to satisfy numerosity and commonality.

**C.  Leave to Amend and Leave to File a Motion for Partial Summary Judgment**

Defendant's motion to decertify the (b)(3) class, while raising procedurally improper arguments, suggests Plaintiffs' final class list includes class members for whom the record does not support causation, or who released their claims, or cannot proceed because they refused to be deposed. Indeed, Plaintiffs unequivocally represented in writing in December 2025 they would dismiss certain undeposed class members (Dkt. No. 129-5 at 2); yet, at oral argument they appeared to revoke that representation as well.  In any event, there is no good reason to include class members in the trial if they cannot prevail as a matter of undisputed fact.  Further, as discussed above, Plaintiffs have represented they wish to substitute a new (b)(2) plaintiff, in whole or in part, or defend Ms. Cashin's standing to be the representative in all respects, a defense they did not mount in their decertification opposition.

So, as discussed at oral argument, the Court grants Plaintiffs leave to file a motion to substitute a new (b)(2) class representative in whole or in part, and grants Defendant leave to file a partial motion for summary judgment as to specific class members.  Plaintiffs must also decide how Ms. Patterson's estate's claims will be handled, especially since Defendant never had the opportunity to depose Ms. Patterson, and whether they are going to honor the written promise they made to dismiss certain undeposed class members.

Finally, both the SAC and the original complaint had one cause of action under CFRA; these claims were labeled "discrimination and retaliation in violation of CFRA" and at no point said the words "interfere" or "interference" in the paragraphs within the cause of action. (See Dkt. No. 1 ¶¶ 57-61; Dkt. No. 84 ¶¶ 69-73.)  Nonetheless, the Court's order on the motion to dismiss the original complaint directly acknowledged a "CFRA interference claim."  (Dkt. No. 25 at 11.)  However, the class certification order did not directly acknowledge a "CFRA interference" claim; the order stated "claims for FMLA interference, wrongful termination, and unfair competition are certified[.]"  (Dkt. No. 106 at 19.)  Separately, in a footnote, the Court noted: "As was confirmed

_(See_ Dkt. No. 106 at 7-12 (noting the (b)(2) classes have over 9,000 class members and common questions regarding Southwest's policy and class members' accumulation of points).)  And the Court previously ruled the class satisfied Rule 23(b)(2).

13

at the September 5, 2024 hearing, Plaintiffs withdraw their FMLA and California Family Rights Act discrimination and retaliation claims.  (Dkt. No. 102 at 12 n.9.)"  (Dkt. No. 106 at 3 n.2.)  In that footnote, the Court cited Plaintiffs' reply brief on class certification, which stated "Plaintiffs concede that allegations supporting their FMLA claim of discrimination and retaliation, ECF 84, (SAC) pp. 14-15, are adequately encompassed by their FMLA interference claim under Ninth Circuit law and withdraw that claim accordingly."  (Dkt. No. 102 at 12 n.9.)  The Court needs to understand the parties' positions on the remaining claims in this action.

CONCLUSION

Defendant's motion to decertify the (b)(2) classes is DENIED without prejudice and its motion to decertify the (b)(3) class is DENIED.  The parties are directed to meet and confer on all the issues raised in this Order, including a proposed schedule on briefing the limited summary judgment motion and motion to add an additional or new (b)(2) representative, as well as any additional class member depositions and how Ms. Patterson's claims will be handled.  The Court will hold a further case management conference on **June 10, 2026** at 2:00 p.m. via Zoom video. An updated statement addressing the meet and confer issues, including providing hard and fast dates, shall be filed by noon on **June 8, 2026**.

This Order disposes of Docket No. 174.

**IT IS SO ORDERED.**

Dated: May 18, 2026

JACQUELINE SCOTT CORLEY
United States District Judge