Annie Lau (SBN 302438)
E-Mail: alau@fisherphillips.com
Megan F. Clark (SBN 301476)
E-Mail: mclark@fisherphillips.com
Abby H. Putzulu (SBN 335055)
E-Mail: aputzulu@fisherphillips.com
FISHER & PHILLIPS LLP
One Montgomery Street, Suite 3400
San Francisco, California 94104
Telephone: (415) 490-9000
Facsimile: (415) 490-9001

Andrew P. LeGrand (Tex. Bar No. 24070132)
E-Mail: alegrand@gibsondunn.com
Betty Yang (Tex. Bar No. 24088690)
E-Mail: byang@gibsondunn.com
Taylor DeScenzo (Tex. Bar No. 24142835)
E-Mail: tdescenzo@gibsondunn.com
Jed Greenberg (Tex. Bar No. 24147742)
E-Mail: jtgreenberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2923
Telephone: (214) 698-3405
Facsimile: (214) 571-2960

Attorneys for Defendant
SOUTHWEST AIRLINES CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RORESTE REFUERZO and SELINA CASHIN, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

SOUTHWEST AIRLINES CO.,

Defendant.

Case No: 3:22-cv-00868-JSC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SOUTHWEST AIRLINES CO.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Date: August 26, 2026
Time: 10:00 a.m.
Place: Courtroom 8 – 19th Floor
Before: Honorable Jacqueline Scott Corley

Action Filed: February 10, 2022
FAC Filed: September 9, 2022
SAC Filed: August 24, 2023
Trial: October 13, 2026

**TABLE OF CONTENTS**

I. INTRODUCTION ....................5
II. RELEVANT FACTS ....................6
A. Southwest's Record Improvement Policy ....................6
B. Plaintiffs' Theory and the Eleven Class Members at Issue ....................8
III. ARGUMENT ....................10
A. Southwest's Record Improvement Policy Does Not Violate the FMLA ....................12
B. Eleven Class Members Lack Standing ....................16
C. Natalie Patterson Should Be Dismissed ....................17
IV. CONCLUSION ....................18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 10

*Avila v. Continental Airlines, Inc*
165 Cal. App. 4th 1237, 1249–59 (2008) ........ 15

*Bachelder v. America West Airlines, Inc.*
259 F.3d 1112, 1121, 1131 (9th Cir. 2001) ........ 15

*Bailey v. Pregis*,
600 F.3d 748 (7th Cir. 2010) ........ 5, 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 10

*Dyer v. Ventra Sandusky, LLC*
934 F.3d 472 (6th Cir. 2019) ........ 14

*Far Out Prods., Inc. v. Oskar*,
247 F.3d 986 (9th Cir. 2001) ........ 11

*Healy v. Milliman, Inc.*,
164 F.4th 701 (9th Cir. 2026) ........ 11, 16

*In re Kaypro*,
218 F.3d 1070 (9th Cir. 2000) ........ 7

*Lares v. L.A. Cnty. Metro. Transp. Auth.*,
56 Cal.App.5th 318 (2020) ........ 14, 15

*Olson v. United States*
980 F.3d 1334, 1338 (9th Cir. 2020) ........ 15

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*,
632 F. Supp. 3d 1108 (S.D. Cal. 2022) ........ 7

*Sanders v. City of Newport*,
657 F.3d 772 (9th Cir. 2011) ........ 12

*Sommer v. Vanguard Group*
461 F.3d 397 (3d Cir. 2006) ........ 13

*Stuart v. UNUM Life Ins. Co. of Am.*,
217 F.3d 1145 (9th Cir. 2000) ........ 7

*Takhar v. Kessler*,
76 F.3d 995 (9th Cir. 1996) ....................17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................16

**Statutes**

Family and Medical Leave Act (FMLA)
29 U.S.C. § 2614....................11, 12, 15

29 C.F.R. §§ 825.215(d)(2), 825.216(a) ....................5, 12

**Other Authorities**

Fed. R. Civ. P. 56....................10

U.S. Dept. of Labor, Wage & Hour Div., DOL Op. Letter FMLA2018-1-A, 2018 WL 4678694, at *2 (Aug. 28, 2018) ....................5, 13

U.S. Dept. of Labor, Wage & Hour Div., DOL Op. Letter FMLA-100, 1999 WL 1002428, at *2 (Jan. 12, 1999)....................14

## I. INTRODUCTION

The FMLA protects employees from losing benefits because they take leave. It does not entitle them to attendance rewards they did not earn. Plaintiffs collapse that distinction. They argue that Southwest—under the terms of the agreement the flight attendants' union itself negotiated—penalizes flight attendants for taking FMLA leave because it does not give them an attendance reward for a quarter or month they did not complete. That is not protection from a penalty; it is a demand for credit without meeting the conditions. The FMLA requires nothing of the sort.

