Annie Lau (SBN 302438)
E-Mail: alau@fisherphillips.com
Megan F. Clark (SBN 301476)
E-Mail: mclark@fisherphillips.com
Abby H. Putzulu (SBN 335055)
E-Mail: aputzulu@fisherphillips.com
FISHER & PHILLIPS LLP
One Montgomery Street, Suite 3400
San Francisco, California 94104
Telephone: (415) 490-9000
Facsimile: (415) 490-9001

Andrew P. LeGrand (pro hac vice)
E-Mail: alegrand@gibsondunn.com
Betty Yang (pro hac vice)
E-Mail: byang@gibsondunn.com
Taylor DeScenzo (pro hac vice)
E-Mail: tdescenzo@gibsondunn.com
Jed Greenberg (pro hac vice)
E-Mail: jtgreenberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2923
Telephone: (214) 698-3405
Facsimile: (214) 571-2960

Attorneys for Defendant
SOUTHWEST AIRLINES CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RORESTE REFUERZO and SELINA CASHIN, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

SOUTHWEST AIRLINES CO.,

Defendant.

Case No: 3:22-cv-00868-JSC

**REPLY IN SUPPORT OF DEFENDANT SOUTHWEST AIRLINES CO.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Date: August 26, 2026
Time: 10:00 a.m.
Place: Courtroom 8 – 19th Floor
Before: Honorable Jacqueline Scott Corley

Action Filed: February 10, 2022
FAC Filed: September 9, 2022
SAC Filed: August 24, 2023
Trial: October 13, 2026

# TABLE OF CONTENTS

I. INTRODUCTION ........................................ 1
II. ARGUMENT ........................................ 4
    A. The FMLA Doesn't Prohibit Rewards for Working ........................................ 4
    B. Eleven Class Members Lack Standing ........................................ 7
    C. Patterson Should Be Dismissed from the Damages Class ........................................ 12
III. CONCLUSION ........................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bachelder v. America West Airlines, Inc.*,
259 F.3d 1112 (9th Cir. 2001) ....................5

*Bailey v. Pregis Innovative Packaging, Inc.*,
600 F.3d 748 (7th Cir. 2010) ....................1, 2, 5

*Barthelemy v. Air Lines Pilots Ass'n*,
897 F.2d 999 (9th Cir. 1990) ....................8

*Brennan v. Midwestern United Life Ins. Co.*,
450 F.2d 999 (7th Cir. 1971) ....................13

*Dyer v. Ventra Sandusky, LLC*,
934 F.3d 472 (6th Cir. 2019) ....................2, 6

*Hilao v. Estate of Marcos*,
103 F.3d 767 (9th Cir. 1996) ....................7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....................9, 10

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) ....................8

*Olson v. United States*,
980 F.3d 1334 (9th Cir. 2020) ....................5

*SEC v. Phan*,
500 F.3d 895 (9th Cir. 2007) ....................8

*Siebert v. Gene Sec. Network, Inc.*,
75 F. Supp. 3d 1108 (N.D. Cal. 2014) ....................8

*Sommer v. Vanguard Group*,
461 F.3d 397 (3d Cir. 2006)....................1, 6, 7

*Soremekun v. Thrifty Payless, Inc.*,
509 F.3d 978 (9th Cir. 2007) ....................10

*Stuart v. Glob. Tel*Link Corp.*,
956 F.3d 555 (8th Cir. 2020) ....................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
289 F.R.D. 548 (N.D. Cal. 2013)....................13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................3, 10

*United States v. Figueroa-Lopez*,
125 F.3d 1241 (9th Cir. 1997) ....................8

*Xin Liu v. Amway Corp.*,
347 F.3d 1125 (9th Cir. 2003) ....................2, 7

*Zsenyuk v. City of Carson*,
99 F. App'x 794 (9th Cir. 2004) ....................8

**Statutes**

29 U.S.C. § 2614 ....................6

29 U.S.C. § 2614(a)(1) ....................5

29 U.S.C. § 2614(a)(2) ....................4

29 U.S.C. § 2614(a)(3) ....................4

29 U.S.C. § 2614(a)(3)(A) ....................5

29 U.S.C. § 2617(a)(1)(A)(iii) ....................10

Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. .................... *passim*

**Rules**

Fed. R. Civ. P. 25 ....................13

Fed. R. Civ. P. 30(b)(6) ....................4

Fed. R. Civ. P. 37(c)(1) ....................8

Fed. R. Civ. P. 37(d) ....................13

Fed. R. Evid. 406 ....................8

Fed. R. Evid. 702 ....................8

**Regulations**

29 C.F.R. § 825.215(c)(2) ....................2, 5, 6

29 C.F.R. § 825.215(d)(2) ....................4, 5

29 C.F.R. § 825.216(a) ....................4

**Other Authorities**

U.S. Dept. of Labor, Wage & Hour Div., DOL Op. Letter FMLA-100,
1999 WL 1002428 (Jan. 12, 1999) ....................5

