UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RORESTE REFUERZO, et al.,<br>Plaintiffs,<br>v.<br>SOUTHWEST AIRLINES CO.,<br>Defendant. | Case No. 22-cv-00868-JSC<br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 221 |

Plaintiffs, on behalf of themselves and three certified classes, allege Defendant Southwest Airlines Co. violated the Family and Medical Leave Act ("FMLA") and California's Family Rights Act ("CFRA"). Defendant uses a point system to track flight attendants' attendance at work shifts; each attendance infraction adds points to the flight attendant's record and flight attendants are terminated once they accumulate 12 points. Defendant allows flight attendants to reduce their point totals if they meet certain criteria for attendance during December or a given calendar quarter. Plaintiffs assert Defendant violates the FMLA and CFRA because Defendant deems them ineligible for point reductions when they use protected leave. Before the Court is Defendant's motion for summary judgment. (Dkt. No. 221-1.)

Having carefully reviewed the parties' written submissions, and having had the benefit of oral argument on August 26, 2026, the Court DENIES Defendant's motion. The Court does not consider Defendant's accrual argument. Additionally, drawing all reasonable inferences from the summary judgment record in Plaintiff's favor, Defendant has not met its burden of showing there is no genuine dispute of material fact regarding the (b)(3) class members' Article III standing. Finally, Defendant has not shown Natalie Patterson must be dismissed.

//

United States District Court
Northern District of California

## BACKGROUND

### A. Procedural History

Plaintiffs' Second Amended Complaint ("SAC") alleges five class-based causes of action: (1) FMLA interference, based on 29 U.S.C. § 2615(a)(1); (2) "Discrimination and Retaliation in Violation of the FMLA," based on 29 U.S.C §§ 2615(a)(1) and (2); (3) "Discrimination and Retaliation in Violation of the CFRA," based on Cal. Gov. Code § 12945.2(1); (4) Wrongful termination; and (5) Unfair Competition. (Dkt. No. 84 ¶¶ 59-89.) The first two causes of action are brought on behalf of nationwide classes, and the other three are brought on behalf of California sub-classes. (*Id.*) The Court granted Plaintiffs' motion for class certification, in part, certifying three classes. (Dkt. No. 106.) Then, on May 18, 2026, the Court denied Defendant's motion for decertification. (Dkt. No. 197.)

### B. Southwest's Attendance Policy

The flight attendants' Collective Bargaining Agreement ("CBA") outlines Southwest's attendance policy. Article 32 of the CBA outlines 12 types of "occurrences" and the number of points, if any, assigned to a flight attendant's record due to those occurrences. (Dkt. No. 221-3 at 10-11.) For example, a "No Show" occurrence adds 2.5 points, a "Failure to Report" to training or a flight adds 1 point, and "Sick Leave on Line" adds 0.5 points per day missed if the absence is unaccompanied by a doctor's note or personal illness note. (*Id.*) Article 32 does not directly mention the FMLA or the CFRA. (*See generally id.*)

Article 32 also outlines flight attendants' ability to "Record Improve," *i.e.*, reduce the point totals on their attendance record, if they meet certain criteria regarding attendance during December or a given calendar quarter. (*Id.* at 12-13.) First, flight attendants receive a two-point reduction from their point total "for each calendar Quarter during which a Flight Attendant is active for the entire Quarter and has no chargeable occurrences during the entire Quarter." (*Id.* at 12.) "Time on leave of absence other than a single [on-the-job-injury] occurrence of four (4) working days or less (limited to once per calendar year), funeral leave, and jury duty will not permit Record Improvement." (*Id.*) Second, flight attendants receive a two-point reduction for each quarter they are "active" and have "perfect attendance." (*Id.*) "Having no chargeable

occurrences does not equate with having perfect attendance." (*Id.*) Third, a flight attendant's record will be reduced to 0 points if they have 4 or fewer points at the end of the fourth quarter and did not accumulate more than 1 point during the quarter. (*Id.*) Fourth, if a flight attendant has perfect attendance in December, they receive a one-point reduction or they can "bank" one point, "whichever is applicable." (*Id.* at 13.) Finally, the CBA outlines two other policies: (1) a flight attendant may "bank" up to 6 points, except the December bonus point can bank a 7th point, and (2) "[p]oints will be deducted from the Flight Attendant's accumulated point total 16 months after the event for which points are charged. Once a Flight Attendant reaches zero (0) points, the Flight Attendant has a 'fresh start' in point accumulation." (*Id.*)

