UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RORESTE REFUERZO, et al.,
Plaintiffs,
v.
SOUTHWEST AIRLINES CO.,
Defendant.

Case No. 22-cv-00868-JSC

**ORDER RE: PARTIAL DECERTIFICATION AND TRIAL PLAN**

The Court held oral argument on Defendant's motion for summary judgment on August 26, 2026. As discussed at the hearing, the motion for summary judgment demonstrates common questions do not predominate the issue of whether each Rule 23(b)(3) class member's termination from employment with Southwest was caused by the challenged Southwest policy. But, as also discussed, it is appropriate to maintain certification to address the common question of whether the policy violated the FMLA. So, the Court partially decertifies the class, as set forth below.

## DISCUSSION

### I. Revisiting Class Certification

#### A. Partial Decertification

A district court has discretion to decertify a previously certified class action. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies certification may be altered or amended before final judgment."); *see also General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation."). Indeed, district courts can sua sponte raise decertification. *See Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 261 (2d Cir. 2021) ("[D]istrict courts have the authority to sua sponte decertify a class if they find that the class no longer meets

the requirements of Rule 23 at any time before final judgment is entered."); *Owner-Operator Independent Drivers Ass'n, Inc. v. Landstar Inway, Inc.*, 2007 WL 473995 (M.D. Fla. 2007), *aff'd*, 622 F.3d 1307 (11th Cir. 2010) ("Although neither party has filed a motion to decertify the class, the Court may initiate decertification sua sponte.").

The parties' submissions on Defendant's motion for summary judgment regarding each class member's Article III standing demonstrate that certification is not appropriate for the question of whether Defendant's challenged policy caused each class member's termination of employment. For example, as Plaintiffs argue, there are genuine disputes regarding 11 class members as to whether they would have been terminated even if Southwest permitted point reductions despite taking FMLA leave. (Dkt. No. 222 at 15-19.) Plaintiffs' discussion as to each class member is individualized and different and would involve a jury finding specific facts as to each class member to find liability. (*See, e.g.*, *id.* at 15 (arguing Southwest should not have added points to Ms. Littles' record for a no-show on June 26 because, among other things, "Southwest confiscated her flight badges and credentials" the day before), at 15-16 (disputing Southwest's interpretation of Ms. Barajas' "LSCK" occurrence on December 16), at 16 (asserting there is a dispute over whether Ms. Macall Smith's attendance "record would have unfolded identically" because "[o]nce a flight attendant like [her] is barred from point-reduction benefits by taking FMLA leave," that flight attendant has a different "calculus" when deciding which "form of leave" to take for subsequent absences).)

While the Court's initial certification analysis as to the 21 remaining class members appears unaffected as Defendant does not dispute the taking of the FMLA leave made them ineligible for point reduction resulting in their termination, 21 does not satisfy numerosity. *See Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not."); *Valenzuela v. Best-Line Shades, Inc.*, 2021 WL 3514101, at *3–4 (N.D. Cal. Aug. 10, 2021) ("[J]oinder has been deemed impracticable in cases involving as few as 25 class members.") (cleaned up). Moreover, it is now the Court's conclusion that—absent stipulation—the jury should decide whether the

allegedly unlawful policy caused each class member's termination simultaneously with deciding each class member's damages, if any. So, the class certification order must be modified.

**B. Issue Certification**

Federal Rule of Civil Procedure 23(c)(4) provides:

> (4) Particular Issues. When appropriate, an action may be brought or maintained as a class action with respect to particular issues.