Flight attendants receive points for chargeable attendance violations—like an uncovered absence, a no-show, or a failure to report or be reachable while on reserve. Under the Collective Bargaining Agreement, a flight attendant who reaches 12 points is subject to termination. The CBA also gives flight attendants an opportunity to reduce existing points through "Record Improvement"—a reward earned only after an active employee completes a full quarter or month while satisfying specified attendance requirements. FMLA leave never adds points to an employee's record. Instead, Southwest freezes a flight attendant's point balance when they take protected leave and unfreezes that balance when they return. The flight attendant does not earn any new attendance-based points or reductions for that period. Their attendance record stays the same. The record they leave with is the record they come back to. None of that is disputed.

Plaintiffs call this a penalty for taking FMLA leave. It is not. The FMLA protects only those benefits that an employee has already earned; it does not require new benefits to accrue during leave or require an employer to treat leave as time worked. Southwest's policy follows that rule exactly. It assesses no points for taking leave, preserves every point reduction earned before leave, and treats comparable non-FMLA leaves the same way. It does not penalize anyone for taking FMLA leave. As numerous federal courts and the Department of Labor have explained, record improvement is a "reward for working" that an employee has no right to accrue when on leave. *Bailey v. Pregis*, 600 F.3d 748, 750–52 (7th Cir. 2010); 29 C.F.R. §§ 825.215(d)(2), 825.216(a) (explaining employees are not entitled to accrue benefits while on leave); see also DOL Op. Letter FMLA2018-1-A, 2018 WL 4678694, at *2 (Aug. 28, 2018) ("Removal of absenteeism points is a reward for working and therefore an employment benefit under the FMLA"). A pause in earning a future attendance reward is not

punishment for taking leave. Plaintiffs' FMLA claim therefore fails as a matter of law, as do the claims that depend on it.

Plaintiffs' theory of FMLA interference finds no support in the law. But the claims of eleven class members fail for a separate and independent reason: They cannot prove that Southwest's attendance policy caused their terminations. The undisputed record shows those flight attendants would have crossed the CBA's 12-point termination threshold even if they were allowed to accrue Record Improvement benefits while on leave.

As this Court previously recognized, "there is no good reason to include class members in the trial if they cannot prevail as a matter of undisputed fact." Dkt. No. 197 at 13. Although Plaintiffs claim the eleven employees at issue surpassed the 12-point termination threshold because they missed out on opportunities for Record Improvement, their attendance records show otherwise. Even if they had received the point reductions Plaintiffs claim they were entitled to, all eleven class members still would have reached termination level at the same time (or earlier). The reasons vary, but the results are the same. Some flight attendants had chargeable attendance violations in a quarter or a month that independently made them ineligible for Record Improvement. Others had so many points for attendance violations that Record Improvement would not have changed anything. All eleven flight attendants would have reached 12 points and been terminated regardless of any FMLA leave. The challenged policy was therefore not the cause of their termination or any damages they claim to have suffered. Their claims must be dismissed.

Finally, Natalie Patterson should not remain in the damages class for an independent reason: Southwest never obtained the deposition needed to test her individualized claims. Patterson was never produced before her death. As this Court has repeatedly made clear, Plaintiffs cannot demand individualized termination damages while withholding the discovery Southwest needs to test them.

## II. RELEVANT FACTS

### A. <u>Southwest's Record Improvement Policy</u>

Under a Collective Bargaining Agreement with the flight attendants' union, Southwest uses a points system to manage attendance. Certain violations—such as an uncovered absence, a no-show for a scheduled flight, or a failure to report as required—add points to an employee's record.

Declaration of Catherine Rea in Support of Summary Judgment ("Rea Summary Judgment Decl.") ¶¶ 4–6, 20; Ex. A.[1] A flight attendant who reaches 12 points is subject to termination. *Id.* ¶ 6.