U.S. Dept. of Labor, Wage & Hour Div., DOL Op. Letter FMLA2018-1-A,
2018 WL 4678694 (Aug. 28, 2018) ....................2

## I. INTRODUCTION

Employers can reward attendance. The FMLA does not change that common-sense principle. Instead, the law requires employers to ensure that any benefit an employee has accrued before taking leave is restored when they return. That's why Plaintiffs try to argue that Southwest's attendance policy results in a "loss of days *accrued* toward a point-reduction benefit," Opp. at 21 (emphasis added), and a flight attendant who takes FMLA leave "returns with fewer *accrued* reductions than she would have but for the leave," *id.* at 19 (emphasis added). The central issue in this case is when the benefit of Record Improvement accrues. This is a purely legal issue, not a factual one. And Plaintiffs are wrong as a matter of law.

Start with accrual. Flight attendants have two ways to reduce points. One is time: points "roll off" 16 months after an attendance event, so long as a flight attendant remains employed. Miss a day on January 1, 2026, the points for that absence disappear on May 2, 2027. Simply put, there's a 16-month countdown that begins with each point. The countdown pauses when a flight attendant takes leave; it resumes when they return.

Flight attendants can also reduce their points through Record Improvement. Plaintiffs acknowledge that these are "quarterly" or "monthly" bonuses that are available only to flight attendants who satisfy the specified conditions for an entire quarter or month (December). *E.g.*, Opp. at 2–3. The conditions are goals that must be achieved for an entire quarter or month, such as no chargeable occurrences, maintaining active status, and (as applicable) having perfect attendance. There is no partial credit. A flight attendant who shows up for half a quarter doesn't get half a Record Improvement bonus. Instead, they get credit for satisfying all the conditions during the entire relevant period, and the benefit accrues only after the period ends.

One can't lose something he or she never had, which is why every court to consider similar policies has held they don't violate the FMLA. In *Bailey v. Pregis Innovative Packaging, Inc.*, 600 F.3d 748, 752 (7th Cir. 2010), the Seventh Circuit held that "an employee does not accrue absenteeism forgiveness when on leave" because, as here, the point reduction in that case was "a reward for working." In *Sommer v. Vanguard Group*, 461 F.3d 397, 406 (3d Cir. 2006)—a case Plaintiffs don't

cite or distinguish—the Third Circuit made clear that "a bonus program designed to reward employee production" can omit "hours not worked" while on "FMLA leave."

Faced with this overwhelming authority supporting Southwest, Plaintiffs have three responses. None is persuasive. First, Plaintiffs continue misreading *Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 476 (6th Cir. 2019). Here, unlike in *Dyer*, Record Improvement is a reward for working, not a necessity without which an employee "face[s] inevitable termination." *Id.* Also unlike in *Dyer*, Plaintiffs can't show that "FMLA leave is treated less favorably than other equivalent leave statuses" under Southwest's policy. *Id.* at 478. Their bald assertion (at 22) that "Southwest never identifies a single equivalent non-FMLA leave it treats the same" ignores Southwest's evidence (at 7) that it treats FMLA leave just like "personal leave and non-FMLA medical leave" (citing Rea Decl. ¶¶ 5, 16, 34).

Second, Plaintiffs try to manufacture a triable issue by claiming that Southwest treats FMLA leave as a "chargeable occurrence." *E.g.*, Opp. at 1. But flight attendants do *not* get points for taking FMLA leave. That should end the inquiry. And, as explained above, to survive summary judgment, even under their best case, Plaintiffs would have to show that Southwest treats FMLA leave less favorably than other equivalent leaves. Plaintiffs instead respond (at 19) with fake quotes from a real Ninth Circuit case, *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133–35 (9th Cir. 2003). The fake quotes suggest Southwest's equal treatment of equivalent leaves is immaterial, but the real authorities Southwest cited in its opening brief (at 12–15) show otherwise. It is also telling that despite representing a class of over 20,000 flight attendants, Plaintiffs cannot identify a single one who ever maintained active status while on FMLA leave, non-FMLA medical leave, or personal leave. As a result, no rational jury could find for Plaintiffs.