**C. Defendant's Evidence of Class Members' Attendance Records**

Southwest attaches the attendance records of 11 (b)(3) damages class members. The attendance records are essentially monthly calendars showing the dates a flight attendant was absent, with acronyms denoting the type of absence and the flight attendant's disciplinary point balances at the beginning and the end of each month. (*See generally, e.g.*, Dkt. No. 221-4.) For example, pasted below is one class member's record for the first two quarters of 2019:

**ATTENDANCE RECORD**
**2019**

**JANUARY**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

| Begin Bal. | Pts Accum | RI | Date Accum | End Bal |
|---|---|---|---|---|
| 8.5 | 0 | 0 | | 8.5 |

**FEBRUARY**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 INT | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 INT | 14 INT | 15 PN1 | 16 PN1 |
| 17 PN1 | 18 PN1 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | | |

| Begin Bal. | Pts Accum | RI | Date Accum | End Bal. |
|---|---|---|---|---|
| 8.5 | 0 | 0 | | 8.5 |

**MARCH**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 INT | 23 |
| 24 INT | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

| Begin Bal. | Pts Accum | RI | Date Accum | End Bal. | Qty RI |
|---|---|---|---|---|---|
| 8.5 | 0 | 0 | | 8.5 | 0 |

**APRIL**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 INT |
| 7 | 8 INT | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 INT | 19 | 20 INT |
| 21 | 22 | 23 | 24 NS | 25 | 26 | 27 |
| 28 | 29 | 30 | | | | |

| Begin Bal. | Pts Accum | RI | Date Accum | End Bal |
|---|---|---|---|---|
| 8.5 | 2.5 | 0 | | 11 |

**MAY**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 INT | 7 | 8 INT | 9 | 10 | 11 |
| 12 INT | 13 INT | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

| Begin Bal. | Pts Accum | RI | Date Accum | End Bal. |
|---|---|---|---|---|
| 11 | 0 | 0 | | 11 |

**JUNE**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 INT | 5 INT | 6 | 7 RI | 8 RI |
| 9 INT | 10 | 11 INT | 12 RI | 13 | 14 | 15 SL1 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

| Begin Bal. | Pts Accum | RI | Date Accum | End Bal. | Qty RI |
|---|---|---|---|---|---|
| 11 | 2.5 | -1.5 | Jan 18 | 12 | 0 |

United States District Court
Northern District of California

(*Id.* at 2.) Based on each class member's attendance record, Defendant asserts those 11 class members "would have been subject to termination at the same time or later" "even if the challenged policy had never applied[.]" (Dkt. No. 221-1 at 16.)

Defendant's analysis of attendance records is exclusively supported by a declaration from Ms. Rea, a managerial employee at Southwest. Although the CBA outlines just 12 "occurrences," Ms. Rea's declaration summarizes 33 "attendance events," the "acronyms" for coding those events on attendance records, and "the amount of points incurred for each [event] (if any), and the [event's] impact on [point reductions] (if any) which are applicable to" the attendance records for each flight attendant. (Dkt. No. 221-2 ¶ 20.) At her deposition, Ms. Rea testified her understanding of each attendance code is based solely on "some CBA language" and her "understanding of Southwest's practice." (Dkt. No. 222-5 at 3:6-4:3, 23:14-20.)