So, even if, as here, "the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (citing *In re N. Dist. of California, Dalkon Shield IUD Prods. Liab. Litig*., 693 F.2d 847, 856 (9th Cir. 1982), as amended (July 15, 1982)); *see also Dalkon Shield*, 693 F.2d at 856 ("A trial court can sever and try only certain issues on a class basis under Rule 23(c)(4)(A).") But, certification of an issue class is "appropriate" only if it "materially advances the disposition of the litigation as a whole." *Rahman v. Mott's LLP*, 693 F. App'x 578, 579 (9th Cir. 2017) (cleaned up). Each proposed Rule 23(c)(4) issue class "must still meet the requirements of Rule 23(a) and (b) (except for the predominance requirement of Rule 23(b)(3))." *Tasion Commc'ns., Inc. v. Ubiquiti Networks, Inc*., 308 F.R.D. 630, 633 (N.D. Cal. 2015) (citing *Avilez v. Pinkerton Gov't. Servs.*, 596 Fed. App'x 579, 579 (9th Cir. 2015)). "The question of whether partial certification is appropriate under Rule 23(c)(4)(A) is closely linked to the question of whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Wells Fargo Home Mortg. Overtime Pay Litig*., 527 F. Supp. 2d 1053, 1070 (N.D. Cal. 2007).

Here, it is appropriate to certify the issue of whether it violates the FMLA to make flight attendants ineligible for point reductions when they take intermittent FMLA leave. As previously addressed in the Court's order certifying the classes, it is a question common to the entire (b)(2) and (b)(3) classes. (Dkt. No. 106 at 11; Dkt. No. 197 at 5.) Numerosity, adequacy, and typicality are still satisfied, as also previously discussed. (Dkt. No. 106 at 7-15; Dkt. No. 197 at 5-6.)

Equally importantly, certification of the issue will materially advance the litigation. If the jury finds the policy did not violate the FMLA, the case is over for all class members. If the jury finds it did violate the FMLA, then the jury will answer the individual questions of causation and trial without separate juries having to decide the question of the lawfulness of the same policy all over again. Therefore, a class action is superior to other available methods of litigation because "'the advantages and economies of adjudicating issues that are common to the entire class on a representative basis may be secured even though other issues in the case may need to be litigated separately by each class member.'" *Taision*, 308 F.R.D. at 632 (quoting Wright & Miller, § 1790 Partial Class Actions and Subclasses, Fed. Prac. & Proc. Civ. § 1790); *see also* Wright & Miller, Fed. Prac. & Proc. § 1790 n.19, 20 (collecting cases in which courts "applied subdivision (c)(4)(A) to allow a partial class action to go forward, leaving questions of […] damages[] and other issues to be adjudicated on an individual basis.").

***

So, the Court continues to certify for the (b)(2) and (b)(3) classes on the question of whether Southwest's policy regarding intermittent FMLA leave violates the FMLA, but decertifies whether that policy, if unlawful, caused the termination and thus damages of each (b)(3) class member. Instead, to prove causation, each class member must appear individually in the action, which they already had agreed to do for purposes of recovering damages.

## II. Trial Plan

As also discussed at the hearing on Defendant's motion for summary judgment, the Court tentatively proposes a bifurcated trial as follows. The first trial, commencing October 13, 2026, will have two phases. In the first phase the jury must decide on a class basis whether Southwest's treatment of FMLA leave violated the FMLA. In phase two, which would occur only if the jury finds for Plaintiffs in phase one, the same jury must decide whether Southwest's treatment of FMLA leave caused the termination of each of the 21 class members not challenged in Defendant's summary judgment motion, along with each of the 21 class members' damages, if any. Mr. Refuerzo's CFRA claim for emotional distress damages is included in this phase.

The second trial, before a different jury, would occur if the first jury finds Southwest's

United States District Court
Northern District of California

policy violated the FMLA. The jury would find whether that unlawful policy caused the termination of each of the 11 remaining class members, along with damages for each class member.

The Court will hold a status conference by Zoom on September 11, 2026 at 10:15 a.m. The parties shall file a joint status update **by noon on Wednesday, September 9, 2026**, detailing the parties' mediation efforts and proposed trial plan. The Court welcomes any proposals.

**IT IS SO ORDERED.**

Dated: August 26, 2026

Jacqueline Scott Corley

JACQUELINE SCOTT CORLEY
United States District Judge