Taking FMLA leave does not add points to a flight attendant's record. The dispute instead concerns "Record Improvement," the CBA's name for the ways in which a flight attendant may reduce points already on their record by satisfying specified attendance requirements over a full quarter or month. *Id.* ¶¶ 4, 9. For example, an active flight attendant who completes a quarter without a chargeable attendance occurrence receives a two-point reduction. *Id.* ¶¶ 9,11. Other programs offer reductions for perfect attendance during a quarter or during December or allow a qualifying employee to reduce the employee's balance to zero after the fourth quarter. *Id.* ¶¶ 9, 13-15. A reduction is earned only after the employee satisfies the program's requirements for the entire quarter or month. *Id.* ¶¶ 9, 17. The CBA's plain text says that, unless otherwise specified, the attendance policy is "based upon calendar Quarters." *Id.* ¶ 4; Ex. A., Art. 32 at 32-203.

Points can also "roll off" an employee's record after 16 active months. *Id.* ¶ 16. An employee gets a "fresh start" on points whenever their balance reaches zero. *Id.* For example, if an employee with two points earns a two-point Record Improvement reduction, they get a "clean slate," their previously incurred points are erased, and the 16-month rule applies only to points accumulated after the fresh start. *Id.* An earlier Record Improvement reduction may therefore eliminate a later roll-off. Determining whether a claimed reduction would have changed a termination requires recalculating the employee's full attendance record, not simply subtracting points from the balance at termination.

During the period at issue, Southwest treated a flight attendant on FMLA leave as inactive, just as it treated employees on personal leave and non-FMLA medical leave. *Id.* ¶¶ 5, 16, 34. While inactive, the employee received no new attendance points, earned no Record Improvement reduction, and accumulated no new time toward the 16-active-month roll-off period. *Id.* ¶ 5. When the employee

[1] Ms. Rea is Southwest's Manager Inflight Business Services & Support. Her twenty-five years working with, supervising, and applying Southwest's attendance policies establish personal knowledge of the practices described in her declaration. Rea Summary Judgment Decl. ¶ 3; *see In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000); *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1128–29 (S.D. Cal. 2022); *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1154–55 (9th Cir. 2000).

returned, the employee resumed with the same point balance and the same amount of active time remaining before existing points would fall off. Rea Summary Judgment Decl. ¶ 9.

From March 1, 2019 through April 30, 2024, this rule also applied when a flight attendant used intermittent FMLA leave. *Id.* ¶ 34. Effective May 1, 2024, Southwest and the union changed the rule so that intermittent FMLA leave no longer prevents an employee from qualifying for two forms of Record Improvement. *Id.* At all times, Southwest assessed no attendance points for taking FMLA leave. *Id.* ¶ 5.

**B. <u>Plaintiffs' Theory and the Eleven Class Members at Issue</u>**

Plaintiffs contend that taking FMLA leave prevented some flight attendants from earning Record Improvement reductions. According to Plaintiffs, the resulting higher point balances later caused their terminations. Plaintiffs do not dispute how the programs operate. Their claim is that the FMLA required Southwest to award the reductions notwithstanding the leave. The certified damages class accordingly includes flight attendants who allegedly lost access to point reductions because of protected leave and were later terminated for accumulating attendance points. Dkt. No. 106.

Plaintiffs' final class list identified 34 individuals. Dkt. No. 180. Cherish Sakovich was subsequently dismissed and Plaintiffs agreed that Selina Cashin is not a member of the damages class—reducing the list to 32. Dkt. Nos. 190, 210; Declaration of Annie Lau ("Lau Decl.") ¶ 2; Ex. A. This motion concerns eleven of the remaining 32 individuals. Their records fall into four recurring patterns.

First, some employees were independently ineligible for the reductions they claim to have lost. To be eligible for a given Record Improvement bonus, an employee must remain active throughout the quarter and satisfy that bonus's attendance requirements for the full quarter or month. Rea Summary Judgment Decl. ¶ 9. FMLA leave itself adds no points to an employee's record. *Id.* ¶ 5. But Valerie Barajas, for example, had non-FMLA absences and leave statuses in both quarters for which Plaintiffs claim she lost a reduction. *Id.* ¶24; Ex. D. The same pattern appears in the records of Cierra Brooks, Lexus Mitchell, and Colleen Bobbi Church, and in some of the quarters at issue for Natalie Patterson. *Id.* ¶ 24, 27-29, 31; Exs. D, G–I, K.

///

Second, for some class members, the disputed reduction would not have made any difference because they received a fresh start by reaching a zero balance at some point after taking FMLA leave. Jonathan Harden, for example, would have reached a zero-point balance by the end of 2019 even after receiving the reduction Plaintiffs claim he lost. Rea Summary Judgment Decl. ¶ 23; Ex. C. The points that later led to his termination arose after that reset. Alexander Macall Smith's record follows the same pattern. *Id.* ¶ 26; Ex. F.