Finally, Plaintiffs repeat a familiar refrain that one day of FMLA leave "disqualifie[s]" a flight attendant from Record Improvement. *E.g.*, Opp. at 2. Even if true, it's irrelevant. Record Improvement is a "reward for working" the way a gold medal is a reward for winning the World Cup. *Bailey*, 600 F.3d at 752; *see* DOL Op. Letter FMLA2018-1-A, 2018 WL 4678694, at *2 ("Removal of absenteeism points is a reward for working"). No one "qualifies" for Record Improvement until the end of the quarter or month. *See* 29 C.F.R. § 825.215(c)(2) ("[I]f a bonus . . . is based on the achievement of a specified goal such as . . . perfect attendance, and the employee has not met the goal

due to FMLA leave, then the payment may be denied, unless otherwise paid to employees on an equivalent leave status for a reason that does not qualify as FMLA leave."). Plaintiffs seek a ruling that gives flight attendants who take FMLA leave greater benefits than the law requires. And the implications are breathtaking. To illustrate, Plaintiffs fault Southwest (at 11) for not allowing a class member (Harden) to record improve for "perfect attendance" because he took FMLA leave but "otherwise met the perfect attendance requirements in Q1 2020." To recite the argument is to defeat it. Even Orwell likely couldn't doublespeak an absence as attendance—let alone "perfect attendance."

Now harm. Each of the class members seeking damages must show that their termination was caused by their FMLA leave. The threshold issue is one of Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Southwest explained (at 8–10, 16–17) that eleven class members lack standing because they would have been terminated even if credited with the Record Improvement they seek. Plaintiffs' response (at 6–15) doesn't come close to raising a triable fact dispute. They ignore absences (Harden); misstate and omit evidence refuting their contentions (Barajas); question the roll-off policy without any supporting evidence (Unger, Snoddy); speculate that they'd have acted differently absent taking FMLA leave (Smith); admit that non-FMLA absences blocked them from Record Improvement (Brooks, Mitchell, Henderson); and challenge code treatment that a reasonable jury couldn't disagree with (Church, Patterson). Yet, they have not come forward with actual evidence of a material fact dispute on standing. Nor do Plaintiffs cite evidence raising a fact dispute that Littles and Smith have any damages that weren't fully mitigated.

Southwest established, and Plaintiffs' response confirms, that there's no fact dispute to be tried. None of the Plaintiffs can prevail on their claims as a matter of law because Southwest didn't interfere with any FMLA right. And the eleven damages class members identified in Southwest's motion can't prevail as a matter of law for the separate reason that they lack Article III standing. Plaintiffs seek a ruling that entitles employees on leave to a bonus conditioned on whether the employee showed up for every scheduled shift. The FMLA doesn't require it. Nor does common sense. This Court should grant summary judgment in favor of Southwest.

///

///

## II. ARGUMENT

As the Court recognized, "there is no good reason to include class members in the trial if they cannot prevail as a matter of undisputed fact." Dkt. 197 at 13. Here, plaintiffs raise no triable fact issue for two main reasons—Southwest's attendance policy's undisputed terms don't interfere with their FMLA rights, and, for eleven plaintiffs, there's no fact dispute that the policy didn't cause their termination.

### A. The FMLA Doesn't Prohibit Rewards for Working

***Record Improvement benefits accrue at the end of the specified period if a flight attendant has satisfied all the conditions.*** Under the FMLA, an employer can't cause "the loss of any employment benefit ***accrued*** prior to the date on which the [FMLA] leave commenced." 29 U.S.C. § 2614(a)(2). But an employee is not entitled to "the ***accrual*** of any seniority or employment benefits during any period of leave" or any benefit beyond what they "would have been entitled" to "had the employee not taken the leave." *Id.* § 2614(a)(3). The regulations are in accord. "Benefits ***accrued*** at the time leave began" must be available on return, but nothing new accrues during unpaid leave. 29 C.F.R. §§ 825.215(d)(2), 825.216(a).[1]

Under the flight attendants' Collective Bargaining Agreement, Record Improvement is "based upon calendar Quarters" unless otherwise specified.[2] Rea Decl. Ex. A. A flight attendant earns a reduction by satisfying the requirements for an entire period—no chargeable occurrence all quarter, perfect attendance all quarter or December, or a qualifying record across the full fourth quarter. Rea Decl. ¶ 9. The reduction is applied on the first day of the following period. *Id.* ¶ 17. Benefits do not accrue day by day; there's no running tally, no mid-quarter balance, and no partial credit. *Id.* ¶¶ 9, 17. The right to Record Improvement only vests at the conclusion of the specified period if all attendance conditions have been satisfied. *Id.*[3]

---

[1] All emphases in this paragraph added.

[2] Plaintiffs' attempts to paint the policy as extra-contractual or outside the scope of the CBA ignore Article 15.7, which authorizes updates "to stay current with any changes in federal law."