Take, for example, the following codes which Ms. Rea describes but do not appear in Article 32 of the CBA. Ms. Rea attests the code "INT" denotes "Intermittent FMLA." (Dkt. No. 221-2 ¶ 20(n).) An "INT" absence makes the flight attendant "inactive" and makes them ineligible for point reductions during that month or quarter, but does not add points to the flight attendant's record. (*Id.*) Additionally, there are two codes related to "fatigue"; "FTCA" means "[f]atigue that is operational" and "FTGA" denotes "[f]atigue, inactive for the day." (*Id.* ¶¶ 20(j), (k).) Neither fatigue absence adds points to the flight attendant's record, but a "FTGA" absence makes the flight attendant "inactive" and ineligible for point reductions. (*Id.*) A "LVNP," or "Personal Leave with No Pay" absence, does not add points, but makes flight attendants ineligible for point reductions. (*Id.* ¶ 20(r).) Another code, "LSCK," means "Los Angeles Sick Kin Care." (*Id.* ¶ 20(s).) An "LSCK" absence does not add points to the flight attendant's record and makes them ineligible for "Perfect Attendance" point reductions, but does not impact a flight attendant's eligibility for "No Chargeable Occurrence" point reductions. (*Id.*) Finally, the "MEDI" acronym means either "continuous FMLA" or non-FMLA "company medical leave." (*Id.* ¶ 20(q).) Since the "MEDI" code could refer to both an FMLA or a non-FMLA leave, Ms. Rea or someone in her team "would have to manually check each 'MEDI' code to determine which type of leave was actually taken." (*Id.* n.4.)

Ms. Rea summarized 11 class members' attendance records, identified each individual's absences and the corresponding codes, then "recalculated the flight attendants' points to see whether they would have been terminated regardless even if the taking of FMLA leave permitted them to receive" point reductions. (*Id.* ¶ 21.) Ms. Rea concluded 11 class members "would have still been terminated" for accumulating 12 points. (*Id.* ¶¶ 22-32.) For example, Ms. Rea concluded there are four class members (Valerie Barajas, Lexus Mitchell, Colleen Bobbi Church, and Cierra Brooks) would have been terminated because they had non-FMLA attendance events which, according to Ms. Rea's understanding of those codes, would have made those class members ineligible for point reductions even if they had not taken FMLA leave during those quarters. (Dkt. No. 221-2 ¶¶ 24, 28, 29, 31.)

**DISCUSSION**

Defendant moves for summary judgment, asserting (1) Southwest's attendance policy does not violate the FMLA because the FMLA does not guarantee accrual of attendance benefits, (2) 11 class members do not have Article III standing, and (3) class member Natalie Patterson should be dismissed because Defendant was unable to depose her before she died.

**I. Defendant's Accrual Argument is Procedurally Improper**

Defendant did not move for summary judgment by the February 26, 2026 dispositive motion deadline, (Dkt. No. 138), and instead moved to decertify the (b)(3) class, asserting certain class members "should be removed" from the class because they "do not have Article III standing." (Dkt. No. 174 at 17-18.) The Court denied the motion, explaining "[a] motion to decertify […] is not the proper motion to raise these arguments" and "Defendant chose not to move for summary judgment when it could have argued the evidence was insufficient as to certain class members." (Dkt. No. 197 at 4.) But, despite the motion's "procedurally improper arguments," the Court "grant[ed] Defendant leave to file a partial motion for summary judgment as to specific class members." (*Id.* at 13.)

Defendant's renewed argument its policies do not violate the FMLA is therefore procedurally improper because it is well past the dispositive motion deadline and the argument exceeds the scope of the Court's leave. The Court plainly gave Defendant "leave to file a ***partial***

United States District Court
Northern District of California

motion for summary judgment *as to specific class members*" in light of Defendant's Article III standing arguments. (*Id.* (emphasis added); *see also* Dkt. No. 221-23 at 4:9-14 ("Let's go through […] summary judgment on those people who you think, on the (b)(3) class, who they can't prove causation[. …] That's what we're talking about, just causation.")) The Court did not give Defendant leave to raise arguments it could have raised months ago in a timely motion for summary judgment. Therefore, the Court does not consider Defendant's accrual argument.