Third, for some employees, crediting them with the disputed Record Improvement reduction would have erased points that later rolled off their attendance record under the 16-month rule. Pamela Unger, for example, would have received an earlier clean slate, but she then would not have received later roll-offs for points that had already been erased. *Id.* ¶ 25; Ex. E. Recalculating the full record therefore produces the same point balance at termination. *Id.* ¶ 25. The records of Bryan Henderson, Na'Keya Snoddy, and Natalie Patterson follow the same pattern. *Id.* ¶ 27, 30, 32; Exs. G, J, L.

Fourth, Nicole Littles would have reached the 12-point termination threshold even with the reduction at issue. She allegedly lost a two-point reduction in the first quarter of 2019; even after crediting it, her later non-FMLA attendance events still would have carried her past 12 points in June 2019. *Id.* ¶ 22; Ex. B.

The chart below summarizes the eleven records:

| **Class Member** | **Reduction Plaintiffs Claim Was Lost** | **What the Attendance Record Shows** |
|---|---|---|
| **Valerie Barajas** | Two-point reductions in Q4 2022 and Q1 2023 | Non-FMLA absences and leave statuses independently made Barajas ineligible in both quarters. Later violations brought her to 12 points. Rea Summary Judgment Decl. ¶ 24; Ex. D. |
| **Lexus Mitchell** | Reductions in Q4 2023, Q1 2024, and Q2 2024 | Mitchell's only FMLA leave was in November 2023—she took none in Q1 or Q2 2024, so the policy could not have affected those quarters. Non-FMLA absences and leave statuses independently made her ineligible in every quarter at issue, and her attendance violations ultimately brought her to 13 points. *Id.* ¶ 29; Ex. I. |
| **Colleen Bobbi Church** | Reductions from Q2 2023 through Q2 2024 | Non-FMLA absences and leave statuses independently made Church ineligible in every quarter at issue; her attendance violations ultimately brought her to 14 points. *Id.* ¶ 31; Ex. K. |

| Class Member | Reduction Plaintiffs Claim Was Lost | What the Attendance Record Shows |
|---|---|---|
| **Cierra Brooks** | Reductions in Q2, Q3, and Q4 2024 | Non-FMLA absences and leave statuses independently made Brooks ineligible in every quarter at issue; her attendance violations ultimately brought her to 12.5 points. Rea Summary Judgment Decl. ¶ 28; Ex. H. |
| **Natalie Patterson** | Reductions from Q1 2020 through Q4 2023 | In some quarters, non-FMLA absences and leave statuses independently made Patterson ineligible. In others, the claimed reductions would have erased points and eliminated later roll-offs and Record Improvement reductions. The full recalculation produces the same termination date. *Id.* ¶ 27; Ex. G. |
| **Jonathan Harden** | Two points in Q3 2019 | Any difference disappeared when Harden's balance reached zero by the end of 2019. The points that later led to termination arose afterward. *Id.* ¶ 23; Ex. C. |
| **Alexander Macall Smith** | Two-point reductions in Q1 and Q2 2019 | Any difference disappeared when Smith's balance reached zero by Q4 2019, and non-FMLA occurrences independently barred the claimed bonuses in both quarters. The points that later led to termination arose afterward. *Id.* ¶ 26; Ex. F. |
| **Pamela Unger** | Up to six points in Q3 and Q4 2019 and Q4 2020 | The reductions would have erased points that later rolled off under the 16-month rule. Recalculating the full record produces the same point balance at termination. *Id.* ¶ 25; Ex. E. |
| **Bryan Henderson** | Up to four points in Q4 2022 and Q4 2023 | The reductions would have erased points and eliminated later roll-offs and Record Improvement reductions. The recalculated record reaches 12 points before the actual termination date. *Id.* ¶ 32; Ex. L. |
| **Na'Keya Snoddy** | Up to five points in Q2 and Q4 2019 | The reductions would have erased points and eliminated later roll-offs and Record Improvement reductions. Recalculating the full record produces the same point balance at termination. *Id.* ¶ 30; Ex. J. |
| **Nicole Littles** | Two points in Q1 2019 | Even with the reduction, later non-FMLA attendance events would have brought Littles past the 12-point threshold in June 2019. *Id.* ¶ 22; Ex. B. |

## III. ARGUMENT

No issue presented here needs a trial. Rule 56 requires judgment when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Once Southwest identifies the absence of evidence on an essential element, Plaintiffs may not rely on allegations or speculation; they must identify specific evidence from which a reasonable jury could find in their favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). Plaintiffs cannot make that showing for two independent reasons.