[3] Plaintiffs' objections to Rea's declaration (at 8–10) are wrong, *infra* Part II.B, and in any event are immaterial here—the features described come from the CBA itself, from Rule 30(b)(6) testimony plaintiffs cite as authoritative (at 2–3), and from facts they concede.

Plaintiffs' cases reject something Southwest doesn't do—assigning points for FMLA leave or otherwise counting FMLA leave against employees. In *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1121, 1131 (9th Cir. 2001), the employer counted FMLA absences as occurrences under a no-fault policy and fired the employee for them. In *Olson v. United States*, 980 F.3d 1334, 1338 (9th Cir. 2020), the court reiterated that leave may not be used as a "negative factor" for "hiring, promotions, disciplinary actions, and no-fault attendance policies." Southwest flight attendants receive no points for taking FMLA leave, face no discipline, and return to the same balance they had before taking leave. Rea Decl. ¶ 5. Their attendance record stays the same—it is "frozen."

Plaintiffs call (at 22) the failure to record improve while on leave a penalty. It is not. The FMLA doesn't entitle employees to "the accrual of any . . . benefits" while on leave. 29 U.S.C. § 2614(a)(3)(A). But it does authorize an employer to reward "achievement of a specified goal such as . . . perfect attendance." 29 C.F.R. § 825.215(c)(2). Southwest rewards attendance without penalizing FMLA leave. Flight attendants have no points added to their record when they take FMLA leave. They come no closer to the 12-point termination threshold. Instead, their point total stays the same. And because they necessarily do not work while on FMLA leave—or any other equivalent leave—they do not record improve. Nor should they. The FMLA requires "equivalent" treatment, not a windfall. 29 U.S.C. § 2614(a)(1).[4]

***Southwest doesn't use FMLA leave as a negative factor in any employment decision.*** Plaintiffs concede (at 5 n.3, 21) the 16-month roll-off policy is "a paradigmatic freeze" that's "permissible under the FMLA." Under the 16-month roll-off, each day without a chargeable occurrence reduces the number of days remaining for the roll-off to apply, and a flight attendant who takes FMLA leave returns with the same amount of time left on the countdown clock as when they left. Mot. 7–8. Courts consistently hold that the FMLA permits a "pause" or "freeze" of this nature. *E.g.*, *Bailey*, 600 F.3d at 752; *see also* DOL Op. Letter FMLA-100, 1999 WL 1002428, at *2 (employee with "45 days without a recordable [absence]" must be restored "to this number of days credited").

---

[4] Southwest's pre-2019 and post-2024 attendance policies are irrelevant to this dispute, which is about the policy in force between 2019 and 2024. In any event, the FMLA allows employers to grant employees more than the minimum amount of benefits required by law. 29 C.F.R. § 825.215(d)(2) ("An employee *may, but is not entitled to, accrue any additional benefits* or seniority during unpaid FMLA leave.") (emphasis added).

Record Improvement is different. It is "designed to reward employee production." *Sommer*, 461 F.3d at 406. That's why the passage of time isn't enough to record improve—the specified attendance conditions must also be met, for the whole quarter or month. Mot. 7. That's also why Plaintiffs' comparison (at 21 n.7) of Record Improvement to time-based roll-off policies shows nothing—Record Improvement is a reward for working.

Plaintiffs also grossly misread *Dyer*. In that case, FMLA leave "'reset' the 30-day perfect attendance clock," such that "if an employee worked three days, took the fourth day off for an FMLA-qualifying purpose and returned to work on the fifth day, his attendance streak restarted at one day worked, rather than four." 934 F.3d at 474–75. Southwest does not "reset" any clocks when a flight attendant takes FMLA leave. Mot. 7–8. But it recognizes, as the law permits, that flight attendants who take leave are not entitled to the same Record Improvement benefits as flight attendants who were present for all scheduled shifts and had no chargeable attendance occurrences for a quarter or month. *Dyer*'s reset framework doesn't apply because there is no countdown. Record Improvement benefits simply do not accrue unless all attendance conditions are satisfied for the whole quarter or month.

***Southwest treats FMLA leave the same as other equivalent leaves.*** Here, unlike in *Dyer*, there's no dispute that Southwest treats "equivalent leave statuses similarly" to FMLA leave. 934 F.3d at 478. Southwest established, and Plaintiffs don't dispute, that personal leave and non-FMLA medical leave were treated just like FMLA leave—inactive status, a frozen roll-off clock, no points, and no Record Improvement. Mot. 7 (citing Rea Decl. ¶¶ 5, 16, 34). Plaintiffs' argument (at 19) that unequal treatment "is not a prerequisite" to their claim misses the point—equivalence is the standard that § 2614 and § 825.215(c)(2) attach to treatment of FMLA leave, and the standard is satisfied.