**II. Article III Standing**

Article III standing requires (1) Plaintiffs have suffered an "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) the injury will "likely […] be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). "Unnamed members of a certified class for money damages [must] demonstrate standing at summary judgment." *Healy v. Milliman, Inc.*, 164 F.4th 701, 705 (9th Cir. 2026). To do so, there must be at least "a genuine question of material fact as to the standing elements," *i.e.*, "a rational of tier of fact could find" Plaintiffs have standing at trial. *Id.* at 708 (cleaned up). A trier of fact may so find based on "either direct evidence or circumstantial evidence." *Id.* at 709.

**A. Whether Class Members Would Have Been Terminated Anyway**

Defendant asserts 11 (b)(3) class members do not satisfy Article III's causation requirement because the "undisputed attendance records" of these flight attendants show Defendant's treatment of FMLA leave did not "cause[]" those class members to be terminated. (Dkt. No. 221-1 at 16.) So, Defendant's burden is to show, based on the summary judgment record, a rational trier of fact must find each class member's taking of FMLA did not cause the termination of their employment and therefore there is no "causal connection between the injury and the conduct complained of."

Defendant has not carried that burden. Although Plaintiffs do not dispute the attendance records or the CBA's text, Defendant's causation analysis is predicated on declaration testimony from just one witness, Ms. Rea. In her declaration, Ms. Rea asserts she manually "reviewed" each class member's attendance records for "other non-FMLA occurrences," including occurrences not

United States District Court
Northern District of California

listed in Article 32 of the CBA. (Dkt. No. 221-2 ¶ 21.) Based on this analysis, with respect to eight class members, she concluded, verbatim, "even if […] FMLA leave did not impact their ability to receive [point reductions], they would have still been terminated for points[.]" (*Id.* ¶¶ 22-27, 30, 32.) And with respect to three class members, Ms. Rea concluded, verbatim, "FMLA leave did not impact their ability to receive [point reductions] as they had other occurrences that prevented them from receiving [point reductions] and they would have still been terminated for points[.]" (*Id.* ¶¶ 28, 29, 31.)

Putting aside that Ms. Rea's testimony may be undisclosed expert testimony, *see United States v. Holmes*, 163 F.4th 547, 561 (9th Cir. 2025) ("there is no on-the-job exception to Rule 702") (cleaned up), at her deposition Ms. Rea testified her understanding of each attendance code is based solely on "some CBA language" and her "understanding of Southwest's practice." (Dkt. No. 222-5 at 3:6-4:3, 23:14-20.) Yet she also testified the CBA lists only "a couple of" attendance events, not all of the 33 events she described in her declaration, and there is no "written policy from Southwest that identifies each attendance code" she described. (*Id.* at 3:6-4:3, 5:23-6:20.) And when asked whether she prepared her declaration using "anything else in writing" besides the CBA and her "memory," she answered "no." (*Id.* at 23:19-20.) For example, she stated she is "not personally aware of any documents" which "support her understanding of" the "FTGA" code and said she "would have to research" and "look" for such documents or "talk to our safety and fatigue team, and see if […] they have any documents, I don't know." (*Id.* at 19:24-21:7.) Every reasonable trier of fact would not have to accept Ms. Rea's testimony.

So, for reasons stated here, and at oral argument, Defendant has not shown a jury must find the 11 identified class members do not have Article III standing as a matter of law.

**B. Fully Mitigated Class Members**

Separately, Defendant asserts two class members–Nicole Littles and Alexander Macall Smith–do not have Article III standing because "both fully mitigated any economic loss and have no backpay or future damages resulting from their terminations." (Dkt. No. 221-1 at 17.) Defendant cites Plaintiff's expert report, which calculated each class member's "economic damages" based on their past lost income, lost future earnings from Southwest, and losses in

"employee benefits" like "health insurance" and 401(k) plan contributions. (Dkt. No. 174-20 at 5-9.) Plaintiff's expert found Ms. Littles and Ms. Smith experienced "no discernable loss at this time" because they earned more in income at their subsequent jobs. (*Id.* at 39, 40.) Defendant argues these conclusions "foreclose[] any award of economic damages to either employee." (Dkt. No. 221-1 at 17.)