First, Southwest's Record Improvement policy does not violate the FMLA. The statute preserves benefits earned before leave, but it does not require additional benefits to accrue during leave or give an employee greater rights than if the employee had continued working. 29 U.S.C. § 2614(a)(2)–(3). Record Improvement is earned only after an active employee satisfies specified attendance requirements for a full quarter or month. FMLA leave adds no points, erases no reductions already earned, and leaves the employee's existing balance unchanged. The employee returns in the same position as before leave, just like an employee returning from comparable non-FMLA leave. That is not a penalty. The FMLA claim therefore fails as a matter of law, along with the derivative CFRA, wrongful-termination, and unfair-competition claims.

Second, eleven class members cannot recover for a separate and independent reason. At summary judgment, each member of a damages class must show a concrete injury caused by the challenged conduct and redressable by the Court. *Healy v. Milliman, Inc.*, 164 F.4th 701, 708 (9th Cir. 2026). Plaintiffs therefore must produce evidence that the disputed Record Improvement reductions caused each termination; membership in a certified class is not enough. The undisputed attendance records foreclose that showing for Valerie Barajas, Lexus Mitchell, Colleen Bobbi Church, Cierra Brooks, Natalie Patterson, Jonathan Harden, Alexander Macall Smith, Pamela Unger, Bryan Henderson, Na'Keya Snoddy, and Nicole Littles. Some were independently ineligible for the claimed reductions because their own non-FMLA absences and leave statuses disqualified them. For others, any difference disappeared when their balances reached zero. For still others, an earlier reduction would have eliminated later roll-offs for the same points, and in one case, a class member accumulated enough later non-FMLA points to reach 12 regardless. In every instance, crediting the reductions Plaintiffs claim were lost would not have prevented or even delayed termination. For at least one, it would have accelerated it.

Separately, Natalie Patterson should not remain in the damages class because Southwest never obtained the deposition needed to test her individualized claims. The Court made clear that class members seeking termination damages had to be available for deposition and noted Plaintiffs' prior

representation that undeposed class members would be dismissed. Patterson was never produced before her death. Plaintiffs should not be permitted to pursue individualized termination damages while denying Southwest the discovery necessary to examine causation, mitigation, damages, and other defenses.

The Court should therefore grant summary judgment for Southwest on all claims. At minimum, it should grant partial summary judgment for Southwest on the eleven class members' termination-based claims and damages. Additionally, it should dismiss Patterson from the damages class because Southwest never obtained her deposition.

### A. <u>Southwest's Record Improvement Policy Does Not Violate the FMLA</u>

The Court should grant summary judgment on Plaintiffs' claims in their entirety because Southwest's Record Improvement policy does not violate the FMLA. The Court can resolve that threshold issue without reaching the individualized records of the eleven class members discussed below. Southwest preserves every benefit earned before leave and pauses only the accrual of benefits not yet earned—the line drawn by the statute, its regulations, and Department of Labor guidance addressing attendance-point systems.

To prevail on their FMLA claim, Plaintiffs must show that Southwest denied them a benefit the statute guarantees. *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). They cannot. The FMLA preserves benefits an employee earned *before* taking leave, but it does not require additional benefits to accrue while the employee is away or place the employee in a better position than if the employee had continued working. Thus, leave may not cause "the loss of any employment benefit accrued prior to the date on which the leave commenced." 29 U.S.C. § 2614(a)(2). But the statute does not entitle an employee to "the accrual of any seniority or employment benefits during any period of leave" or to any right or benefit beyond what the employee "would have been entitled [to] had the employee not taken the leave." *Id.* § 2614(a)(3).

The regulations draw the same line. Benefits accrued when leave begins "must be available" when the employee returns, but an employee is "not entitled to[] accrue any additional benefits or seniority during unpaid FMLA leave" and has "no greater right" to benefits than if the employee had remained continuously employed. 29 C.F.R. §§ 825.215(d)(2), 825.216(a). When a benefit depends

on satisfying a specified goal—such as "hours worked" or "perfect attendance"—the employer may deny it if FMLA leave prevented the employee from meeting the goal, provided equivalent non-FMLA leaves are treated the same way. *Id.* § 825.215(c)(2).

Southwest's policy follows those rules. Taking FMLA leave never adds a point to a flight attendant's record. Rea Summary Judgment Decl. ¶ 5. Nor does leave erase any reduction rights already earned or restart the clock for points scheduled to fall off. *Id.* ¶ 16. Southwest holds the employee's existing record in place, and the employee returns with the same points and the same progress toward future roll-offs.