Rewarding work while treating FMLA leave like other equivalent leaves is authorized under the FMLA. The Third Circuit's decision in *Sommer*, which affirmed summary judgment on an interference claim, is directly on point. *See* 461 F.3d at 406. The employer didn't count time on FMLA leave as hours worked for purposes of monetary bonuses that rewarded employees. *Id.* at 402–06. The employer took the same approach to accounting for time on long-term disability, workers' compensation, personal leave, and unpaid court leave. *Id.* The court affirmed the summary judgment

*///*

because the bonus just rewarded work actually performed and the FMLA didn't require a different approach. *Id.* The court also explained the problem with a contrary analysis:

> Employers would then be faced with the choice of providing full production bonuses to those employees who potentially miss up to 12 weeks of work in a 12-month period, or prorating the production bonuses of all employees who take accumulated vacation or sick leave. We do not believe that Congress intended such a result[.]

*Id.* at 405. Substitute "attendance" for "production" and *Sommer* is this case.

Plaintiffs respond to this circuit authority by reciting caselaw quotes that do not exist. For example, Plaintiffs highlight what appears to be binding authority from the Ninth Circuit, *Xin Liu*, 347 F.3d at 1133–35. They cite—and quote—that case for the proposition that "[t]he negative-factor analysis 'does not require a showing that an employer treated FMLA less well than equivalent types of leave'; differential treatment 'is not a prerequisite for an FMLA interference claim.'" Opp. at 19. The only problem: the quotes are entirely made up. Plaintiffs should have known the quotes were too good to be true.

***Failure of the FMLA claim also requires summary judgment against the remaining damages claims.*** Plaintiffs agree (at 23) that the CFRA, wrongful-termination, and unfair-competition claims apply "the same standards" as the FMLA claim and are "derivative" of it. The FMLA claim's failure requires judgment against these claims, too.

### B. Eleven Class Members Lack Standing

Southwest challenged, and Plaintiffs haven't satisfied, the causation element of standing—their alleged injuries from termination aren't fairly traceable to the Record Improvement policy and would have happened regardless of that policy.

Plaintiffs try to convert this FMLA case into one about wrongful termination, challenging (at 11–15) attendance events not actually at issue. They should not be allowed to do so. *See Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir. 1996) (rejecting argument that class action trial must cover individualized issues). To the extent they try, this Court should exercise its authority to *sua sponte* decertify the damages class. *See Stuart v. Glob. Tel*Link Corp.*, 956 F.3d 555, 560 (8th Cir. 2020) (affirming class decertification where "common questions no longer predominated"). But even on the merits, Plaintiffs' complaints about non-FMLA attendance events do not raise a genuine issue

of *material* fact. Plaintiffs do not—and cannot—argue that Southwest added any non-FMLA attendance events to the class members' records *because* they took FMLA leave. *See Zsenyuk v. City of Carson*, 99 F. App'x 794, 796 (9th Cir. 2004) (affirming summary judgment due to "no evidence" that employment action was "influenced by [plaintiff's] exercise of rights under the FMLA").

***Rea's declaration is competent summary judgment evidence.*** Rea's "personal knowledge" is "reasonably inferred" from her "position[ ]" and "the nature of [her] participation in the matters" she sets out in the declaration. *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990). She spent twenty-five years working with, supervising, and applying these attendance policies. Decl. ¶ 3. Her calculations rely on Southwest's contemporaneous point cards—which she confirms "were accurate at the time," Erlich Decl. Ex. D at 33—and on rules that Plaintiffs agree Southwest "applied . . . uniformly." Dkt. 190 at 17. Her undisputedly authentic source information is all attached to her declaration. Ex. A–L. The calculations are just addition and subtraction. Rea Decl. ¶¶ 22–32.

Rea's calculations are proper testimony for a percipient witness. Where "a witness is testifying as to institutional operations and practices based on personal knowledge that the witness has accrued over the course of several years of employment, the witness is providing lay testimony not subject to Rule 702." *Siebert v. Gene Sec. Network, Inc.*, 75 F. Supp. 3d 1108, 1114 (N.D. Cal. 2014).[5] Southwest doesn't need an expert to explain to the Court or a jury how its own internal policies or practices operate. *E.g.*, Fed. R. Evid. 406 (evidence "of an organization's routine practice" admissible "regardless of whether it is corroborated or whether there was an eyewitness"). Plaintiffs' proposed rule finds no support in any legal authority—and would upend an organization's right to defend itself. In any event, even if Rea were offering expert testimony, a Rule 37(c)(1) exclusion would be unavailable because the absence of a prior report or disclosure is "harmless"—Plaintiffs deposed her multiple times about these same facts and quote that deposition in their response (*e.g.*, at 10).