At oral argument Plaintiffs conceded Ms. Littles and Ms. Smith do not have any monetary damages, but asserted they still seek the remedy of reinstatement. So, Defendant has not met its burden to show a rational trier of fact must find Ms. Littles and Ms. Smith do not have Article III standing as a matter of law, although Plaintiffs have now stated on the record Ms. Littles and Ms. Smith are not seeking monetary damages.

**III. Natalie Patterson**

Separately, Defendant argues "the Court should dismiss Natalie Patterson from the damages class" because she died before Defendant could take her deposition, meaning Defendant cannot test "her efforts to find work to mitigate her damages." (Dkt. No. 221-1 at 17; Dkt. No. 223 at 13); *see Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995) (providing pay awards can be reduced or denied if (1) "during the time in question there were substantially equivalent jobs available, which [the employee] could have obtained and [(2) … the employee] failed to use reasonable diligence in seeking one.") Defendant's initial motion did not cite any authority or case for why the Court should dismiss Ms. Patterson on this ground. Instead, Defendant referred to "Plaintiffs' prior representation that class members who were not deposed would be dismissed" and this Court's statement at the May 12, 2026 hearing "[i]f [Southwest] can't get their depositions, they're not going to be part of the case because, I mean, how could they?" (Dkt. No. 221-1 at 17.) In Reply, Defendant relies on Federal Rule of Civil Procedure 37(d), *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999 (7th Cir. 1971), and *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 289 F.R.D. 548 (N.D. Cal. 2013).

The Court denies Defendant's request. Defendant did not supply a legal basis for dismissing Ms. Patterson until its Reply brief, and therefore waived the argument Ms. Patterson must be dismissed as a discovery sanction. *Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996)

United States District Court
Northern District of California

("Issues raised for the first time in the reply brief are waived."); *Nathanson v. Polycom, Inc.*, 2015 WL 12964727, at *1 (N.D. Cal. Apr. 16, 2015) ("[I]t is inappropriate to consider arguments raised for the first time in a reply brief.") (cleaned up). Even if the Court considered Defendant's request under Federal Rule of Civil Procedure 37(d), Defendant has not shown Ms. Patterson's dismissal is an appropriate sanction. *See* Fed. R. Civ. P. 37(b)(2)(A), (d)(1)(A)(i), (d)(3). Defendant relies on emails from Plaintiffs' counsel asking to reschedule, then cancelling, Ms. Patterson's deposition, but nothing in these emails illustrates Plaintiffs' bad faith or conduct egregious enough to warrant the severe sanction of dismissal. (*See generally* Dkt. Nos. 221-21, 221-22.) Moreover, Defendant ultimately may not prevail on its failure-to-mitigate defense for reasons unrelated to Ms. Patterson's job search efforts; for example, a jury might find Defendant did not meet its burden to show there were substantially equivalent jobs available which she could have obtained. *See Odima*, 53 F.3d at 1497; (Dkt. No. 208 at 8-15 (discussing the "substantially equivalent" jobs element and excluding portions of Defendant's expert report)).

**CONCLUSION**

As explained above, the Court denies Defendant's motion for summary judgment. Drawing all reasonable inferences from the summary judgment record in Plaintiff's favor, Defendant has not met its burden of showing a trier of fact must find members of the (b)(3) class do not have Article III standing a matter of law or its burden to show Ms. Patterson must be dismissed.

This Order disposes of Docket No. 221.

**IT IS SO ORDERED.**

Dated: August 26, 2026

JACQUELINE SCOTT CORLEY
United States District Judge