The only thing Southwest does not provide during leave is a new Record Improvement reduction. That reduction is earned only after a flight attendant satisfies the applicable requirements for the entire quarter or month. *Id.* ¶ 9. It does not accrue day by day, so there is no partially earned reduction to preserve when leave begins. Southwest applies the same rule to all comparable leaves, including personal leave and non-FMLA medical leave. *Id.* ¶ 5.

*Sommer v. Vanguard Group* confirms that Southwest has done all the FMLA requires. 461 F.3d 397 (3d Cir. 2006). An employer must preserve benefits already earned, but it need not go further and treat leave as satisfying the work or attendance requirements for earning a new benefit. There, Vanguard prorated an hours-based bonus for time spent on short-term-disability leave that also qualified as FMLA leave, just as it did for long-term disability, workers' compensation, personal leave, and unpaid court leave. The Third Circuit affirmed summary judgment because the bonus rewarded work actually performed, and the FMLA did not require Vanguard to credit hours the employee did not work. *Id.* at 402–06. The same is true here: FMLA leave protects a flight attendant's absence, but it does not require Southwest to deem the Record Improvement requirements satisfied.

The Department of Labor has twice applied the same principle to attendance-point systems. In 2018, the Department considered a policy under which an employee's "accrued points remain[ed] effectively frozen during FMLA leave." U.S. Dep't of Labor, Wage & Hour Div., Op. Letter FMLA2018-1-A, 2018 WL 4678694, at *2 (Aug. 28, 2018). It concluded that the policy was lawful because the employee "neither loses a benefit that accrued prior to taking the leave nor accrues any additional benefit to which he or she would not otherwise be entitled." *Id.* An earlier Department

opinion gave the same guidance. It explained that, where unpaid leave does not accrue benefits, an employer may freeze the employee's progress toward removing attendance points during FMLA leave. Thus, an employee who entered leave with 45 incident-free days had to return with those same 45 days: the employer could neither count the leave toward termination nor credit it toward the period required for the points to fall off. Op. Letter FMLA-100, 1999 WL 1002428, at *2 (Jan. 12, 1999). That is precisely what happens under Southwest's attendance policy.

*Dyer v. Ventra Sandusky, LLC*—the decision Plaintiffs have emphasized and the Court previously cited—does not support a different result. 934 F.3d 472 (6th Cir. 2019). In *Dyer,* the employer erased progress the employee had already earned toward removing an attendance point. Unlike here, each day of perfect attendance counted toward a rolling 30-day period, and every FMLA absence restarted that period at zero. *Id.* at 474–76. The Sixth Circuit held that the employer could pause the employee's progress during leave but could not destroy it: FMLA leave "could freeze the accrual of attendance but could not reset it." *Id.* at 476.

Southwest freezes; it does not reset. It preserves the employee's existing points and roll-off progress and restores both when the employee returns. Unlike the benefit in *Dyer*, Record Improvement does not accrue day by day. It accrues quarterly or in December. No employee earns any reduction until the requirements for the full quarter or month have been satisfied. Southwest therefore does not erase anything earned before leave—the defect that drove *Dyer*.

The other decisions addressing attendance-point systems confirm the same rule. *Bailey v. Pregis Innovative Packaging, Inc.* held that an employer could pause point removal during FMLA leave because removing a point was "a reward for working." 600 F.3d 748, 752 (7th Cir. 2010). And the California Court of Appeal adopted that reasoning under the CFRA, holding that an employer could extend an absence-clearance period by the amount of time the employee spent on protected leave. *Lares v. L.A. Cnty. Metro. Transp. Auth.*, 56 Cal.App.5th 318, 335–37 (2020).

Taken together, those authorities defeat Plaintiffs' effort to characterize Southwest's policy as a penalty. Southwest assigns no points for protected leave, preserves every benefit earned before it, and applies the same rule to comparable non-FMLA leaves. It simply does not award a new attendance-based reduction for a qualifying period the employee did not complete. The FMLA protects

employees from losing benefits because they take leave; it does not require employers to credit leave toward benefits that have not yet been earned.