Plaintiffs' other complaints (at 8–10) about Rea's declaration are immaterial, nonsubstantive labels. *See SEC v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (reversing decision to disregard evidence

[5] Plaintiffs' cases require no other conclusion. *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997), concerned law-enforcement opinion about drug-trafficking methods—nothing like a manager doing math on her employer's point cards. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008), has no application—it just affirms the exclusion of expert testimony about the law.

as "uncorroborated and self-serving"). And nothing here turns on "credibility"—the documents on which Rea relied are attached to her declaration, and any reader can check her math.

***No identified class member raises a genuine fact dispute.*** Southwest established (at 8–10, 16–17) that these eleven plaintiffs would have been terminated by the same date regardless of Southwest's Record Improvement policy or their FMLA leave. Plaintiffs' efforts to rebut this evidence fall far short of raising a triable fact dispute.

***Harden*** asserts (at 11) that "in Q1 2020 he had no attendance events at all," but cites no evidence to contradict Rea's statements: in "Q1 2020 . . . the PN1 prevented [Harden] from receiving the Perfect Attendance in a Quarter Bonus" and, considering his zero-point status, "the No Chargeable Occurrences Bonus" was off the table as well—regardless of FMLA leave. Decl. ¶ 23(e).

***Barajas*** asserts that a LSCK (Los Angeles Sick Kin Care) absence in December 2022 wouldn't have independently prevented her from getting that month's Record Improvement bonus, but Rea's declaration explains that LSCK is coded as "no Perfect Attendance." ¶ 20(s). Barajas's only basis to disagree (at 9, 11) is that the information wasn't identified "in writing" and Rea didn't remember its source during her deposition. These assertions are both wrong and immaterial. When Plaintiffs' counsel challenged Rea to explain the authority for treating the LSCK code this way, Rea testified that the CBA "show[s] you what constitutes as no chargeable occurrences" and "perfect attendance," "specifically call[ing] out" those that support these Record Improvements, and "everything else" is inconsistent with achieving them. Erlich Decl. Ex. D at 50:1–6. She also testified she had "seen a[ ] written document identifying LSCK as a nonchargeable occurrence," but didn't then recall which document it was. *Id.* at 52:4–13. Whether Rea remembered the source doesn't matter, though, because Barajas offers no reason to doubt Rea's explanation. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (nonmovant must come forward with "specific facts"—not "metaphysical doubt"—to withstand summary judgment).

***Unger and Snoddy*** question (at 12, 14) the roll-off policy but cite no evidence contradicting Rea's explanation of how roll-off worked. This doesn't raise a fact dispute for trial. *See Matsushita*, 475 U.S. at 586–87.

///

***Smith*** admits (at 12) that she was independently disqualified from Record Improvement by other absences in the same quarters in which she took FMLA leave, but says her absences came after the FMLA leave. She speculates that she might have approached attendance differently if she hadn't taken the FMLA leave, which doesn't raise a genuine fact dispute. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("speculat[ion] . . . is insufficient to raise genuine issues of fact and defeat summary judgment").

***Brooks, Mitchell, and Henderson*** admit (at 13–14) that other absences independently disqualified them from Record Improvement in the same quarters in which they took FMLA leave. They cite no evidence contradicting that those absences (for FTGA) were chargeable so as to prevent Record Improvement.

***Church, Patterson,*** and other plaintiffs assert (at 13–14) that absences coded as LVNP—which independently disqualified them from Record Improvement in the same quarters in which they took FMLA leave—weren't actually chargeable under the policy. But their theory—that this code wasn't listed as chargeable on a quick-reference chart—lacks the support to raise a genuine fact dispute. Rea's explanation—backed by the later-dated charts in evidence and her own personal knowledge—that the more recent charts are correct is the only conclusion a reasonable jury could draw. *See Matsushita*, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.").

***Littles and Smith have no economic injury.*** Southwest established (at 17) that, because Littles's and Smith's own economist concluded their damages were fully mitigated, they have no injury in fact. Plaintiffs don't cite (at 15) a single piece of evidence suggesting otherwise. Their list of non-economic purported harms—like "lost[ ] benefit" and "class membership"—are not Article III injuries, nor are FMLA's statutory "liquidated" damages. *See TransUnion*, 594 U.S. at 427, 431 ("an injury in law is not an injury in fact," and "[e]very class member must have Article III standing in order to recover individual damages"); 29 U.S.C. § 2617(a)(1)(A)(iii) (liquidated damages equal "the sum of" actual damages and interest—here, zero).