That issue is for the Court, not a jury. How Record Improvement operates is undisputed: the CBA sets the conditions, no reduction is awarded unless an employee satisfies them for the complete quarter or month, and the quarterly reductions are applied on the first day of the following quarter. Rea Summary Judgment Decl. ¶¶ 4-5, 9; Ex. A. Plaintiffs say the same: "Southwest only has one policy, and it applied that policy uniformly to every class member." Dkt. No. 190 at 17. The only question those undisputed terms leave open is one of characterization—whether a reduction contingent on a completed quarter is a benefit "accrued" before the quarter ends. 29 U.S.C. § 2614(a)(2). Applying the statute to the terms of the CBA is the Court's task alone. There is nothing here for a jury to find.

Plaintiffs have previously cited to interference cases that address different conduct. Dkt. No. 190. *Bachelder v. America West Airlines, Inc.* condemned an airline for counting FMLA absences themselves as occurrences under its no-fault policy—and firing the employee for them. 259 F.3d 1112, 1121, 1131 (9th Cir. 2001). *Olson v. United States* repeated the rule: interference means "using FMLA leave as a negative factor" in discipline and attendance decisions. 980 F.3d 1334, 1338 (9th Cir. 2020). *Avila v. Continental Airlines, Inc.* applied the parallel CFRA principle to an employer that counted protected absences in deciding to fire employees. 165 Cal. App. 4th 1237, 1249–59 (2008). Each court condemned the same thing: counting protected leave against the employee. Southwest assesses no points, imposes no discipline, and counts no absences for FMLA leave. Rea Summary Judgment Decl. ¶ 9. Moreover, if a neutral pause in earning new benefits "discouraged" leave in the actionable sense, section 825.215(c)(2)—which expressly permits pauses—could not exist.

Because Southwest's policy denies no benefit guaranteed by the FMLA, the Court should grant summary judgment on Plaintiffs' FMLA claim in its entirety. The CFRA claim fails under the same rule, *see Lares*, *supra,* 56 Cal. App. 5th at 335–37. As a result, the wrongful-termination and unfair-competition claims—which depend on an underlying statutory violation—fail as well.

///

///

**B. Eleven Class Members Lack Standing**

The Court should also grant summary judgment as to eleven class members for an independent reason: Southwest's Record Improvement policy did not cause their terminations. At summary judgment, every member of a damages class must establish standing for the relief sought. *Healy*, 164 F.4th 708. That requires a concrete injury "likely caused by the defendant" and "likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Because these class members seek damages resulting from their terminations, each must show that the challenged policy caused the termination for which damages are sought.

The undisputed attendance records show that the challenged policy did not. Southwest recalculated each record after crediting every Record Improvement reduction Plaintiffs claim was lost. Rea Summary Judgment Decl. ¶¶ 21-35. As discussed, the records fall into four patterns. Nicole Littles accumulated enough non-FMLA-related attendance points to cross the 12-point threshold even with the disputed reduction. *Id.* ¶ 22; Ex. B. Valerie Barajas, Lexus Mitchell, Colleen Bobbi Church, Cierra Brooks, and Natalie Patterson (in some quarters) had non-FMLA attendance events that independently made them ineligible for the reductions at issue. *Id.* ¶ 24, 27-29, 31; Exs. D, G–I, K. Mitchell took no FMLA leave at all in two of the three quarters at issue. *Id.* ¶ 29; Ex. I.

For Jonathan Harden and Alexander Macall Smith, any benefit from the disputed reductions disappeared when their balances later reached zero. Rea Decl. ¶¶ 23, 26; Exs. C, F. At that point, their actual records and the recalculated records became identical. *Id*. The points that eventually led to termination were incurred afterward. *Id.*

Pamela Unger, Bryan Henderson, Na'Keya Snoddy, and Natalie Patterson present a different issue. Crediting the earlier reductions would have brought their balances to zero earlier and erased their existing points. *Id.* ¶¶ 25, 27, 30; Exs. E, G J. Importantly, points erased in that way could not also fall off later under the 16-month rule. *Id.* ¶¶ 16-17. Once those later roll-offs are removed from the recalculation, each employee still would have reached the termination threshold at the same time or earlier. *Id.* ¶¶ 25, 27, 30; Exs. E, G, J.

In each case, the result is the same: even if the challenged policy had never applied, the class member still would have been subject to termination at the same time or earlier. Their termination-

related injuries therefore are not fairly traceable to the policy. As the Ninth Circuit has explained, an injury that would have occurred independently of the challenged policy is not caused by that policy. *See Takhar v. Kessler*, 76 F.3d 995, 1001–03 (9th Cir. 1996) (plaintiff's "allegations do not state an injury in fact caused by the [regulation] he challenges" because he "would be liable for statutory violations even in the absence of the [regulation]"). Because the disputed reductions would not have prevented or delayed any of the eleven terminations, those class members lack standing to recover termination damages, and summary judgment should be entered against them on those claims.