///

///

| Class Member | Reduction Plaintiffs Claim Was Lost | What the Attendance Record Shows | Why Plaintiffs Fail to Raise a Fact Dispute |
|---|---|---|---|
| **Valerie Barajas** | Two-point reductions in Q4 2022 and Q1 2023 | Non-FMLA absences and leave statuses independently made Barajas ineligible in both quarters. Later violations brought her to 12 points. Rea Decl. ¶ 24; Ex. D. | Cites no evidence to dispute that LSCK code prevented perfect attendance bonus in December 2022. |
| **Lexus Mitchell** | Reductions in Q4 2023, Q1 2024, and Q2 2024 | Mitchell's only FMLA leave was in November 2023—she took none in Q1 or Q2 2024, so the policy could not have affected those quarters. Non-FMLA absences and leave statuses independently made her ineligible in every quarter at issue, and her attendance violations ultimately brought her to 13 points. *Id.* ¶ 29; Ex. I. | Cites no evidence to dispute that FTGA absences were chargeable so as to prevent Record Improvement. |
| **Colleen Bobbi Church** | Reductions from Q2 2023 through Q2 2024 | Non-FMLA absences and leave statuses independently made Church ineligible in every quarter at issue; her attendance violations ultimately brought her to 14 points. *Id.* ¶ 31; Ex. K. | Reasonable jury could only conclude that LVNP code was chargeable so as to prevent Record Improvement. |
| **Cierra Brooks** | Reductions in Q2, Q3, and Q4 2024 | Non-FMLA absences and leave statuses independently made Brooks ineligible in every quarter at issue; her attendance violations ultimately brought her to 12.5 points. *Id.* ¶ 28; Ex. H. | Cites no evidence to dispute that FTGA absences were chargeable so as to prevent Record Improvement. |
| **Natalie Patterson** | Reductions from Q1 2020 through Q4 2023 | In some quarters, non-FMLA absences and leave statuses independently made Patterson ineligible. In others, the claimed reductions would have erased points and eliminated later roll-offs and Record Improvement reductions. The full recalculation produces the same termination date. *Id.* ¶ 27; Ex. G. | Reasonable jury could only conclude that LVNP code was chargeable so as to prevent Record Improvement.<br><br>Cites no evidence to dispute roll-off policy. |
| **Jonathan Harden** | Two points in Q3 2019 | Any difference disappeared when Harden's balance reached zero by the end of 2019. The points that later led to termination arose afterward. *Id.* ¶ 23; Ex. C. | Cites no evidence to dispute that PN1 absence prevented perfect attendance bonus and zero-point status prevented no chargeable occurrences bonus in Q1 2020. |

| Class Member | Reduction Plaintiffs Claim Was Lost | What the Attendance Record Shows | Why Plaintiffs Fail to Raise a Fact Dispute |
|---|---|---|---|
| **Alexander Macall Smith** | Two-point reductions in Q1 and Q2 2019 | Any difference disappeared when Smith's balance reached zero by Q4 2019, and non-FMLA occurrences independently barred the claimed bonuses in both quarters. The points that later led to termination arose afterward. *Id.* ¶ 26; Ex. F. | Admits she was independently disqualified from Record Improvement by other absences in the same quarters in which she took FMLA leave.<br><br>Mitigation negates injury in fact. |
| **Pamela Unger** | Up to six points in Q3 and Q4 2019 and Q4 2020 | The reductions would have erased points that later rolled off under the 16-month rule. Recalculating the full record produces the same point balance at termination. *Id.* ¶ 25; Ex. E. | Cites no evidence to dispute roll-off policy. |
| **Bryan Henderson** | Up to four points in Q4 2022 and Q4 2023 | The reductions would have erased points and eliminated later roll-offs and Record Improvement reductions. The recalculated record reaches 12 points before the actual termination date. *Id.* ¶ 32; Ex. L. | Cites no evidence to dispute that FTGA absences were chargeable so as to prevent Record Improvement. |
| **Na'Keya Snoddy** | Up to five points in Q2 and Q4 2019 | The reductions would have erased points and eliminated later roll-offs and Record Improvement reductions. Recalculating the full record produces the same point balance at termination. *Id.* ¶ 30; Ex. J. | Cites no evidence to dispute roll-off policy. |
| **Nicole Littles** | Two points in Q1 2019 | Even with the reduction, later non-FMLA attendance events would have brought Littles past the 12-point threshold in June 2019. Rea Decl. ¶ 22; Ex. B. | Mitigation negates injury in fact. |

### C. <u>Patterson Should Be Dismissed from the Damages Class</u>

The parties and the Court agreed that class members seeking individualized termination damages must be deposed: "If [Southwest] can't get their depositions, they're not going to be part of the case because, I mean, how could they[.]" Lau Decl. Ex. D. Plaintiffs "unequivocally represented in writing" that undeposed class members would be dismissed—which the Court cited in denying decertification. Dkt. 197 at 13. Southwest noticed Patterson's deposition, agreed to reschedule it at

Plaintiffs' request, and never received it before her death. Lau Decl. ¶¶ 3–4; Ex. B–C.