Littles and Smith have an additional damages defect. Plaintiffs' own economist concluded that both fully mitigated any economic loss and have no backpay or future damages resulting from their terminations. Dkt. No. 174-16 ¶ 4; Ex. D. That conclusion independently forecloses any award of economic damages to either employee.

### C. <u>Natalie Patterson Should Be Dismissed</u>

Independent of the merits and standing grounds above, Patterson should not remain in the damages class because Southwest never received the discovery necessary to test her individualized claims for termination damages. The Court made clear at the May 12 hearing that a class member seeking such relief must be available for deposition: "[i]f [Southwest] can't get their depositions, they're not going to be part of the case because, I mean, how could they?" *Id.* ¶ 5; Ex. D. The Court also noted Plaintiffs' prior representation that class members who were not deposed would be dismissed. Dkt. No. 197 at 13.

Southwest never obtained Patterson's deposition. Southwest noticed her deposition for October 24, 2025, agreed to Plaintiffs' request to reschedule it for October 31, and then learned the afternoon before the deposition that Plaintiffs had cancelled it. Lau Decl. ¶ 3-4; Exs. B-C. Despite Southwest's repeated requests, Patterson was not produced before her death in December 2025. *Id.* Plaintiffs should not be permitted to pursue individualized damages through Patterson or her estate without identifying the proper claimant and producing competent evidence that Southwest has had a fair opportunity to test.

///

///

## IV. CONCLUSION

The Court should grant summary judgment for Southwest on Plaintiffs' FMLA, CFRA, wrongful-termination, and unfair-competition claims. Alternatively, the Court should grant partial summary judgment for Southwest because Valerie Barajas, Lexus Mitchell, Colleen Bobbi Church, Cierra Brooks, Natalie Patterson, Jonathan Harden, Alexander Macall Smith, Pamela Unger, Bryan Henderson, Na'Keya Snoddy, and Nicole Littles lack Article III standing to pursue termination-based claims or damages. Independently, the Court should dismiss Natalie Patterson from the damages class because Southwest never obtained her deposition.

Dated: July 16, 2026

Respectfully submitted,

By: /s/ *Annie Lau*

Annie Lau
Megan F. Clark
Abby H. Putzulu
FISHER & PHILLIPS LLP

Andrew P. LeGrand
Betty Yang
Taylor DeScenzo
Jed Greenberg
GIBSON, DUNN & CRUTCHER LLP

Attorneys for Defendant
SOUTHWEST AIRLINES CO.

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 years, employed in the County of San Francisco, State of California, and not a party to the within action. I am employed with the law offices of Fisher & Phillips LLP and its business address is 1 Montgomery Street, Suite 3400, San Francisco, California 94104.

On the date set forth below, I served the foregoing document entitled **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SOUTHWEST AIRLINES CO.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** on all the appearing and/or interested parties in this action as follows:

| | |
|---|---|
| Jason M. Erlich<br>Erlich Law Firm, P.C.<br>180 Grand Ave., Suite 1380<br>Oakland, CA 94612<br><br>Legal Assistant: Travis Lyons | ***Attorneys for Plaintiffs Roreste Refuerzo and Selina Cashin and Classes and Subclasses***<br><br>Telephone: (510) 390-9140<br>Facsimile: (510) 369-3876<br>Emails: jason@erlichlawfirm.com; john@erlichlawfirm.com; travis@erlichlawfirm.com |
| Jennie Lee Anderson<br>Andrus Anderson LLP<br>155 Montgomery St., Suite 900<br>San Francisco, CA 94104 | ***Attorneys for Plaintiffs Roreste Refuerzo and Selina Cashin and Classes and Subclasses***<br><br>Telephone: (415) 986-1400<br>Facsimile: (415) 986-1474<br>Emails: jennie.anderson@andrusanderson.com; mail@andrusanderson.com |

☐ **[VIA ELECTRONIC SERVICE]** By agreement of the parties, I certify that on the date below, I caused each document(s) to be served via electronic mail in Adobe "PDF" format to the designated recipient(s) email address(es) as listed above and sent from sender's email address at XXXXXX@fisherphillips.com. I did not receive any electronic message or other indication that the transmission was unsuccessful.

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare that I am employed in the office of a member of the State Bar of California at whose direction the service was made. Executed on July 16, 2026, at San Francisco, California.

| | |
|---|---|
| Lisa Hamann | By: [signature] |
| Print Name | Signature |