Failure to provide discovery, including a party's deposition, justifies dismissal regardless of fault. Fed. R. Civ. P. 37(d) (authorizing sanctions up to dismissal for "Party's Failure to Attend Its Own Deposition," with no culpability requirement). Courts have long required absent class members to sit for depositions and dismissed those who do not. *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1004–06 (7th Cir. 1971); *see In re TFT-LCD (Flat Panel) Antitrust Litig.*, 289 F.R.D. 548, 551–53 (N.D. Cal. 2013). Nor do Plaintiffs' proposed substitutes (at 16–17) supply what's missing. W-2s and payroll records show what Patterson earned, not her efforts to find work to mitigate her damages. The order Plaintiffs cite, Dkt. 208, governed expert rebuttal—it didn't relieve Plaintiffs of proving standing and the claim elements. And a Rule 25 substitution (at 17) supplies a party, not discovery—the estate can't testify about Patterson's work history.

## III. CONCLUSION

The Court should grant summary judgment for Southwest on Plaintiffs' FMLA, CFRA, wrongful-termination, and unfair-competition claims. Alternatively, the Court should grant partial summary judgment for Southwest because Valerie Barajas, Lexus Mitchell, Colleen Bobbi Church, Cierra Brooks, Natalie Patterson, Jonathan Harden, Alexander Macall Smith, Pamela Unger, Bryan Henderson, Na'Keya Snoddy, and Nicole Littles lack Article III standing to recover damages or pursue any claim based on their terminations. Independently, the Court should dismiss Natalie Patterson from the damages class because Southwest never obtained her deposition.

///

///

///

///

///

///

///

///

///

Dated: August 6, 2026

Respectfully submitted,

By: <u>*/s/ Annie Lau*</u>

Annie Lau
Megan F. Clark
Abby H. Putzulu
FISHER & PHILLIPS LLP

Andrew P. LeGrand
Betty Yang
Taylor DeScenzo
Jed Greenberg
GIBSON, DUNN & CRUTCHER LLP

Attorneys for Defendant
SOUTHWEST AIRLINES CO.

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 years, employed in the County of San Francisco, State of California, and not a party to the within action. I am employed with the law offices of Fisher & Phillips LLP and its business address is 1 Montgomery Street, Suite 3400, San Francisco, California 94104.

On the date set forth below, I served the foregoing document entitled **REPLY IN SUPPORT OF DEFENDANT SOUTHWEST AIRLINES CO.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** on all the appearing and/or interested parties in this action as follows:

| | |
|---|---|
| Jason M. Erlich<br>Erlich Law Firm, P.C.<br>180 Grand Ave., Suite 1380<br>Oakland, CA 94612<br><br>Legal Assistant: Travis Lyons | ***Attorneys for Plaintiffs Roreste Refuerzo and Selina Cashin and Classes and Subclasses***<br><br>Telephone: (510) 390-9140<br>Facsimile: (510) 369-3876<br>Emails: jason@erlichlawfirm.com; john@erlichlawfirm.com; travis@erlichlawfirm.com |
| Jennie Lee Anderson<br>Andrus Anderson LLP<br>155 Montgomery St., Suite 900<br>San Francisco, CA 94104 | ***Attorneys for Plaintiffs Roreste Refuerzo and Selina Cashin and Classes and Subclasses***<br><br>Telephone: (415) 986-1400<br>Facsimile: (415) 986-1474<br>Emails: jennie.anderson@andrusanderson.com; mail@andrusanderson.com |

☐ **[VIA ELECTRONIC SERVICE]** By agreement of the parties, I certify that on the date below, I caused each document(s) to be served via electronic mail in Adobe "PDF" format to the designated recipient(s) email address(es) as listed above and sent from sender's email address at lhamann@fisherphillips.com. I did not receive any electronic message or other indication that the transmission was unsuccessful.

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare that I am employed in the office of a member of the State Bar of California at whose direction the service was made. Executed on August 6, 2026, at San Francisco, California.

| | |
|---|---|
| Lisa Hamann | By: [signature] |
| Print Name | Signature |